IN THE UNITD STATES DISTRICT COURT
FOR THE EASTERN DISTRICT AT BROOKLYN, NEW YORK

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.
★ JUL 11 2005 ★
BROOKLYN OFFICE

JAMAL A. AZEEZ,

      Plaintiff

v.

CV — 05 — 3271
WEXLER, J.

BOYLE, M.J.

KRISTEN L KELLER, Assistant Prosecuting Attorney
LAWRENCE FRAIL, Chief Prosecuting Attorney
BRUCE K. LAZENBY, Former Prosecuting Attorney
FRANCIS M. CURNUTTE, III, Attorney at Law
CEDRIC ROBERTSON, Police Officer
DAVID H. COOK, II, Police Officer
BILLY COLE, Chief of Police
JOHN HUTCHISON, County Judge
JANICE B. DAVIS, Clerk of Court

      Defendants,

# A CIVIL RIGHTS COMPLAINT UNDER 42 USC §1983, 42 USC §1985 AND 28 USC §1332 ALLEGING UNLAWFUL ARREST TO UNLAWFUL INCARCERATION

(PLAINTIFF DEMANDS TRIAL BY JURY
WITHIN 10 DAYS OF SERVICE OF THE ANSWER)



RECEIVED
JUL 11 2005
PRO SE OFFICE

1

## ARBITRATION CERTIFICATION

I,_____, counsel for _____
_____do hereby certify pursuant to the Local Arbitration Rule 83.10 that to the best of my knowledge and belief the damages recoverable in the above captioned civil action exceed the sum of $150,000 exclusive of interest and costs.

_____ Relief other than monetary damages is sought.

## DISCLOSURE STATEMENT - FEDERAL RULES CIVIL PROCEDURE 7.1

Identify any parent corporation and any publicly held corporation that owns 10% or more or its stocks:

_____

Did the cause arise in Nassau or Suffolk County? Yes_____

If answered yes, please indicate which county. _____

County of residence of plaintiff(s)   (1) N _____
                                     (2)_____
                                     (3)_____

County of residence of defendant(s)  (1) WV _____
                                       (2)_____
                                       (3)_____

**I am currently admitted in the Eastern District of New York and currently a member in good standing of the bar of this court.**

Yes_____                                  No_____

**Are you currently the subject of any disciplinary action(s) in this or any other state or federal court?**

Yes_____(If yes, please explain)        No_____

_____

_____

Please provide your E-MAIL Address and bar code below. Your bar code consists of the initials of your first and last name and the first four digits of your social security number or any other four digit number registered by the attorney with the Clerk of Court.
(This information must be provided pursuant to local rule 11.1(b) of the civil rules).
**ATTORNEY BAR CODE:**_____

**E-MAIL Address:** _____

I consent to the use of electronic filing procedures adopted by the Court in Administrative Order No. 97-12, "In re Electronic Filing Procedures(EFP)", and consent to the electronic service of all papers.

Signature: _____

This is a Civil Rights Complaint filed by Plaintiff Jamal A. Azeez for declaratory judgment and money damages. Plaintiff alleges that the above-named defendants, through their collective acts, practices, omissions, and acting under color of laws have violated clearly established rights by falsely and unlawfully arrested and imprisoned him for twenty four months, thus denying him liberty, privileges, immunities, and equal protection of the law without affording him due process in violation of the Fifth and Fourteenth Amendments of the United States Constitution. Plaintiff also alleges that the said defendants committed state tort acts by abuse of authority, abuse of process, malicious prosecution, obstruction of justice under the principles of WV Code §61-5-27; alteration, concealment and/or destruction of public records accessible under the Freedom of Information Act; and failure to perform officials duties under WV Code §61-5-28. Plaintiff further alleges that the unconstitutional and unlawful actions of the defendants were done maliciously, intentionally, willfully, oppressively, conspiratorially and deliberately with indifference, wanton and reckless disregard for Plaintiff's constitutionally vested rights.

## I. JURISDICTION

1. This case is brought pursuant to 42 USC §1983 and §1985 and 28 USC §1332 (Diversity Jurisdiction) because Plaintiff is a citizen of the State of New York for more than twenty five year; his constitutional rights were violated by said defendants acting under color of law; and the matter of controversy is approximately ten million dollars ($10,000,000.00). The Defendants are all active citizens of West Virginia.

2

## II. TIMELINESS OF SUIT

On August 12, 2003, the Honorable Robert E. Maxwell, Chief Judge of the Northern District at Elkins, West Virginia, granted Summary Judgment as prayed for by the Plaintiff on a *pro se* federal habeas corpus petition and forthwith released Plaintiff from incarceration. This action is filed within the two year the federal statute of limitation allows. The defendants, unable to overcome the Court's rulings chose not to appeal the Judgment Order. The charges are now considered dismissed.

## III. PARTIES

1. Plaintiff at all times relevant to this action was and still is a bona fide citizen of the United States; a medical graduate (MD, BS) specialized in laboratory medicine; an ex-lieutenant of the United States Army; an ex-auxiliary police officer of the New York Police Department; a certified legal assistant/paralegal whose current address is 305 Marguerite Ave. South Floral Park, New York 11001.

2. Defendants Keller, Frail, and Lazenby were at relevant times prosecuting attorneys and citizens for the State of West Virginia, whose principal place of business is located at 112 N. Heber St. Beckley, West Virginia, 25801. They are being sued in their individual and official capacities.

3. Defendants Robertson, Cook, and Billy Cole were at all times relevant to this action duly sworn Police Officers and citizens of West Virginia whose principal place of business is located at 304 Prince Street, P.O. Drawer AJ, Beckley West Virginia, 25802. They are being sued in their individual and official capacities.

3

4. Defendant Janice Davis was at all times relevant to this action, Clerk of the Raleigh County Courthouse and citizen of West Virginia whose principal place of business is located at 217 Main Street, Beckley, West Virginia, 25801.

5. Defendant Francis M. Curnutte III, Esq., is an attorney at law and citizen of West Virginia whose business address is: Hunt and Serreno, 900 Lee Street, Suite 1000, Charleston, West Virginia 25301-1714. He is being sued in his individual capacity.

6. John Hutchison is an elected judicial officer and citizen of West Virginia whose principal place of business is located at 217 Main Street, Beckley, West Virginia 25801. He is being sued in his individual and official capacities.

## IV. BASIS OF COMPLAINT

1. The Plaintiff was convicted on a "Failure to Appear" charge in the Raleigh County Circuit Court on March 25, 1993, and was sentenced to no less than one to no more than five years (1-5years) on June 3, 1993 collectively by the named defendants.

2. Plaintiff began his incarceration at the Huttonsville Correctional Center, West Virginia on August 19, 2001. After exhausting all state appellate remedies, Plaintiff was exonerated and court-ordered released by the Honorable Robert E. Maxwell, Senior Federal Judge of the Northern District at Elkins, West Virginia on August 12, 2003. All relief prayed for were granted on a Motion for Summary Judgment: Case No.00-CV-54: 28 USC §2254

4

## V. STATEMENT OF FACTS

(a) Defendant Robertson

1. On September 12, 1988, Defendant Robertson allegedly appeared before a grand jury, and under solemn oath testified -- maybe under duress or induced – 'Jamil Azeez failed to appear in court on September 25, 1987 as Ordered by the Honorable Thomas Canterbury...for sentencing'. (Documentary evidence exists)

2. By such statements as appeared on the face of Indictment No. 88-F-203, signed by Defendant Lazenby, Petitioner was subsequently indicted, arrested and extradited under said Indictment. (Documentary evidence exists)

3. Contrary those assertions, Plaintiff avers that Defendant Robertson was fully aware of Plaintiff's true name which has always been known to him as Jamal Adeen Azeez; that Plaintiff was **already** sentenced on September 14, 1987 (for a separate charge which is presently pending a federal review also); that there was **no** order entered by Judge Canterbury commanding Plaintiff to appear; and most contradicting, that Plaintiff was in the same courthouse jail on said September 25, 1987 placed there by said Defendant, thus creating a suspicion that 88-F-203 is a willfully-fabricated document. (Defendant Keller always referred to Plaintiff as 'Jamil').

4. Plaintiff was arrested in the State of Florida on August 19, 1991 on a capias warrant, and during costly extradition proceedings, Defendants Robertson and Cook appeared in a local court and presented said Indictment as a True Bill evidencing and verifying that Plaintiff was indicted a grand jury.

5. Plaintiff claims that Defendant Robertson, without probable cause, deliberately, intentionally, maliciously, conspiratorially, and with clear disregard of the law and a

5

citizen's rights, committed gross unconstitutional acts to have Plaintiff indicted, arrested, and extradited under falsified information.

(b) Defendant Lazenby

6. If Defendant Robertson did appear before a grand jury and was induced to testify so perjuriously, then Defendant Lazenby should be held liable for 'Compromise of Indictment' under WV Code §62-2-25. Defendant Lazenby signed 88-F-203.

7. Plaintiff states that if Defendant Robertson did not appear before a grand jury and did not testify so perjuriously, it therefore remains highly probable that Indictment No. 88-F-203 is a fabricated piece of document and Defendant Lazenby is equally liable as Defendant Robertson.

8. Plaintiff alleges that Defendant Lazenby, as well as Defendant Frail, unlawfully refused disclosure of the grand jury minutes of 88-F-203 for trial and appeal purposes in spite of such well-proven particularized needs that overcame all restrictions that could have prevented public exposure; thus responsible for obstruction of justice, willful concealment of prosecutorial and police malfeasances, and other related actionable wrongdoings.

(c) Defendant Keller

9. Plaintiff filed a pre-trial Motion to Quash Indictment No. 88-F-203 being grossly defective and fatal. Upon becoming aware of such fatalities, Defendant Keller sent Plaintiff (two weeks before trial) an "Amended Indictment: No. 92-F-342" and verified that it was returned by a regular grand jury on 'November 2, 1992'.

10. Plaintiff alleges that Defendant Keller did not follow well-established state laws, and did not obtain the required judicial permission to have a grand jury session

6

recalled to re-indict Plaintiff. Extreme doubts exist, as described below, that a grand jury was ever recalled at any time. (Documentary evidence exists).

11. Unable to accuse Plaintiff Azeez for a specific date he failed to appear, Defendant Keller impermissibly broadened Indictment 92-F-342 to reflect a time span between 'July 1988 thru August 1991' which included a time Plaintiff Azeez was still exhausting his appeal remedies and when the appeal bond was still in effect. (Documentary evidence exists). Two versions of this document exist on file -- one without the signature of the Clerk of the Court, a file number, or a court stamp).

12. At trial, when Judge John Ashworth noticed both indictments (88-F-203 and 92-F-342) accusing the Plaintiff of the same charge and questioned the State, Defendant Keller quickly stated, in short, that the old one (88-F-203) … was 'withdrawn', stricken from the docket and nulled by another Judge… the 'form of the language is wrong…it's their (defense) typist's problem'…. (Documentary evidence exists). Believing all of this to be true Judge Ashworth then allowed Defendant Keller to proceed under the superseding Indictment #92-F-342 upon which the conviction was acquired.

13. Plaintiff then filed a post-trial Motion for the Production of The Grand Jury Minutes of Indictment 92-F-342. Judge Ashworth wrote in an Order that he was given "Tape 3" and after an auditory review, found 'garbled information … taped over existing recording…**only** where (Plaintiff) Azeez grand jury minutes were (allegedly) recorded…' (Documentary evidence exists)

14. Since the minutes were unobtainable magnetically, Judge Ashworth was given (by an unknown party), 'handwritten notes (allegedly) taken by the grand jury secretary' in substitute for actual minutes. (Documentary evidence exists).

7

15. The note stated that Defendant Cook appeared and accused Plaintiff for "applying for S.S.# ... and worked for hospitals in Florida... " none of which is true. ( Documentary evidence exists).

16. Suspecting criminal and civil wrongdoings, Plaintiff and a friend William Stanley immediately sent two separate Freedom of Information Act requests to Defendant Clerk Davis asking for '**all the dates the grand jury met in 1992'.** In her responses, Defendant Davis verified (court-sealed) both times that **no** grand jury session was held on November 2, 1992. (Documentary evidence exists).

17. Prior to trial, Plaintiff filed a motion to dismiss the charge based on the state's unconstitutional 'Failure to Prosecute Within Three Terms of Court'. To overcome the First Term, Defendant Keller presented to the trial court, a Motion for Continuance prepared by her, signed by Judge Burnside (who was then her boyfriend; now her husband), and claimed that an attorney, Karen Kostol, a Public Defender, entered said Motion.

18. Defendant Keller (falsely) verified that Ms. Kostol "appeared with the Plaintiff in court" during an alleged hearing held on February 7, 1992 and "moved" the Court to continue the case. (Documentary evidence exists).

19. First, Petitioner avers that 'Defense Counsel' never endorsed the continuance, although it is required by law to become effective and enforceable.

20. Second, Plaintiff avers that Ms. Kostol never requested for such continuance; she never appeared in court on behalf of Plaintiff on this matter; and she was never aware of any hearing conducted on this matter -- although her name was typewritten on the Order.

8

21. Third, Judge Burnside whom Defendant Keller was romantically involved with during those times, endorsed the Continuance Order; thus resulted in conflict of interest, intentional miscarriage of justice, conspiracy, fraud, and other uncivil acts that bar any immunity defense in this action.

22. Fourth, Plaintiff avers that **no attorney** was even assigned to the case then; there was **no hearing** conducted on the alleged motion; he **never met** Ms. Kostol anytime during the case; **never appeared** in court with Ms. Kostol anytime during the entire case; and most importantly, **never requested** Ms. Kostol to file such motion. (Documentary evidence exists from Ms. Kostol).

23. As a result of such gross uncivil acts by Defendant Keller, Plaintiff's constitutional right to be tried within three terms of court was stymied, violated, and compromised.  Such disregard for the law and evil motive of Defendant Keller successfully overcame Plaintiff's Motion to Dismiss for Failure to Prosecute.

24. At trial, defense attorney Joseph Noggy (Public Defender) raised claims that he was not informed about the State's move to re-indict Plaintiff Azeez, and that 'nothing official has been done' under the provisions of WV 52-2-4. Judge Ashworth ignored him and continued the trial under the new indictment accepting fraudulent statements intentionally made by Defendant Keller.

25. Appearing confused, when Judge Ashworth informed the jury that 'there has been an original trial ... a conviction...a habeas corpus appeal ... that was addressed as 88-F-203', Defendant Keller deliberately did not clear such misinformation, condoned it, and allowed such harm to go uncorrected by saying, "That's right, Your Honor." Accordingly, Defendant Keller intentionally misinformed the jury about Indictment 88-F-

9

203 so as to proceed with the trial under the Amended Indictment 92-F-342. (Documentary evidence exists).

26. Immediately after conviction, Plaintiff Azeez requested copies of the annulment Order pertaining to 88-F-203, the name of presiding judge, a copy of the transcripts of such proceeding identifying the date, and the parties who attended it.

27. It is believed that Defendant Keller then quickly removed Plaintiff's files from the custody of the Defendant Clerk Davis, unlawfully concealed them for two full years between March 1996 and March 1998, and after reconstructing them to suit her satisfaction, she then secretly placed them in Judge H.L. Kirkpatrick's chamber where a secretary of appellate counsel found them. Judge Kirkpatrick was assigned to hear the habeas corpus appeal. One can only imagine what goes on behind closed doors of the Raleigh County Courthouse.

28. Judge Kirkpatrick was totally unaware of the files whereabouts when he was contacted by both habeas corpus counsel who went as far as the West Virginia Supreme Court of Appeals looking for them during appellate period. Judge Kirkpatrick declared that he was unaware that the files were placed in his chambers. Accordingly, Plaintiff was unlawfully and unconstitutionally denied access to his files for two full years in spite counsels' diligent efforts to locate them due to Defendant's Keller willful non-immune, constitutionally-liable acts.

29. When habeas corpus counsel James Anderson finally discovered the records, a copy was sent to Plaintiff who discovered an ORDER clearly expressing that it was not until "The 3rd day of June 1993… It is hereby ORDERED that 88-F-203 be NULLED and STRICKEN from the docket," … signed by Judge Ashworth. (Documentary

10

evidence exists). Unfortunately, Judge Ashworth did not remember that he was told at trial that said Indictment was already withdrawn and nulled by another Judge.

30. Conclusively, Defendant Keller committed gross intentional and liable acts to have Plaintiff Azeez tried and convicted under 92-F-342 while 88-F-203 was still active during all trial phases.

31. The magnitude of Defendant Kellers' wrongdoings has recently reached national level. The severity and recurrence of her misconducts were singled out (among hundreds of prosecutors) by civil rights groups like Center for Public Integrity. AP newspaper article head-lined: **"Dozens falsely imprisoned due to prosecutor misconduct"**). Keller denied her involvement in the 'racial bias' issue regarding Plaintiff's previous conviction, but acknowledged her role in the 'escape' (Failure to Appear) case. (Documentary evidence exists)

(d) <u>Defendant Curnutte</u>

32. Upon becoming aware that Defendant Curnutte was subpoena by Defendant Keller to testify as a state witness, Plaintiff confidentially contacted him (through the advice of Public Defender Joseph Noggy who was assigned to the Failure to Appear case) and 'begged' Defendant Curnutte to testify 'truthfully', and warned him of the potential breach of 'confidentiality on privileged information' and other 'unethical ramifications' should he testify against Plaintiff. (Documentary evidence exists).

33. During a hearing on a defense motion to bar Defendant Curnutte from testifying, Judge Ashworth specifically ruled that Defendant Keller "could not use Curnutte as a witness-in-chief", and Defendant Curnutte was fully aware of the Judge's ruling. (Documentary evidence exists)

34. Defendant Curnutte impermissibly, unethically, and conspiratorially turned the confidential letter over to Defendant Keller who interpreted it as a 'threat' so as to have Defendant Curnutte return for trial purposes.

35. Unexpectedly, Defendant Curnutte showed up for trial because Defendant Keller depended heavily and solely on him to fulfill burden of proof. During another in-camera hearing, Defendant Curnutte was allowed to take the stand but **only on matters concerning the letter,** and was again admonished several times on privileged information.

36. In violation of the Court's rulings, Defendant Curnutte willfully breached confidentiality and committed several ethical violations when he disclosed before the jury untruthful testimony against Plaintiff that were partially responsible for Plaintiff's conviction. Judge Ashworth recognized the 'error' but did not provide any relief as promised. Defendant Keller acknowledged her error, saying, "I'm sorry". (Documentary evidence exists).

37. Plaintiff subsequently filed an Ethics Complaint successfully against Defendant Curnutte when the WV Lawyer Disciplinary Board agreed with Plaintiff and attempted to penalize Defendant Curnutte for breaching several codes on ethical conduct. (Documentary evidence exists)

38. Whereas the conviction was reversed partially on Defendant Curnutte's unconstitutional acts, he must be held responsible and liable equal to the rest of the defendants.

12

(e) Defendant Janice B. Davis

39. Under principles of WV Code 52-2-4 (Special Term), it is strictly mandated that the 'sheriff must execute the process' in summoning every grand juror, the clerk must 'enter the warrant in the order book of the court', 'a copy of the warrant must be posted at the door of the courthouse', and as in any regular term, the clerk must keep a record of the jury re-imbursement (payment) for their services. These records are subject to public inspection.

40. By law, Defendant Davis was and is responsible for the control, care, and custody of all such court files and records; and for keeping a log on whoever and whenever records are removed and returned to her office. (See WV Trial Court Rules 10.02).

41. It is highly probable that Defendant Davis conspired and unlawfully allowed Defendant Keller to have Plaintiff's records removed without the required court order.

42. Two civilians who personally went to the Clerk's office to inspect such public records and files were denied access. Defendant Davis refused and as such conspired to conceal the obvious wrongdoings of Defendant Keller.

43. Requests from Plaintiff she had control of solely, and required answers on, were wrongfully turned over to either the defendant judge or prosecuting attorneys' office for response.

44. During incarceration, when Plaintiff first became aware of some of the above-alleged illegal acts committed by said defendants, he initiated a *pro se* complaint in March of 1996 in the Southern District Court: Case No.CA-96-0367-5; thus barring any statute-of-limitation defense. By Order, the Honorable David Faber dismissed said

13

complaint and ruled that Plaintiff must first 'exhaust his state remedies' and have the conviction and sentence terminated in plaintiff's way; done so within the last two years.

45. It was during litigation of the above-stated case, Plaintiff's entire court records and files in the Defendants' state court were removed from the Clerk's office without a trace for two full years. Now that the conviction and sentence have been set aside, Plaintiff has a right to re-litigate the claims.

46. By law, a Commitment Order is required to be executed by a Judge and transmitted to the Division of Correction 'within eight (8) months after sentencing' if incarceration is required of a convicted person. Plaintiff was sentenced since June 3, 1993.

47. Plaintiff was scheduled to be released from the Huttonsville Correctional Center in August 2001 after discharging his former sentence because there were 'no commitment papers' to keep him further incarcerated on the Failure to Appear charge.

48. In February of 2001, after Defendant Davis was informed that Plaintiff was about to be released, she quickly sent an illegal Commitment Order -- not endorsed/excuted by a Judge, which made it unenforceable -- to the West Virginia Division of Corrections for the purpose of furthering incarceration of the Plaintiff. (Documentary evidence exists)

49. Defendant Davis subsequently treated Plaintiff discriminatingly when she deliberately ignored simple requests only she had control of; apparently influenced by court officials and the named defendants, for fear of exposing more official wrongdoings.

14

50. Defendant Davis discriminatingly started to use plain paper (not official court stationeries) to communicate with the incarcerated Plaintiff only when it was absolutely necessary. (Documentary evidence exists)

51. All documents to Plaintiff that subsequently issued from her office were unsigned, and Plaintiff claims it as pure disrespect, discrimination and intentional indifference since she treated other litigants otherwise.

52. Defendant Davis must be held liable for deliberate neglect of her duty when Plaintiff's entire court files were removed from her office and missing for two full years during critical post-conviction stages for which she should have known. Additionally, Defendant Davis must be held liable under the provisions of Freedom of Information Act laws when she deliberately refused requested access to unrestricted public records relating to the Failure to Appear conviction, especially on matters surrounding the amended indictment proceedings, and documents relating to the alleged 'special session' grand jury.

(f) Defendant John Hutchison

53. Plaintiff exhausted several local FOIA steps by requesting production of court and police records that related to the case. After repeated denials, Plaintiff filed an actual complaint under Freedom of Information Act (FOIA) in the Raleigh County Court hoping for a successful judicial intervention. During a hearing, Defendant Hutchison treated Plaintiff with severe disrespect, being pro se, and threatened by Plaintiff 'not to return' to the court looking for documents, because all matters were considered '*res judicata*'.

54. Plaintiff then filed with several state agencies a 53-page '**Criminal** Complaint' that should have been reviewed first by the Office of the Prosecuting

15

55. Instead of replies from either the State Police, the Beckley City police, or the State Attorney General's office, Defendant Hutchison unlawfully intervened and abused his judicial authority; and beyond the scope of his judicial responsibilities, wrongfully, intentionally, and without justification, interpreted the **criminal** complaint as a 'civil suit'; specifically done so as to apply the principles of Prison Litigation Reform Act. Defendant Hutchison retaliatorily and punitively revoked '50% of all earned good-time credit'; even on a sentence that was already discharged. He dismissed the Complaint as being 'frivolous'. Plaintiff had never been accused of filing any 'frivolous' complaint in that court; making such sanction inappropriate, unlawful, and retaliatory.

56. The Honorable John S. Kaull and Robert E. Maxwell of the Northern District Court recently ruled on a federal appeal on said case that Plaintiff should file a 'civil rights' complaint instead of habeas corpus petition against Defendant Hutchison for 'retaliation'. (Case No. 2:03 CV 17 NDWV).

(g) Defendants Billy Cole and David Cook

57. Plaintiff sent Defendant Billy Cole several FOIA requests for inspection and/or reproduction of unrestricted public records regarding the police involvement on the instant case. Defendant Cole denied them all.

58. Defendant Billy Cole must be held liable under the provisions of FOIA for refusing inspections of the Police Roster (Log), a public record which documented the assignments (whereabouts) of Defendant David Cook on November 2, 1992; a date it was

16

alleged that Defendant Cook appeared and testified against Plaintiff before a 'special' session grand.

59. Defendant Cole also refused inspection and/or copying of 'service process' by which each grand juror was allegedly summoned for their alleged re-appearance on November 2, 1992 grand jury special session in spite of a Freedom of Information Act requests and a civil complaint.

60. Defendant Cook, like Defendant Cole must be held liable for conspiracy to conceal officials' wrongdoings, malicious prosecution, obstruction of justice, intentional police misconduct since his testimony, as allegedly handwritten by a grand jury secretary, is considered perjury; all done so with the willful intent to harm and punish Plaintiff.

(h) Defendant Frail

61. Knowing that Defendant Frail endorsed 92-F-342, he must be held liable since it is highly obvious that no grand jury was ever recalled; when nulling of 88-F-203 did not occur prior to trial; for allowing a trial to proceed when two indictments existed both accusing Plaintiff of the same charge; and for inducing Defendant Cook to testify perjuriously.

62. Plaintiff is demanding full discovery of original materials on the 'hand-written notes' concerning Defendant Cook's testimony allegedly written by an alleged grand jury's secretary; demanding **hand-writing analysis** of the actual notes; **forensic analysis** to determine how 'garbled information' was placed on tape 3; and **all materials** under WV Code 52-2-4 that surround the alleged recall of a grand jury on November 2, 1992.

63. Indictments of such nature were returned against other prisoners who Plaintiff assisted in resolving. Plaintiff worked as the Senior Legal Clerk at the Huttonsville

17

Correctional where on one occasion he appeared before the W.V. Parole Board on behalf of inmate Xavier Scot. It was a successful hearing. But as inmate Scot was about to leave prison, he was suddenly served with an indictment accusing him of crime allegedly committed more than three years ago.

64. Plaintiff filed a *pro se* Motion for Failure to Prosecute within Three Terms of Court on behalf of inmate Scot, and upon a hearing conducted by assigned counsel, a judge granted said motion as believed.

65. Additionally, inmate Eric Day was also indicted allegedly by a special grand jury on November 2nd, 1992 for alleged old crimes. Defendant Frail and other State defendants denied all FOIA requests for documents, files, police and courts records, and grand jury minutes concerning his indictments, thus evidencing a pattern of continuous liable acts that will require federal law enforcements agencies to intervene, like the Fred Zain case, to determine how many inmates were also illegally sent to prison. A pattern of similar illegal acts exists. The legal system in Raleigh County, West Virginia is corrupted.

66. Plaintiff had contacted the FBI and office of the federal District Attorney for assistance on several occasions with a copy of the 53-page criminal complaint. In various responses, these offices claimed that statute of limitation is five years for federal crimes; unable to investigate the allegations; it would be better for plaintiff to seek the assistance of a federal court; a judicial intervention is required, etc. The only agency that intervened on Plaintiff's behalf was the Center for Public Integrity, but they are without any legal authority.

## VI. CLAIMS

1. By reasons of the above, Plaintiff's reputation has been severely injured and he has been brought into public scandal, disrepute, and disgrace, has been greatly hindered and prevented from pursuing his medical career being a medical graduate (M.D.) and a licensed Laboratory Supervisor (B.S., M.T.), has suffered immense emotional trauma and physical life-threatening injuries, and has spent a large sum of borrowed funds for several legal battles, including a forfeited $25,000.00 cash appeal bond; from arrest to extradition to trial to conviction to incarceration to numerous appeals that ended on August 12, 2003. As a result of the Defendants' willful failure to acknowledge their **non-immune** wrongdoings and grant relief as prayed for in several post-conviction appellate proceedings, including Freedom of Information Act Complaints, Criminal Complaints, etc, Plaintiff suffered physical injuries, loss of liberty, mental anguish, depression and anxiety, which became chronic and irreversible and drug dependent. (Elavil, Triavil, Vistaril, Zoloff, Paxil, etc. etc. etc.)

2. Defendants must be held liable also for their deliberate indifference that resulted in a near-death stabbing by a convicted murderer (Harry Jarrell **known** to be dangerous) who was trying to escape and who was illegally housed with the Plaintiff in the Raleigh County Jail.

3. Additionally, Plaintiff contracted Tuberculosis from another inmate (Aaron Bowling with **known** active TB) in the Raleigh County Jail that resulted in permanent liver damages. (Prison medical records available). The Jail defendants, through deliberate indifference and willful neglect, failed to isolate Mr. Bowling although quarantine space was available. This complaint is subject to amendment when or if counsel is retained.

19

## VII. PRAYER FOR RELIEF

1. WHEREFORE, Plaintiff prays for monetary judgment in the amount of ten million dollars ($10,000,000.00) as compensatory damages, punitive damages, economic losses, and any other relative damages appropriate for unconstitutional torts; malicious prosecution; fraud; gross police and prosecutorial misconduct; tampering, fabricating and concealing records; police and prosecutorial mischief and malfeasances; loss of liberty; severe mental anguish; serious physical injuries; the defendants' personal ill-will and reckless disregard of Plaintiff's health, right to liberty, freedom; gross violation of his civil rights; and for their deliberate disregard of the laws (state and federal) as a whole.

2. Plaintiff also demands permanent injunction against the defendants from performing such acts and enjoin them from similar activities in future.

3. Any further relief which the court may deem just and appropriate.

Dated: 7/11/05

Respectfully submitted,

Jamal Azeez
305 Marguerite Ave.
South Floral Park, New York 11001
516-476-1779

## DECLARATION UNDER PENALTY OF PERJURY

The undersigned declares under penalty of perjury that he is the Plaintiff in the above action, that he has read the above complaint, and that the information contained therein is true and correct pursuant to 28 U.S.C. §1746; U.S.C. §1621.

Respectfully submitted,

-----------

**JS 44** (Rev. 11/04)

# CIVIL COVER SHEET

MAG. Boyle . 7.11.05

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

**CV 05 3271**

## I. (a) PLAINTIFFS

Jamal A. Azeez, 305 Marguerite Ave., South Floral Park, New York 11001, (516) 476-1779

**(b)** County of Residence of First Listed Plaintiff ___ N ___
(EXCEPT IN U.S. PLAINTIFF CASES)

**(c)** Attorney's (Firm Name, Address, and Telephone Number)

PRO SE PLAINTIFF

## DEFENDANTS

Kristen L. Keller, Assistant Prosecuting Attorney, Lawrence Frail, Chief Prosecuting Attorney, Bruce K. Lazenby, Former Prosecuting Attorney, Francis M. Curnutte, III, Attorney at Law, Cedric Robertson, Police Officer, David H. Cook, II, Police Officer, Billy Cole, Chief of Police, John Hutchison, County Judge, Janice B. Davis, Clerk of Court

Attorneys (If known)

County of Residence of First Listed Defendant ___ WV ___

...ATION OF THE

**WEXLER, J.**

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

- ❏ 1 U.S. Government Plaintiff
- ☒ 3 Federal Question (U.S. Government Not a Party)
- ❏ 2 U.S. Government Defendant
- ❏ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ❏ 1 | ❏ 1 | Incorporated or Principal Place of Business In This State | ❏ 4 | ❏ 4 |
| Citizen of Another State | ❏ 2 | ❏ 2 | Incorporated and Principal Place of Business In Another State | ❏ 5 | ❏ 5 |
| Citizen or Subject of a Foreign Country | ❏ 3 | ❏ 3 | Foreign Nation | ❏ 6 | ❏ 6 |

**BOYLE, M.J.**

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ❏ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ❏ 610 Agriculture | ❏ 422 Appeal 28 USC 158 | ❏ 400 State Reapportionment |
| ❏ 120 Marine | ❏ 310 Airplane | ❏ 362 Personal Injury - | ❏ 620 Other Food & Drug | ❏ 423 Withdrawal | ❏ 410 Antitrust |
| ❏ 130 Miller Act | ❏ 315 Airplane Product | Med. Malpractice | ❏ 625 Drug Related Seizure | 28 USC 157 | ❏ 430 Banks and Banking |
| ❏ 140 Negotiable Instrument | Liability | ❏ 365 Personal Injury - | of Property 21 USC 881 | | ❏ 450 Commerce |
| ❏ 150 Recovery of Overpayment | ❏ 320 Assault, Libel & | Product Liability | ❏ 630 Liquor Laws | **PROPERTY RIGHTS** | ❏ 460 Deportation |
| & Enforcement of Judgment | Slander | ❏ 368 Asbestos Personal | ❏ 640 R.R. & Truck | ❏ 820 Copyrights | ❏ 470 Racketeer Influenced and |
| ❏ 151 Medicare Act | ❏ 330 Federal Employers' | Injury Product | ❏ 650 Airline Regs. | ❏ 830 Patent | Corrupt Organizations |
| ❏ 152 Recovery of Defaulted | Liability | Liability | ❏ 660 Occupational | ❏ 840 Trademark | ❏ 480 Consumer Credit |
| Student Loans | ❏ 340 Marine | **PERSONAL PROPERTY** | Safety/Health | | ❏ 490 Cable/Sat TV |
| (Excl. Veterans) | ❏ 345 Marine Product | ❏ 370 Other Fraud | ❏ 690 Other | | ❏ 810 Selective Service |
| ❏ 153 Recovery of Overpayment | Liability | ❏ 371 Truth in Lending | **LABOR** | **SOCIAL SECURITY** | ❏ 850 Securities/Commodities/ |
| of Veteran's Benefits | ❏ 350 Motor Vehicle | ❏ 380 Other Personal | ❏ 710 Fair Labor Standards | ❏ 861 HIA (1395ff) | Exchange |
| ❏ 160 Stockholders' Suits | ❏ 355 Motor Vehicle | Property Damage | Act | ❏ 862 Black Lung (923) | ❏ 875 Customer Challenge |
| ❏ 190 Other Contract | Product Liability | ❏ 385 Property Damage | ❏ 720 Labor/Mgmt. Relations | ❏ 863 DIWC/DIWW (405(g)) | 12 USC 3410 |
| ❏ 195 Contract Product Liability | ❏ 360 Other Personal | Product Liability | ❏ 730 Labor/Mgmt.Reporting | ❏ 864 SSID Title XVI | ❏ 890 Other Statutory Actions |
| ❏ 196 Franchise | Injury | | & Disclosure Act | ❏ 865 RSI (405(g)) | ❏ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ❏ 740 Railway Labor Act | **FEDERAL TAX SUITS** | ❏ 892 Economic Stabilization Act |
| ❏ 210 Land Condemnation | ❏ 441 Voting | ❏ 510 Motions to Vacate | ❏ 790 Other Labor Litigation | ❏ 870 Taxes (U.S. Plaintiff | ❏ 893 Environmental Matters |
| ❏ 220 Foreclosure | ❏ 442 Employment | Sentence | ❏ 791 Empl. Ret. Inc. | or Defendant) | ❏ 894 Energy Allocation Act |
| ❏ 230 Rent Lease & Ejectment | ❏ 443 Housing/ | **Habeas Corpus:** | Security Act | ❏ 871 IRS—Third Party | ❏ 895 Freedom of Information |
| ❏ 240 Torts to Land | Accommodations | ❏ 530 General | | 26 USC 7609 | Act |
| ❏ 245 Tort Product Liability | ❏ 444 Welfare | ❏ 535 Death Penalty | | | ❏ 900 Appeal of Fee Determination |
| ❏ 290 All Other Real Property | ❏ 445 Amer. w/Disabilities - | ❏ 540 Mandamus & Other | | | Under Equal Access |
| | Employment | ❏ 550 Civil Rights | | | to Justice |
| | ❏ 446 Amer. w/Disabilities - | ❏ 555 Prison Condition | | | ❏ 950 Constitutionality of |
| | Other | | | | State Statutes |
| | ❏ 440 Other Civil Rights | | | | |

## V. ORIGIN (Place an "X" in One Box Only)

☒ 1 Original Proceeding
❏ 2 Removed from State Court
❏ 3 Remanded from Appellate Court
❏ 4 Reinstated or Reopened
❏ 5 Transferred from another district (specify)
❏ 6 Multidistrict Litigation
❏ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
42 USC 1983

Brief description of cause:

## VII. REQUESTED IN COMPLAINT:

❏ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

**DEMAND $**

CHECK YES only if demanded in complaint:
**JURY DEMAND:** ❏ Yes ❏ No

## VIII. RELATED CASE(S) IF ANY

(See instructions): JUDGE RANDOM / RANDOM DOCKET NUMBER None

DATE

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT # _____ AMOUNT _____ APPLYING IFP _____ JUDGE _____ MAG. JUDGE _____

## ARBITRATION CERTIFICATION

I,_____, counsel for _____
_____do hereby certify pursuant to the Local Arbitration Rule 83.10 that to the best of my knowledge and belief the damages recoverable in the above captioned civil action exceed the sum of $150,000 exclusive of interest and costs.

_____ Relief other than monetary damages is sought.

## DISCLOSURE STATEMENT - FEDERAL RULES CIVIL PROCEDURE 7.1

Identify any parent corporation and any publicly held corporation that owns 10% or more or its stocks:

_____

Did the cause arise in Nassau or Suffolk County? Yes_____

If answered yes, please indicate which county. _____

County of residence of plaintiff(s)   (1) N _____
   (2)_____
   (3)_____

County of residence of defendant(s)  (1) WV _____
   (2)_____
   (3)_____

**I am currently admitted in the Eastern District of New York and currently a member in good standing of the bar of this court.**

Yes_____                      No_____

**Are you currently the subject of any disciplinary action(s) in this or any other state or federal court?**

Yes_____(If yes, please explain)        No_____

_____

_____

Please provide your E-MAIL Address and bar code below. Your bar code consists of the initials of your first and last name and the first four digits of your social security number or any other four digit number registered by the attorney with the Clerk of Court.
(This information must be provided pursuant to local rule 11.1(b) of the civil rules).
**ATTORNEY BAR CODE:**_____

**E-MAIL Address:** _____

I consent to the use of electronic filing procedures adopted by the Court in Administrative Order No. 97-12, "In re Electronic Filing Procedures(EFP)", and consent to the electronic service of all papers.

Signature: _____

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------X
JAMAL A. AZEEZ,

                             Plaintiff,                          05-CV-3271 (JS) (EFC Case)

       -against-

KRISTEN L. KELLER, LAWRENCE FRAIL, BRUCE K.    **NOTICE OF MOTION**
LAZENBY, FRANCIS M. CURNUTTE, III, CEDRIC
ROBERTSON, DAVID H. COOK, II, BILLY COLE,
JOHN HUTCHISON AND JANICE B. DAVIS,

                           Defendants.
-----------------------------------------------------------------------X

       PLEASE TAKE NOTICE that, upon the accompanying Affidavit of Jeffrey J. Imeri,

dated September 1, 2005, and Memorandum of Law, dated September 1, 2005, Defendants

Kristen L. Keller, Lawrence Frail, Bruce K. Lazenby, Cedric Robertson, David H. Cook, II, Billy

Cole, John Hutchison and Janice B. Davis will move this Court at the United States District

Courthouse at 100 Federal Plaza, Central Islip, New York, 11722, to dismiss the Complaint

pursuant to Rules 12(b)(2) and 12(b)(4) of the Federal Rules of Civil Procedure or, in the

alternative, to transfer venue to the United States District Court for the Southern District of West

Virginia pursuant to 28 U.S.C. 1404(a).


Dated:  New York, New York
        September 1, 2005



                                  CONROY, SIMBERG, GANON,
                                  KREVANS & ABEL, P.C.


                          By: _____
                              Jeffrey J. Imeri (JI 2938)

The Graybar Building
420 Lexington Avenue, Suite 335
New York, New York 10170
(212) 878-1700

Attorneys for Defendants
Kristen L. Keller, Lawrence Frail, Bruce K.
Lazenby, Cedric Robertson, David H. Cook,
II, Billy Cole, John Hutchison and Janice B.
Davis

TO:     Jamal A. Azeez
        Pro Se Plaintiff
        305 Marguerite Avenue
        South Floral Park, New York 11001

        Francis M. Curnutte, III
        Defendant
        900 Lee Street, Suite 1000
        Charleston, West Virginia 25301

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------X
JAMAL A. AZEEZ,

                         Plaintiff,                          05-CV-3271 (JS) (EFC Case)

         -against-
                                            **AFFIDAVIT OF**
KRISTEN L. KELLER, LAWRENCE FRAIL, BRUCE K.      **JEFFREY J. IMERI**
LAZENBY, FRANCIS M. CURNUTTE, III, CEDRIC
ROBERTSON, DAVID H. COOK, II, BILLY COLE,
JOHN HUTCHISON AND JANICE B. DAVIS,

                          Defendants.
-----------------------------------------------------------------------X


STATE OF NEW YORK        )
                           ) ss.:
COUNTY OF NEW YORK    )

      JEFFREY J. IMERI, being duly sworn, deposes and says:

      1.   I am a partner in the firm of Conroy, Simberg, Ganon, Krevans & Abel, P.C., counsel

for Defendants  Kristen L. Keller, Lawrence Frail, Bruce K. Lazenby, Cedric Robertson, David

H. Cook, II, Billy Cole, John Hutchison and Janice B. Davis in the above-entitled action and, as

such, am fully familiar with the facts and circumstances set forth herein.

      2.   This Affidavit is respectfully submitted in support of the Defendants' motion to

dismiss the complaint pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(4) or, in

the alternative, to transfer venue to the United States District Court for the Southern District of

West Virginia.

      3.   Attached hereto as Exhibit A is a true and correct copy of the summons and complaint

in this action.

      4.   Attached hereto as Exhibit B is the affidavit of Defendant Kristen L. Keller.

      5.   Attached hereto as Exhibit C is the affidavit of Defendant Lawrence Frail.

6.   Attached hereto as Exhibit D is the affidavit of Defendant Bruce K. Lazenby.

7.   Attached hereto as Exhibit E is the affidavit of Defendant Cedric Robertson.

8.   Attached hereto as Exhibit F is the affidavit of Defendant David H. Cook, II.

9.   Attached hereto as Exhibit G is the affidavit of Defendant Billy Cole.

10.  Attached hereto as Exhibit H is the affidavit of Defendant John Hutchison.

11.  Attached hereto as Exhibit I is the affidavit of Defendant Janice B. Davis.

12.  Attached hereto as Exhibit J is a true and correct copy of the decision in Girl Scouts

of the United States of America v. Steir, 2004 U.S. App. LEXIS 12515 (2d Cir. 2004).


_____
JEFFREY J. IMERI


Sworn to before me this

1st day of September, 2005

_____
Notary Public

**ROBERT J. PATCHEN**
**Notary Public, State of New York**
**No. 02PA5026807**
**Qualified in New York County**
**Commission Expires April 25, 2006**

Exhibit A

IN THE UNITD STATES DISTRICT COURT
FOR THE EASTERN DISTRICT AT BROOKLYN, NEW YORK

JAMAL A. AZEEZ,

        Plaintiff

CASE No. **CV 05 3271**

**WEXLER, J.**

KRISTEN L KELLER, Assistant Prosecuting Attorney
LAWRENCE FRAIL, Chief Prosecuting Attorney
BRUCE K. LAZENBY, Former Prosecuting Attorney
FRANCIS M. CURNUTTE, III, Attorney at Law
CEDRIC ROBERTSON, Police Officer
DAVID H. COOK, II, Police Officer
BILLY COLE, Chief of Police
JOHN HUTCHISON, County Judge
JANICE B. DAVIS, Clerk of Court
        Defendants,

**BOYLE, M.J.**

## A CIVIL RIGHTS COMPLAINT UNDER 42 USC §1983, 42 USC §1985 AND 28 USC §1332 ALLEGING UNLAWFUL ARREST TO UNLAWFUL INCARCERATION

(PLAINTIFF DEMANDS TRIAL BY JURY
WITHIN 10 DAYS OF SERVICE OF THE ANSWER)



RECEIVED
JUL 1 1 2005
PRO SE OFFICE

This is a Civil Rights Complaint filed by Plaintiff Jamal A. Azeez for declaratory judgment and money damages. Plaintiff alleges that the above-named defendants, through their collective acts, practices, omissions, and acting under color of laws have violated clearly established rights by falsely and unlawfully arrested and imprisoned him for twenty four months, thus denying him liberty, privileges, immunities, and equal protection of the law without affording him due process in violation of the Fifth and Fourteenth Amendments of the United States Constitution. Plaintiff also alleges that the said defendants committed state tort acts by abuse of authority, abuse of process, malicious prosecution, obstruction of justice under the principles of WV Code §61-5-27; alteration, concealment and/or destruction of public records accessible under the Freedom of Information Act; and failure to perform officials duties under WV Code §61-5-28. Plaintiff further alleges that the unconstitutional and unlawful actions of the defendants were done maliciously, intentionally, willfully, oppressively, conspiratorially and deliberately with indifference, wanton and reckless disregard for Plaintiff's constitutionally vested rights.

## I. JURISDICTION

1. This case is brought pursuant to 42 USC §1983 and §1985 and 28 USC §1332 (Diversity Jurisdiction) because Plaintiff is a citizen of the State of New York for more than twenty five year, his constitutional rights were violated by said defendants acting under color of law; and the matter of controversy is approximately ten million dollars ($10,000,000.00). The Defendants are all active citizens of West Virginia.

2

## II. TIMELINESS OF SUIT

On August 12, 2003, the Honorable Robert E. Maxwell, Chief Judge of the Northern District at Elkins, West Virginia, granted Summary Judgment as prayed for by the Plaintiff on a *pro se* federal habeas corpus petition and forthwith released Plaintiff from incarceration. This action is filed within the two year the federal statute of limitation allows. The defendants, unable to overcome the Court's rulings chose not to appeal the Judgment Order. The charges are now considered dismissed.

## III. PARTIES

1 Plaintiff at all times relevant to this action was and still is a bona fide citizen of the United States; a medical graduate (MD, BS) specialized in laboratory medicine; an ex-lieutenant of the United States Army; an ex-auxiliary police officer of the New York Police Department; a certified legal assistant/paralegal whose current address is 305 Marguerite Ave South Floral Park, New York 11001.

2 Defendants Keller, Frail, and Lazenby were at relevant times prosecuting attorneys and citizens for the State of West Virginia, whose principal place of business is located at 112 N. Heber St. Beckley, West Virginia, 25801. They are being sued in their individual and official capacities

3. Defendants Robertson, Cook, and Billy Cole were at all times relevant to this action duly sworn Police Officers and citizens of West Virginia whose principal place of business is located at 304 Prince Street, P.O. Drawer AJ, Beckley West Virginia, 25802. They are being sued in their individual and official capacities.

4. Defendant Janice Davis was at all times relevant to this action, Clerk of the Raleigh County Courthouse and citizen of West Virginia whose principal place of business is located at 217 Main Street, Beckley, West Virginia, 25801.

5. Defendant Francis M Curnutte III, Esq., is an attorney at law and citizen of West Virginia whose business address is: Hunt and Serreno, 900 Lee Street, Suite 1000, Charleston, West Virginia 25301-1714. He is being sued in his individual capacity.

6. John Hutchison is an elected judicial officer and citizen of West Virginia whose principal place of business is located at 217 Main Street, Beckley, West Virginia 25801. He is being sued in his individual and official capacities.

## IV. BASIS OF COMPLAINT

1. The Plaintiff was convicted on a "Failure to Appear" charge in the Raleigh County Circuit Court on March 25, 1993, and was sentenced to no less than one to no more than five years (1-5years) on June 3, 1993 collectively by the named defendants.

2. Plaintiff began his incarceration at the Huttonsville Correctional Center; West Virginia on August 19, 2001. After exhausting all state appellate remedies, Plaintiff was exonerated and court-ordered released by the Honorable Robert E. Maxwell, Senior Federal Judge of the Northern District at Elkins, West Virginia on August 12, 2003. All relief prayed for were granted on a Motion for Summary Judgment: Case No.00-CV-54.

28 USC §2254

4

## V. STATEMENT OF FACTS

(a) Defendant Robertson

1. On September 12, 1988, Defendant Robertson allegedly appeared before a grand jury, and under solemn oath testified – maybe under duress or induced – 'Jamil Azeez failed to appear in court on September 25, 1987 as Ordered by the Honorable Thomas Canterbury...for sentencing'. (Documentary evidence exists)

2. By such statements as appeared on the face of Indictment No. 88-F-203, signed by Defendant Lazenby, Petitioner was subsequently indicted, arrested and extradited under said Indictment. (Documentary evidence exists)

3. Contrary those assertions, Plaintiff avers that Defendant Robertson was fully aware of Plaintiff's true name which has always been known to him as Jamal Adeen Azeez; that Plaintiff was already sentenced on September 14, 1987 (for a separate charge which is presently pending a federal review also); that there was no order entered by Judge Canterbury commanding Plaintiff to appear; and most contradicting, that Plaintiff was in the same courthouse jail on said September 25, 1987 placed there by said Defendant, thus creating a suspicion that 88-F-203 is a willfully-fabricated document. (Defendant Keller always referred to Plaintiff as 'Jamil').

4. Plaintiff was arrested in the State of Florida on August 19, 1991 on a capias warrant, and during costly extradition proceedings, Defendants Robertson and Cook appeared in a local court and presented said Indictment as a True Bill evidencing and verifying that Plaintiff was indicted a grand jury.

5. Plaintiff claims that Defendant Robertson, without probable cause, deliberately, intentionally, maliciously, conspiratorially, and with clear disregard of the law and a

citizen's rights, committed gross unconstitutional acts to have Plaintiff indicted, arrested, and extradited under falsified information.

<u>(b) Defendant Lazenby</u>

6. If Defendant Robertson did appear before a grand jury and was induced to testify so perjuriously, then Defendant Lazenby should be held liable for 'Compromise of Indictment' under WV Code §62-2-25. Defendant Lazenby signed 88-F-203.

7. Plaintiff states that if Defendant Robertson did not appear before a grand jury and did not testify so perjuriously, it therefore remains highly probable that Indictment No. 88-F-203 is a fabricated piece of document and Defendant Lazenby is equally liable as Defendant Robertson.

8. Plaintiff alleges that Defendant Lazenby, as well as Defendant Frail, unlawfully refused disclosure of the grand jury minutes of 88-F-203 for trial and appeal purposes in spite of such well-proven particularized needs that overcame all restrictions that could have prevented public exposure; thus responsible for obstruction of justice, willful concealment of presecutorial and police malfeasances; and other related actionable wrongdoings.

<u>(c) Defendant Keller</u>

9. Plaintiff filed a pre-trial Motion to Quash Indictment No. 88-F-203 being grossly defective and fatal. Upon becoming aware of such fatalities, Defendant Keller sent Plaintiff (two weeks before trial) an "Amended Indictment: No. 92-F-342" and verified that it was returned by a regular grand jury on 'November 2, 1992'.

10. Plaintiff alleges that Defendant Keller did not follow well-established state laws, and did not obtain the required judicial permission to have a grand jury session

recalled to re-indict Plaintiff. Extreme doubts exist, as described below, that a grand jury was ever recalled at any time. (Documentary evidence exists).

11.   Unable to accuse Plaintiff Azeez for a specific date he failed to appear, Defendant Keller impermissibly broadened Indictment 92-F-342 to reflect a time span between 'July 1988 thru August 1991' which included a time Plaintiff Azeez was still exhausting his appeal remedies and when the appeal bond was still in effect. (Documentary evidence exists).  Two versions of this document exist on file -- one without the signature of the Clerk of the Court, a file number, or a court stamp).

12.   At trial, when Judge John Ashworth noticed both indictments (88-F-203 and 92-F-342) accusing the Plaintiff of the same charge and questioned the State, Defendant Keller quickly stated, in short, that the old one (88-F-203) ... was 'withdrawn', stricken from the docket and nulled by another Judge... the 'form of the language is wrong...it's their (defense) typist's problem'.... (Documentary evidence exists). Believing all of this to be true Judge Ashworth then allowed Defendant Keller to proceed under the superseding Indictment #92-F-342 upon which the conviction was acquired. - - -    - - -

13.   Plaintiff then filed a post-trial Motion for the Production of The Grand Jury Minutes of Indictment 92-F-342.  Judge Ashworth wrote in an Order that he was given "Tape 3" and after an auditory review, found 'garbled information ... taped over existing recording...only where (Plaintiff) Azeez grand jury minutes were (allegedly) recorded...' (Documentary evidence exists)

14. Since the minutes were unobtainable magnetically, Judge Ashworth was given (by an unknown party), 'handwritten notes (allegedly) taken by the grand jury secretary' in substitute for actual minutes. (Documentary evidence exists).

15. The note stated that Defendant Cook appeared and accused Plaintiff for "applying for S.S.# … and worked for hospitals in Florida… " none of which is true. (Documentary evidence exists).

16. Suspecting criminal and civil wrongdoings, Plaintiff and a friend William Stanley immediately sent two separate Freedom of Information Act requests to Defendant Clerk Davis asking for 'all the dates the grand jury met in 1992'. In her responses, Defendant Davis verified (court-sealed) both times that no grand jury session was held on November 2, 1992. (Documentary evidence exists).

17. Prior to trial, Plaintiff filed a motion to dismiss the charge based on the state's unconstitutional 'Failure to Prosecute Within Three Terms of Court'. To overcome the First Term, Defendant Keller presented to the trial court, a Motion for Continuance prepared by her, signed by Judge Burnside (who was then her boyfriend; now her husband), and claimed that an attorney, Karen Kostol, a Public Defender, entered said Motion.

18. Defendant Keller (falsely) verified that Ms. Kostol "appeared with the Plaintiff in court" during an alleged hearing held on February 7, 1992 and "moved" the Court to continue the case. (Documentary evidence exists).

19. First, Petitioner avers that 'Defense Counsel' never endorsed the continuance, although it is required by law to become effective and enforceable.

20. Second, Plaintiff avers that Ms. Kostol never requested for such continuance; she never appeared in court on behalf of Plaintiff on this matter; and she was never aware of any hearing conducted on this matter — although her name was typewritten on the Order.

21. Third, Judge Burnside whom Defendant Keller was romantically involved with during those times, endorsed the Continuance Order; thus resulted in conflict of interest, intentional miscarriage of justice, conspiracy, fraud, and other uncivil acts that bar any immunity defense in this action.

22. Fourth, Plaintiff avers that **no attorney** was even assigned to the case then; there was **no hearing** conducted on the alleged motion; he **never met** Ms. Kostol anytime during the case; **never appeared** in court with Ms. Kostol anytime during the entire case; and most importantly, **never requested** Ms. Kostol to file such motion. (Documentary evidence exists from Ms. Kostol).

23. As a result of such gross uncivil acts by Defendant Keller, Plaintiff's constitutional right to be tried within three terms of court was stymied, violated, and compromised. Such disregard for the law and evil motive of Defendant Keller successfully overcame Plaintiff's Motion to Dismiss for Failure to Prosecute.

24. At trial, defense attorney Joseph Noggy (Public Defender) raised claims that he was not informed about the State's move to re-indict Plaintiff Azeez, and that 'nothing official has been done' under the provisions of WV 52-2-4. Judge Ashworth ignored him and continued the trial under the new indictment accepting fraudulent statements intentionally made by Defendant Keller.

25. Appearing confused, when Judge Ashworth informed the jury that 'there has been an original trial ,.. a conviction ..a habeas corpus appeal ... that was addressed as 88-F-203', Defendant Keller deliberately did not clear such misinformation, condoned it, and allowed such harm to go uncorrected by saying, "That's right, Your Honor." Accordingly, Defendant Keller intentionally misinformed the jury about Indictment 88-F-

203 so as to proceed with the trial under the Amended Indictment 92-F-342. (Documentary evidence exists).

26. Immediately after conviction, Plaintiff Azeez requested copies of the annulment Order pertaining to 88-F-203, the name of presiding judge, a copy of the transcripts of such proceeding identifying the date, and the parties who attended it.

27. It is believed that Defendant Keller then quickly removed Plaintiff's files from the custody of the Defendant Clerk Davis, unlawfully concealed them for two full years between March 1996 and March 1998, and after reconstructing them to suit her satisfaction, she then secretly placed them in Judge H.L. Kirkpatrick's chamber where a secretary of appellate counsel found them. Judge Kirkpatrick was assigned to hear the habeas corpus appeal. One can only imagine what goes on behind closed doors of the Raleigh County Courthouse

28. Judge Kirkpatrick was totally unaware of the files whereabouts when he was contacted by both habeas corpus counsel who went as far as the West Virginia Supreme Court of Appeals looking for them during appellate period. Judge Kirkpatrick declared that he was unaware that the files were placed in his chambers. Accordingly, Plaintiff was unlawfully and unconstitutionally denied access to his files for two full years in spite counsels' diligent efforts to locate them due to Defendant's Keller willful non-immune, constitutionally-liable acts.

29. When habeas corpus counsel James Anderson finally discovered the records, a copy was sent to Plaintiff who discovered an ORDER clearly expressing that it was not until "The 3rd day of June 1993... It is hereby ORDERED that 88-F-203 be NULLED and STRICKEN from the docket," .. signed by Judge Ashworth. (Documentary

evidence exists). Unfortunately, Judge Ashworth did not remember that he was told at trial that said Indictment was already withdrawn and nulled by another Judge.

30 Conclusively, Defendant Keller committed gross intentional and liable acts to have Plaintiff Azeez tried and convicted under 92-F-342 while 88-F-203 was still active during all trial phases.

31. The magnitude of Defendant Kellers' wrongdoings has recently reached national level. The severity and recurrence of her misconducts were singled out (among hundreds of prosecutors) by civil rights groups like Center for Public Integrity. AP newspaper article head-lined: **"Dozens falsely imprisoned due to prosecutor misconduct")**. Keller denied her involvement in the 'racial bias' issue regarding Plaintiff's previous conviction, but acknowledged her role in the 'escape' (Failure to Appear) case. (Documentary evidence exists)

(d) Defendant Curnutte

32. Upon becoming aware that Defendant Curnutte was subpoena by Defendant Keller to testify as a state witness, Plaintiff confidentially contacted him (through the advice of Public Defender Joseph Noggy who was assigned to the Failure to Appear case) and 'begged' Defendant Curnutte to testify 'truthfully', and warned him of the potential breach of 'confidentiality on privileged information' and other 'unethical ramifications' should be testify against Plaintiff. (Documentary evidence exists).

33. During a hearing on a defense motion to bar Defendant Curnutte from testifying, Judge Ashworth specifically ruled that Defendant Keller "could not use Curnutte as a witness-in-chief", and Defendant Curnutte was fully aware of the Judge's ruling. (Documentary evidence exists)

34. Defendant Curnutte impermissibly, unethically, and conspiratorially turned the confidential letter over to Defendant Keller who interpreted it as a 'threat' so as to have Defendant Curnutte return for trial purposes.

35. Unexpectedly, Defendant Curnutte showed up for trial because Defendant Keller depended heavily and solely on him to fulfill burden of proof. During another in-camera hearing, Defendant Curnutte was allowed to take the stand but only on matters concerning the letter, and was again admonished several times on privileged information.

36. In violation of the Court's rulings, Defendant Curnutte willfully breached confidentiality and committed several ethical violations when he disclosed before the jury untruthful testimony against Plaintiff that were partially responsible for Plaintiff's conviction. Judge Ashworth recognized the 'error' but did not provide any relief as promised. Defendant Keller acknowledged her error, saying, "I'm sorry". (Documentary evidence exists).

37. Plaintiff subsequently filed an Ethics Complaint successfully against Defendant Curnutte when the WV Lawyer Disciplinary Board agreed with Plaintiff and attempted to penalize Defendant Curnutte for breaching several codes on ethical conduct. (Documentary evidence exists)

38. Whereas the conviction was reversed partially on Defendant Curnutte's unconstitutional acts, he must be held responsible and liable equal to the rest of the defendants.

### (e) Defendant Janice B. Davis

39. Under principles of WV Code 52-2-4 (Special Term), it is strictly mandated that the 'sheriff must execute the process' in summoning every grand juror, the clerk must 'enter the warrant in the order book of the court', 'a copy of the warrant must be posted at the door of the courthouse', and as in any regular term, the clerk must keep a record of the jury re-imbursement (payment) for their services. These records are subject to public inspection.

40. By law, Defendant Davis was and is responsible for the control, care, and custody of all such court files and records; and for keeping a log on whoever and whenever records are removed and returned to her office. (See WV Trial Court Rules 10.02).

41. It is highly probable that Defendant Davis conspired and unlawfully allowed Defendant Keller to have Plaintiff's records removed without the required court order.

42. Two civilians who personally went to the Clerk's office to inspect such public records and files were denied access. Defendant Davis refused and as such conspired to conceal the obvious wrongdoings of Defendant Keller.

43. Requests from Plaintiff she had control of solely, and required answers on, were wrongfully turned over to either the defendant judge or prosecuting attorneys' office for response.

44. During incarceration, when Plaintiff first became aware of some of the above-alleged illegal acts committed by said defendants, he initiated a *pro se* complaint in March of 1996 in the Southern District Court: Case No.CA-96-0367-5; thus barring any statute-of-limitation defense. By Order, the Honorable David Faber dismissed said

08/10/05 WED 09:39 FAX 3043437300 JUDGE JOHN R. HUTCHINSON ... Filed 09/06/2005 Page 43 of 50 PageID #: 89
AUG. 4. 2005 9:41AM JUDGE JOHN R. HUTCHINSON

complaint and ruled that Plaintiff must first 'exhaust his state remedies' and have the conviction and sentence terminated in plaintiff's way, done so within the last two years.

45. It was during litigation of the above-stated case, Plaintiff's entire court records and files in the Defendants' state court were removed from the Clerk's office without a trace for two full years. Now that the conviction and sentence have been set aside, Plaintiff has a right to re-litigate the claims.

46. By law, a Commitment Order is required to be executed by a Judge and transmitted to the Division of Correction 'within eight (8) months after sentencing' if incarceration is required of a convicted person. Plaintiff was sentenced since June 3, 1993.

47. Plaintiff was scheduled to be released from the Huttonsville Correctional Center in August 2001 after discharging his former sentence because there were 'no commitment papers' to keep him further incarcerated on the Failure to Appear charge.

48. In February of 2001, after Defendant Davis was informed that Plaintiff was about to be released, she quickly sent an illegal Commitment Order — not endorsed/excuted by a Judge, which made it unenforceable — to the West Virginia Division of Corrections for the purpose of furthering incarceration of the Plaintiff. (Documentary evidence exists)

49. Defendant Davis subsequently treated Plaintiff discriminatingly when she deliberately ignored simple requests only she had control of; apparently influenced by court officials and the named defendants, for fear of exposing more official wrongdoings.

50. Defendant Davis discriminatingly started to use plain paper (not official court stationeries) to communicate with the incarcerated Plaintiff only when it was absolutely necessary (Documentary evidence exists)

51. All documents to Plaintiff that subsequently issued from her office were unsigned, and Plaintiff claims it as pure disrespect, discrimination and intentional indifference since she treated other litigants otherwise.

52. Defendant Davis must be held liable for deliberate neglect of her duty when Plaintiff's entire court files were removed from her office and missing for two full years during critical post-conviction stages for which she should have known. Additionally, Defendant Davis must be held liable under the provisions of Freedom of Information Act laws when she deliberately refused requested access to unrestricted public records relating to the Failure to Appear conviction, especially on matters surrounding the amended indictment proceedings, and documents relating to the alleged 'special session' grand jury.

(f) Defendant John Hutchison

53. Plaintiff exhausted several local FOIA steps by requesting production of court and police records that related to the case. After repeated denials, Plaintiff filed an actual complaint under Freedom of Information Act (FOIA) in the Raleigh County Court hoping for a successful judicial intervention. During a hearing, Defendant Hutchison treated Plaintiff with severe disrespect, being pro se, and threatened by Plaintiff 'not to return' to the court looking for documents, because all matters were considered 'res judicata'.

54. Plaintiff then filed with several state agencies a 53-page 'Criminal Complaint' that should have been reviewed first by the Office of the Prosecuting

Attorney. The Defendants of the Beckley Police Department totally ignored the complaint although Plaintiff had a civilian friend to personally file said complaint.

55. Instead of replies from either the State Police, the Beckley City police, or the State Attorney General's office, Defendant Hutchison unlawfully intervened and abused his judicial authority; and beyond the scope of his judicial responsibilities, wrongfully, intentionally, and without justification, interpreted the **criminal** complaint as a 'civil suit'; specifically done so as to apply the principles of Prison Litigation Reform Act. Defendant Hutchison retaliatorally and punitively revoked '50% of all earned good-time credit'; even on a sentence that was already discharged. He dismissed the Complaint as being 'frivolous'. Plaintiff had never been accused of filing any 'frivolous' complaint in that court; making such sanction inappropriate, unlawful, and retaliatory.

56. The Honorable John S. Kaull and Robert E. Maxwell of the Northern District Court recently ruled on a federal appeal on said case that Plaintiff should file a 'civil rights' complaint instead of habeas corpus petition against Defendant Hutchison for 'retaliation'. (Case No. 2:03 CV 17 NDWV).

(g) Defendants Billy Cole and David Cook

57. Plaintiff sent Defendant Billy Cole several FOIA requests for inspection and/or reproduction of unrestricted public records regarding the police involvement on the instant case. Defendant Cole denied them all.

58. Defendant Billy Cole must be held liable under the provisions of FOIA for refusing inspections of the Police Roster (Log), a public record which documented the assignments (whereabouts) of Defendant David Cook on November 2, 1992; a date it was

16

alleged that Defendant Cook appeared and testified against Plaintiff before a 'special' session grand.

59. Defendant Cole also refused inspection and/or copying of 'service process' by which each grand juror was allegedly summoned for their alleged re-appearance on November 2, 1992 grand jury special session in spite of a Freedom of Information Act requests and a civil complaint.

60. Defendant Cook, like Defendant Cole must be held liable for conspiracy to conceal officials' wrongdoings, malicious prosecution, obstruction of justice, intentional police misconduct since his testimony, as allegedly handwritten by a grand jury secretary, is considered perjury; all done so with the willful intent to harm and punish Plaintiff.

(h) Defendant Frail

61. Knowing that Defendant Frail endorsed 92-F-342, he must be held liable since it is highly obvious that no grand jury was ever recalled; when nulling of 88-F-203 did not occur prior to trial; for allowing a trial to proceed when two indictments existed both accusing Plaintiff of the same charge; and for inducing Defendant Cook to testify perjuriously.

62. Plaintiff is demanding full discovery of original materials on the 'hand-written notes' concerning Defendant Cook's testimony allegedly written by an alleged grand jury's secretary; demanding **hand-writing analysis** of the actual notes; **forensic analysis** to determine how 'garbled information' was placed on tape 3; and **all materials** under WV Code 52-2-4 that surround the alleged recall of a grand jury on November 2, 1992.

63. Indictments of such nature were returned against other prisoners who Plaintiff assisted in resolving. Plaintiff worked as the Senior Legal Clerk at the Huttonsville

17

Correctional where on one occasion he appeared before the W.V. Parole Board on behalf of inmate Xavier Scot. It was a successful hearing. But as inmate Scot was about to leave prison, he was suddenly served with an indictment accusing him of crime allegedly committed more than three years ago.

64. Plaintiff filed a *pro se* Motion for Failure to Prosecute within Three Terms of Court on behalf of inmate Scot, and upon a hearing conducted by assigned counsel, a judge granted said motion as believed.

65. Additionally, inmate Eric Day was also indicted allegedly by a special grand jury on November 2nd, 1992 for alleged old crimes. Defendant Frail and other State defendants denied all FOIA requests for documents, files, police and courts records, and grand jury minutes concerning his indictments, thus evidencing a pattern of continuous liable acts that will require federal law enforcements agencies to intervene, like the Fred Zain case, to determine how many inmates were also illegally sent to prison. A pattern of similar illegal acts exists. The legal system in Raleigh County, West Virginia is corrupted.

66. Plaintiff had contacted the FBI and office of the federal District Attorney for assistance on several occasions with a copy of the 53-page criminal complaint. In various responses, these offices claimed that statute of limitation is five years for federal crimes; unable to investigate the allegations; it would be better for plaintiff to seek the assistance of a federal court; a judicial intervention is required, etc. The only agency that intervened on Plaintiff's behalf was the Center for Public Integrity, but they are without any legal authority.

# VI. CLAIMS

1. By reasons of the above, Plaintiff's reputation has been severely injured and he has been brought into public scandal, disrepute, and disgrace, has been greatly hindered and prevented from pursuing his medical career being a medical graduate (M.D.) and a licensed Laboratory Supervisor (B.S., M.T.), has suffered immense emotional trauma and physical life-threatening injuries, and has spent a large sum of borrowed funds for several legal battles, including a forfeited $25,000.00 cash appeal bond; from arrest to extradition to trial to conviction to incarceration to numerous appeals that ended on August 12, 2003. As a result of the Defendants' willful failure to acknowledge their **non-immune** wrongdoings and grant relief as prayed for in several post-conviction appellate proceedings, including Freedom of Information Act Complaints, Criminal Complaints, etc, Plaintiff suffered physical injuries, loss of liberty, mental anguish, depression and anxiety, which became chronic and irreversible and drug dependent. (Elavil, Triavil, Vistaril, Zoloff, Paxil, etc. etc. etc.)

2. Defendants must be held liable also for their deliberate indifference that resulted in a near-death stabbing by a convicted murderer (Harry Jarrell **known** to be dangerous) who was trying to escape and who was illegally housed with the Plaintiff in the Raleigh County Jail.

3. Additionally, Plaintiff contracted Tuberculosis from another inmate (Aaron Bowling with known active TB) in the Raleigh County Jail that resulted in permanent liver damages. (Prison medical records available). The Jail defendants, through deliberate indifference and willful neglect, failed to isolate Mr. Bowling although quarantine space was available. This complaint is subject to amendment when or if counsel is retained.

## VII. PRAYER FOR RELIEF

1. WHEREFORE, Plaintiff prays for monetary judgment in the amount of ten million dollars ($10,000,000.00) as compensatory damages, punitive damages, economic losses, and any other relative damages appropriate for unconstitutional torts; malicious prosecution; fraud; gross police and prosecutorial misconduct; tampering, fabricating and concealing records; police and prosecutorial mischief and malfeasances; loss of liberty; severe mental anguish; serious physical injuries; the defendants' personal ill-will and reckless disregard of Plaintiff's health, right to liberty, freedom; gross violation of his civil rights; and for their deliberate disregard of the laws (state and federal) as a whole.

2. Plaintiff also demands permanent injunction against the defendants from performing such acts and enjoin them from similar activities in future.

3. Any further relief which the court may deem just and appropriate.

Dated: 2/11/05

Respectfully submitted,

Jamal Azeez
305 Marguerite Ave.
South Floral Park, New York 11001
516-476-1779

20

# DECLARATION UNDER PENALTY OF PERJURY

The undersigned declares under penalty of perjury that he is the Plaintiff in the above action, that he has read the above complaint, and that the information contained therein is true and correct pursuant to 28 U.S.C. §1746; U.S.C. §1621.

Respectfully submitted,