IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

BECKLEY DIVISION

JAMAL A. AZEEZ,                    )
                                  )
          Plaintiff,              )
                                  )
v.                                )          Civil Action No. 5:06-0106
                                  )
KRISTEN KELLER, *et al.*,         )
                                  )
          Defendants.             )

PROPOSED FINDINGS AND RECOMMENDATION

By this Proposed Findings and Recommendation, the undersigned considers Defendants'

Motions to Dismiss (Document Nos. 39 (Motion to Dismiss on Behalf of Defendants Kristen L.

Keller, Lawrence Frail, Bruce K. Lazenby, Cedric Robertson, David H. Cook, II, Billy Cole and

Janice B. Davis[1]) and 51 (Motion to Dismiss on Behalf of Defendant Francis M. Curnutte).) Plaintiff

has filed Responses to Defendants' Motions. (Document Nos. 53 and 57.) Having thoroughly

examined the record in this case, the undersigned respectfully recommends that the Motion to

Dismiss filed on Behalf of Raleigh County Defendants (Document No. 39.) should be granted in part

and denied in part and Defendant Curnutte's Motion to Dismiss (Document No. 51.) should be

granted.

FACTUAL AND PROCEDURAL HISTORY

A.    **Plaintiff's State Convictions.**

Plaintiff was convicted in the Circuit Court of Raleigh County, West Virginia, on July 31,

1987, of the second degree sexual assault of an adult female patient at Appalachian Regional

---

[1] The undersigned will sometimes refer to these Defendants as "the Raleigh County Defendants."

Hospital in Beckley, West Virginia, where Plaintiff worked as a lab technologist. Plaintiff was sentenced on September 14, 1987, to ten to twenty years in the State penitentiary. On November 5, 1987, Plaintiff was released on $25,000 bond while his appeal was pending.[2] On May 24, 1988, Plaintiff, represented by Defendant Francis Curnutte, filed a Petition for Appeal to the West Virginia Supreme Court of Appeals challenging his sexual assault conviction. The West Virginia Supreme Court denied Plaintiff's appeal on July 20, 1988. State v. Azeez, Case No. 880691 (W.Va. July 20, 1988). Plaintiff then requested renewal of his Petition for appeal, and the West Virginia Supreme Court of Appeals denied it on September 9, 1988.

Plaintiff was charged by Indictment returned on September 12, 1988, and designated 88-F-203 in the Circuit Court of Raleigh County with failing to appear for sentencing upon his sexual assault conviction on September 25, 1987, in violation of West Virginia Code § 62-1C-17B. Specifically, Indictment No. 88-F-203 reads as follows:

---

[2]  The November 5, 1987, appeal bond provided as follows in part:

> Now, therefore, if the said Jamal Azeez shall make his personal appearance before the Judge of the Circuit Court of Raleigh County at the Court House thereof on the 28th day of December, 1987, and then and there to answer the State of West Virginia of any indictment concerning any such offense that has been returned or may hereafter be returned against him, and then and there render himself amenable to the order and process of the Court, and from term to term and time to time thereafter, to which the proceedings concerning such offense and indictment may be continued, until the matter is finally terminated, and if convicted shall appear for judgment and render himself in execution thereof to such day as the Court may order and shall not depart thence without leave of the Court, then this bond shall be void; otherwise to remain in full force and effect.

Upon his release on bond on November 5, 1987, Plaintiff returned to gainful employment in Charleston, West Virginia, until his life was threatened by three individuals. (Document No. 40, Azeez v. Haines, 2:00-0054 (N.D.W.Va. Aug. 11, 2003).) Plaintiff reported the altercation with the three individuals to the police and decided to leave town. Id. Evidently, Plaintiff moved to Florida.

> The Grand Jurors of the State of West Virginia, in and for the body of the County of Raleigh, upon their oaths present that JAMAL AZEEZ, on or about the 25th day of September 1987, in the said county of Raleigh, did unlawfully and feloniously, having been admitted to bail and released in accordance with the laws of this State did willfully and without just cause fail to appear as and when it was required of him to wit: did fail to report as Ordered by the Honorable C. Thomas Canterbury, for sentencing for the crime of Second Degree Sexual Assault, against the peace and dignity of the State, and found upon the testimony of Det. Cedric Robertson, BCPD duly sworn to testify the truth before the grand jury this the 12th day of September 1988.

One week later, a *capias* warrant was issued for Plaintiff's arrest based upon his 1988 Indictment for failure to appear in 88-F-203. Id. Plaintiff was arrested pursuant to the *capias* warrant in Florida on August 19, 1991, nearly three years after the West Virginia Supreme Court of appeals denied his request for renewal of his appeal and the issuance of the Indictment in State v. Azeez, Case No. 88-F-203 (Cir. Ct. Raleigh Co. 1992.) Plaintiff was extradited to West Virginia on December 4, 1991.

Two weeks before his trial on the failure to appear charge, Plaintiff filed a Motion to Quash Indictment No. 88-F-203 as "grossly defective and fatal." (Document No. 23, Ex. 2, p. 6.) Defense counsel argued that the 1988 Indictment was fatally flawed because the Indictment charged Plaintiff with failing to appear for sentencing in the sexual assault case on September 25, 1987, when he was sentenced in that case on September 14, 1987, and was not released on his appeal bond until November 5, 1987. Plaintiff asserts that Raleigh County prosecutor Kristen Keller procured an "Amended Indictment," Indictment No. 92-F-342, which reads:

> The Grand Jurors of the State of West Virginia, in and for the body of the County of Raleigh, upon their oaths present that JAMAL AZEEZ, on or about July 1988 through August 1991, in the said county of Raleigh, unlawfully and feloniously, having been admitted to bail and released in accordance with the laws of this State did willfully and without just cause fail to appear as and when it was required of him and the said JAMAL AZEEZ had been convicted of the felony of sexual assault and sentenced upon such felony, against the peace and dignity of the State, and found upon the testimony of Det. D.H. Cook, II, BCPD duly sworn to testify the truth before the grand jury this the 2nd day of November, 1992.

(Document No. 53, Ex.1, p. 23.)(emphasis added). The Indictment was signed by Lawrence K. Frail. (Document No. 23, Ex. 2, p. 6.) Plaintiff was convicted upon the charge of failure to appear in the Circuit Court of Raleigh County on March 25, 1993. Plaintiff unsuccessfully appealed his failure to appear conviction to the West Virginia Supreme Court. State v. Azeez, Case No. 93-2108.

### B.    First State *Habeas* Petition Challenging Sexual Assault Conviction.

On June 11, 1992, Plaintiff filed a Petition for Writ of *Habeas Corpus* in the Circuit Court of Raleigh County challenging his sexual assault conviction. State *ex rel.* Azeez v. Mangum, Civil Action No. 92-HC-56 (Cir. Ct. Raleigh County). The Circuit Court conducted a hearing and by Order entered on September 1, 1993, denied his Petition for *habeas* relief on the merits. On November 16, 1993, Plaintiff, represented by attorneys Franklin D. Cleckley and Paul R. Cranston, appealed the Circuit Court's denial of his *habeas* Petition to the West Virginia Supreme Court. State *ex rel.* Azeez v. Mangum, 195 W.Va. 163, 465 S.E.2d 163 (1995). By decision dated July 13, 1995, the West Virginia Supreme Court rejected Plaintiff's assignments of error and affirmed the Circuit Court's decision. On November 13, 1995, Plaintiff filed an original jurisdiction Petition for *Habeas Corpus* in the West Virginia Supreme Court. The West Virginia Supreme Court refused his Petition by Order entered on May 15, 1996. State *ex rel.* Azeez v. Duncil, Case No. 952230 (W.Va. May 15, 1996).

### C.    First State *Habeas* Petition Challenging Failure to Appear Conviction.

On May 16, 1996, Plaintiff filed a Petition for Writ of *Habeas Corpus* in the Circuit Court of Raleigh County challenging his failure to appear conviction. The Circuit Court appointed James G. Anderson, as counsel. On April 6, 2000, the Circuit Court entered an Order denying Petitioner's Motion for Reconsideration and dismissing his *habeas* petition. On April 21, 2000, Petitioner filed

a petition for writ of *habeas corpus* in the original jurisdiction of the West Virginia Supreme Court, which was refused on May 25, 2000. Azeez v. Haines, Case No. 00819 (W. Va. May 25, 2000).

###### D.    Second First Federal *Habeas* Petition Challenging Sexual Assault Conviction.

On May 24, 1996, Plaintiff filed a Petition Under 28 U.S.C. § 2254 for Writ of *Habeas Corpus* By a Person in State Custody. Azeez v. Duncil, Civil Action No. 5:96-0497, Document No. 2. Plaintiff asserted numerous errors in the sexual assault proceedings as a basis for claiming entitlement to *habeas* relief. Id. On March 5, 1997, United States Magistrate Judge Mary Stanley Feinberg entered Proposed Findings and Recommendation that the District Court dismiss Plaintiff's Petition for failure to exhaust state remedies. Id., Document No. 22. By Order entered on March 26, 1997, the District Court dismissed Plaintiff's Petition for failure to exhaust. Id., Document No. 27. The Fourth Circuit dismissed Petitioner's appeal of the District Court's Order on September 22, 1997. Azeez v. Duncil, 122 F.3d 1060 (4th Cir. 1997). The United States Supreme Court denied Plaintiff's Petition for a Writ of Certiorari on April 20, 1998. Azeez v. Duncil, 523 U.S. 1082, 118 S.Ct. 1533, 140 L.Ed.2d 683 (1998).

###### E.    Second State *Habeas* Petition Challenging Sexual Assault Conviction.

Plaintiff filed his second Petition for Writ of *Habeas Corpus* in the Circuit Court of Raleigh County, on October 27, 1997, raising those grounds for relief that were found unexhausted by this Court. Azeez v. Kirby, Case No. 87-F-546 (Cir. Ct. Raleigh Co., June 1, 1998). By Order entered on June 1, 1998, the Circuit Court denied his second *habeas* Petition as being precluded by statute, and dismissed the Petition with prejudice. Id. On June 12, 1998, Plaintiff filed his Petition for Appeal from the Circuit Court's decision. Azeez v. Kirby, Case No. 981696 (W.Va. July 7, 1999). The West Virginia Supreme Court refused his appeal by Order entered on July 7, 1999. Id.

F.    **Second Federal *Habeas* Petition Challenging Sexual Assault Conviction.**

Plaintiff filed a second Petition Under 28 U.S.C. § 2254 for Writ of *Habeas Corpus* By a Person in State Custody in this District Court on June 15, 1998. Azeez v. Kirby, Civil Action No. 5:98-0523, Document No. 1. Plaintiff again sought *habeas* relief with respect to his sexual assault conviction. Id. By Proposed Findings and Recommendation entered on July 14, 2000, United States Magistrate Judge Mary Stanley Feinberg recommended that the District Court grant Respondent's Motion for Summary Judgment and dismiss Plaintiff's *habeas* petition. Id., Document No. 44. By Order on September 28, 2000, the District Court adopted Judge Feinberg's recommendation and dismissed Plaintiff's Petition for *habeas* relief. Id., Document No. 48. Plaintiff filed his Notice of Appeal on October 23, 2000. Id., Document No. 51. The Fourth Circuit dismissed Plaintiff's appeal on May 15, 2002. Azeez v. Kirby, 34 Fed.Appx. 138 (4th Cir. 2002). Plaintiff filed a petition for certiorari in the United States Supreme Court, which was denied on October 15, 2002. Azeez v. Kirby, 537 U.S. 960, 123 S.Ct. 394, 154 L.Ed.2d 314 (2002.)

G.    **First Federal *Habeas* Petition Challenging Failure to Appear Conviction.**

On June 19, 2000, Plaintiff filed a Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus By a Person in State Custody in the United States District Court for the Northern District of West Virginia, challenging his conviction for failure to appear. Azeez v. Haines, Civil Action No. 2:00-0054. Plaintiff, represented by attorney Gregory R. Tingler, who was appointed by the Court, filed a Motion for Partial Summary Judgment and Memorandum in Support on July 15, 2003. On August 11, 2003, District Judge Robert E. Maxwell granted Plaintiff's Motion for Partial Summary Judgment and ordered Plaintiff's release from the custody of the West Virginia Division of Corrections. District Judge Maxwell ruled on five claims which Plaintiff asserted in his Motion for

Partial Summary Judgment. First, Judge Maxwell found that " the indictment charging [Plaintiff] with failure to appear violated his rights under the Fifth Amendment when it was defective on its face[.]" Judge Maxwell stated that "[t]he indictment in Criminal Action Number 92-F-342 is defective on its face because it fails to state an exact date upon which the Petitioner was required to appear and because it includes dates upon which the Petitioner was not legally required to appear."[3] (Document No. 23-5, p. 11 - 12.) Second, Judge Maxwell ruled that Plaintiff's Sixth and Fourteenth Amendment rights were violated "when the Circuit Court of Raleigh County misapplied the law in refusing to strike two jurors for cause, thereby forcing the Petitioner to use two of his peremptory challenges to do so."( Id., p. 22.) Third, Judge Maxwell ruled that Plaintiff's attorney in the appeal of his sexual assault conviction, Defendant Francis Curnutte, violated the attorney-client privilege by (1) turning over to the State a letter dated March 8, 1993, written by Plaintiff and addressed to Defendant Curnutte, and (2) testifying in the failure to appear case respecting a conversation which he had with Plaintiff about the West Virginia Supreme Court of Appeals' refusal to consider his Petition in the sexual assault case. (Id., pp. 22 - 26.) Judge Maxwell further ruled that "[t]he Circuit Court of Raleigh County erred in failing to either declare a mistrial or to give a curative instruction with regard to Mr. Curnutte's breach of the attorney-client privilege." (Id., pp. 25 - 26.) Thus, Judge Maxwell found that Plaintiff's Fifth, Sixth and Fourteenth Amendment rights

---

[3] Indictment No. 92-F-342 charged Plaintiff with failure to appear from July, 1988, through August, 1991. The undersigned notes that the West Virginia Supreme Court denied Plaintiff's appeal of his sexual assault conviction on July 20, 1988. Plaintiff filed a request for renewal of his Petition for Appeal with the West Virginia Supreme Court on July 22, 1988. Plaintiff's renewal request was denied by the West Virginia Supreme Court on September 9, 1988. Accordingly, Judge Maxwell determined that "Petitioner's appeal was not 'finally terminated' until September the 9th, 1988; for that reason, the Petition could not have failed to appear until September the 9th, 1988." (Document No. 23-5, p. 12.)

were violated. (Id., p. 26.) Fourth, Judge Maxwell found that Plaintiff's Fourteenth Amendment rights were violated because the Circuit Court's files were misplaced for a period of two years and Plaintiff was denied access to the Court as Plaintiff appealed his conviction and sought *habeas* relief. (Id., pp. 27 - 28.) Finally, Judge Maxwell found that Plaintiff's Fifth and Fourteenth Amendment rights were violated because Plaintiff was not credited with 108 days for time served in custody after his arrest on December, 14, 1991, and before his failure to appear conviction. (Id., pp. 33 - 34.)

**H.      Second Federal _Habeas_ Petition Filed in Northern District.**

On March 12, 2003, Plaintiff filed a "Petition for Habeas Corpus 28 U.S.C. § 2254 and 5 U.S.C. § 552(a)" in the United States District Court for the Northern District of West Virginia alleging a violation of the FOIA and retaliation. Azeez v. Haines, *et al.*, Civil Action No. 2:03-0017. Plaintiff named as Defendants: Mr. Haines, Mr. Roberson, Mr. Lazenby, Ms. Keller, Ms. Davis, and Mr. Cook, and others. By Order entered on September 16, 2004, District Judge Maxwell dismissed Plaintiff's Petition insofar as Plaintiff sought *habeas* relief with prejudice in view of the Court's ruling in Azeez v. Haines, Civil Action No. 2:00-0054, and his claim of retaliation without prejudice stating that it "would be properly brought in a civil rights action pursuant to 42 U.S.C. § 1983, rather than a *habeas corpus* action pursuant to 28 U.S.C. § 2254."

**I.      Third Federal _Habeas_ Petition Challenging Sexual Assault Conviction.**

On March 24, 2003, Plaintiff filed a third *habeas* Petition in this District Court again challenging his conviction of second degree sexual assault. Azeez v. Rubenstein, *et al.*, Civil Action No. 5:03-0252, Document No. 1. By Proposed Findings and Recommendation entered on February 24, 2004, the undersigned recommended that Plaintiff's Petition be denied as untimely. Id., Document No. 7. By Order entered on March 24, 2004, United States District Judge David A. Faber

adopted the undersigned's recommendation and dismissed Plaintiff's Petition as untimely. Id., Document No. 9. Plaintiff filed his Notice of Appeal on September 24, 2004. Id., Document No. 15. The Fourth Circuit dismissed Plaintiff's appeal on May 13, 2005. Azeez v. Rubenstein, 131 Fed.Appx. 412 (4th Cir. 2005). Plaintiff filed a petition for certiorari in the United States Supreme Court, which was denied on January 23, 2006. Azeez v. Rubenstein, 546 U.S. 1151, 126 S.Ct. 1164, 163 L.Ed.2d 1130 (2006).

## PLAINTIFF'S COMPLAINT AND DEFENDANTS' MOTIONS

Having obtained the issuance in 2003 of a Writ of *Habeas Corpus* in the United States District Court for the Northern District of West Virginia, District Judge Maxwell presiding, Plaintiff, acting *pro se*, filed "A Civil Rights Complaint Under 42 U.S.C. § 1983, 42 U.S.C. § 1985 and 28 U.S.C. § 1332 Alleging Unlawful Arrest to Unlawful Incarceration" initiating this matter on July 11, 2005, in the United States District Court for the Eastern District of New York. Plaintiff named as Defendants (1) current and former Raleigh County Prosecuting Attorneys (Ms. Keller, Mr. Frail and Mr. Lazenby), Raleigh County Police Officers (Officers Robertson, Cook and Cole) and the Clerk of the Raleigh County Circuit Court (Ms. Davis); (2) a Raleigh County Circuit Judge (Judge Hutchison)[4]; and (3) an attorney in private practice who represented Plaintiff (Mr. Curnutte). Plaintiff paid the $250 filing fee, and summonses were issued and served. All of the Raleigh County Defendants together filed a Motion to Dismiss or, in the alternative, to Transfer the case to the Southern District of West Virginia. Mr. Curnutte filed a Motion to Dismiss separately. On January 25, 2006, United States District Judge Joanna Seybert issued a Memorandum and Order denying

---

[4] By Judgment Order filed on September 8, 2011, the District Court dismissed Judge Hutchison as a Defendant in this case. (Document No. 138.)

9

Defendants' Motions to Dismiss and transferring this matter to this District Court.

### A.    Plaintiff's Complaint.

In his Complaint, Plaintiff claims that Defendants violated his Fifth, Sixth and Fourteenth Amendment Due Process rights when he was unlawfully imprisoned at the Huttonsville Correctional Center in Huttonsville, West Virginia, for approximately two years. Plaintiff explains that he was convicted of failing to appear in the Circuit Court of Raleigh County, West Virginia, on March 25, 1993, and sentenced to an indeterminate term of imprisonment of one to five years in the State penitentiary. (Document No. 23-1, p. 5, ¶ 1.) Plaintiff states that he began serving his sentence upon his failure to appear conviction at Huttonsville Correctional Center on August 19, 2001. (Id.) Plaintiff indicates that United States District Judge Robert Maxwell in the Northern District of West Virginia granted him relief under 28 U.S.C. § 2254 on August 12, 2003. (Id., p. 5, ¶ 2.) Plaintiff's claims against the Defendants are summarized as follows:

### 1.    Defendant Robertson.

Plaintiff asserts that "Defendant Robertson, without probable cause, deliberately, intentionally, maliciously, conspiratorially, and with clear disregard of the law and a citizen's rights, committed gross unconstitutional acts to have Plaintiff indicted, arrested, and extradited under falsified information." (Document No. 23-1, pp. 6 - 7, ¶¶ 1 - 5.) Plaintiff explains that Defendant Robertson testified before a grand jury that Plaintiff failed to appear at sentencing in the sexual assault case on September 25, 1987, when Plaintiff was actually sentenced in that case on September 14, 1987, and was in custody on September 25, 1987. (Id.)

### 2.    Defendants Lazenby and Frail.

Plaintiff contends that Defendants Lazenby and Frail "unlawfully refused disclosure of the

grand jury minutes of 88-F-203 for trial and appeal purposes in spite of such well-proven particularized needs that overcame all restrictions that could have prevented public exposure; thus responsible for obstruction of justice, willful concealment of prosecutorial and police malfeasances, and other related actionable wrongdoings." (Id., p. 7, ¶ 8.)

     3.    **Defendant Keller.**

Plaintiff states that upon learning that the Indictment was defective in 88-F-203 and two weeks before trial in that case, Defendant Keller produced an "Amended Indictment: No. 92-F-342" charging Plaintiff with failing to appear between July, 1988, and August, 1991. (Id., pp. 7 - 8, ¶¶ 10 - 11.) Plaintiff alleges essentially that the Amended Indictment was a sham insofar as no grand jury was convened to return it. (Id., pp. 7 - 9, ¶¶ 10 - 11 and 16.) Defendant Keller falsely advised the Court before trial in 92-F-342 that 88-F- 203 was withdrawn when it was not dismissed until June 3, 1993. (Id., pp. 8 and 11 - 12, ¶¶ 12 and 29.) In order to avoid dismissal of the case under the Court's three-term rule, Defendant Keller falsely informed the Court that Plaintiff's counsel, attorney Karen Kostol, had requested a continuance and submitted an Order sign by Circuit Judge Burnside, Defendant Keller's boyfriend at the time, granting it. (Id., pp. 9 - 10, ¶¶ 17 - 22.) After Plaintiff was convicted in 92-F-342, he requested documentation indicating that 88-F-302 had been dismissed, and Defendant Keller took the files from the office of the Clerk, Defendant Davis, kept them for two years and reconstructed them. (Id., p. 11, ¶¶ 26 - 27.)

     4.    **Defendant Curnutte.**

Plaintiff states he contacted Defendant Curnutte, Plaintiff's attorney in appealing his sexual assault conviction, and sent him a confidential letter when he learned that Defendant Keller had subpoenaed Defendant Curnutte to testify at his trial in the failure to appear case. Plaintiff states

Defendant Curnutte turned his letter over to Defendant Keller and testified beyond the scope allowed by the Judge. Plaintiff alleges Defendant Curnutte was found to have committed ethical violations and his "conviction was reversed partially on Defendant Curnutte's unconstitutional acts . . .." (Id., pp. 12 - 13, ¶¶ 32 - 38.)

5.    **Defendant Davis.**

Plaintiff claims that Defendant Davis breached her duty to maintain the Court's files and records by permitting Defendant Keller to remove and keep the Court files in his cases. (Id., p. 14, ¶¶ 40 - 41.) Plaintiff asserts that Defendant Davis, having learned that Plaintiff was to be released in August, 2001, sent a Commitment Order to the West Virginia Department of Corrections in February, 2001, indicating his conviction and sentence in 92-F-342 when he was sentenced upon his conviction in that case on June 3, 1993, in order to prolong his period of incarceration. (Id., p. 15, ¶¶ 46 - 48.) Plaintiff states that "Defendant Davis must be held liable for deliberate neglect of her duty when Plaintiff's entire court files were removed from her office and missing for two full years during critical post-conviction stages for which she should have known. Additionally, Defendant Davis must be held liable under the provisions of the Freedom of Information Act laws when she deliberately refused requested access to unrestricted public records relating to the Failure to Appear conviction, especially on matters surrounding the amended indictment proceedings, and documents relating to the alleged 'special session' grand jury." (Id., p. 16, ¶ 52.)

6.    **Defendant Frail.**

Plaintiff asserts that Defendant Frail "must be held liable since it is highly obvious that no grand jury was ever recalled; when nulling of 88-F-203 did not occur prior to trial; for allowing a trial to proceed when two indictments existed both accusing Plaintiff of the same charge; and for

inducing Defendant Cook to testify perjuriously." (Id., p. 18, ¶ 61.)

### 7.    Defendant Cook.

Plaintiff alleges that Defendant Cook to committed perjury before the grand jury when he testified that he had knowledge of Plaintiff's obligation to appear between July 1988, and September 8, 1988. (Id.) Plaintiff claims Defendant Cook conspired to conceal officials' wrongdoings and engaged in malicious prosecution. (Id., p. 18, ¶ 60.) Plaintiff further states that Defendant Cook appeared in the State of Florida "and presented said Indictment as a True Bill evidencing and verifying that Plaintiff was indicted a grand jury." (Id., p. 6, ¶ 4.)

### 8.    Defendant Cole.

Plaintiff alleges that Defendant Cole improperly denied his Freedom of Information Act requests. (Id., pp. 17 - 18, ¶¶ 57 - 59.) Specifically, Plaintiff contends that Defendant Cole "must be held liable under provisions of the FOIA for refusing inspections of the Police Roster (Log), a public record which documented the assignments (whereabouts) of Defendant David Cook on November 2, 1992; a date it was alleged that Defendant Cook appeared and testified against Plaintiff before a 'special' session grand." (Id., p. 17 - 18, ¶ 58.) Plaintiff further states that Defendant Cole "refused inspection and/or copying of 'service process' by which each grand juror was allegedly summoned for their alleged re-appearance on November 2, 1992 grand jury special session." (Id., p. 18, ¶ 59.)

Plaintiff claims that as a consequence of Defendants' actions he has suffered loss of liberty, physical injuries, and immense emotional trauma. Plaintiff states that he was stabbed by a convicted murderer and contracted tuberculosis while he was held illegally at the Raleigh County Jail. As

13

relief, Plaintiff requests monetary damages and injunctive relief.[5]

**B.      Defendants' Motions.**

On February 24, 2006, the Raleigh County Defendants filed their Answer to Plaintiff's Complaint. (Document No. 29.) On April 3, 2006, the Raleigh County Defendants filed a Motion to Dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure and Memorandum in Support. (Document Nos. 39 and 40.) On April 5, 2006, the Raleigh County Defendants filed a Motion to Stay Discovery and Memorandum in Support. (Document Nos. 41 and 42.) By Order filed on April 11, 2006, District Judge Goodwin granted Defendant's Motion to Stay Discovery. (Document No. 43.) On April 12, 2006, the undersigned notified Plaintiff pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), of his right to file responses to the Raleigh County Defendants' Motions to Dismiss and submit documents, exhibits, and/or other legal or factual material supporting his claims as they are challenged by the Defendants in their Motion to Dismiss. (Document No. 48.)

All of the moving Defendants claim that Plaintiff has failed to state a claim against them for which relief can be granted. The Raleigh County Defendants contend that Plaintiff's action is barred under the applicable statute of limitations; Plaintiff cannot recover against Defendants Keller, Frail, Lazenby and Davis based upon the doctrine of absolute immunity; Plaintiff cannot recover against Defendant Robertson based upon the doctrine of qualified immunity; Plaintiff cannot recover for failure to provide documents under the Freedom of Information Act based upon the doctrine of *res judicata*; and Plaintiff is not entitled to injunctive relief.

---

[5] Specifically, "Plaintiff prays for monetary judgment in the amount of ten million dollars ($10,000,000.00) as compensatory damages, punitive damages, economic losses, and any other relative damages appropriate . . .." (Document No. 23-1, p. 21.)

On April 14, 2006, Defendant Curnutte filed a Motion to Dismiss asserting that he was joining Defendants Lazenby, Frail, and Keller and Officers Cole, Cook, and Robertson in their arguments for dismissal based on prosecutorial and qualified immunity. (Document No. 51.) Shortly thereafter, the undersigned filed an Order stating the following:

> The circumstances which are the basis for Plaintiff's claims against Mr. Curnutte are considerably different from those which are the basis for Plaintiff's claims against the Raleigh County Defendants. It is not acceptable therefore that Mr. Curnutte relies upon the Raleigh County Defendants' Memorandum in Support of their Motion to Dismiss. The Court expects that Mr. Curnutte will file a Memorandum in Support of his Motion to Dismiss, as the Court's Local Rules require, stating all of the grounds upon which Mr. Curnutte claims entitlement to dismissal and containing a discussion of the facts applicable to Plaintiff's claims against him and legal analysis.

(Document No. 50.) On April 26, 2006, Defendant Curnette filed his Memorandum in Support (Document No. 54.). On April 27, 2006, the undersigned issued an Order stating that if Defendant Curnutte failed to follow the undersigned's instructions to develop an individualized argument for his Motion to Dismiss, the undersigned would recommend that the District Court deny his Motion. In response to the above quoted Order, Defendant Curnutte filed a Memorandum in Support of his Motion to Dismiss that disagreed with the undersigned's legal assessment of his position, stating that he "respectfully contends he was correct in previously stating that he was similarly situated as other defendants in this litigation." (Document No. 66, p. 4.)

On April 27, 2006, Plaintiff filed his "Opposition" to Defendants Keller, Frail, Lazenby, Robertson, Cook, Cole, and Davis' Motion to Dismiss.[6] (Document No. 57.) First, Plaintiff contends

---

[6] Plaintiff appears to assert claims challenging the validity of his sexual assault conviction. (Document No. 57, p. 8.) The Court, however, will not consider these claims. First, the undersigned notes that these claims exceed the scope of the allegations contained in his Complaint. Second, Plaintiff's sexual assault conviction was never overturned and such claims are therefore precluded by *Heck v. Humphrey*, 512 U.S. 477, 114 S.Ct. 2364, 129 L.Ed.2d 323 (1994).

*res judicata* is not a defense. (<u>Id.</u>, pp. 1 - 4.) Next, Plaintiff asserts "the nature of Defendants'

conduct bars the immunity defense." (<u>Id.</u>, pp. 4 - 13.) Finally, Plaintiff claims "Defendants provided

no evidence to dispute any of Plaintiff's claims." (<u>Id.</u>, pp. 13 - 16.)

On May 8, 2006, Defendants Keller, Frail, Lazenby, Robertson, Cook, Cole, and Davis filed

their Reply. (Document No. 60.) First, Defendants contend Plaintiff's claims are precluded by the

statute of limitations because "exhaustion of state remedies is not required in actions under § 1983."

(<u>Id.</u>, pp. 1 - 2.) Second, Defendants note that Plaintiff improperly asserts "new allegations unrelated

to his original Complaint." (<u>Id.</u>, pp. 2 - 3.) Thus, Defendants assert Plaintiff may not proceed upon

claims related to his sexual assault conviction. (<u>Id.</u>, pp. 2 - 4.) Third, Defendants contend "Plaintiff

fails to argue how any of the actions of the prosecutors fall outside the role of an administrator

thereby defeating their immunity argument." (<u>Id.</u>, p. 4.) Finally, Defendants argue Plaintiff's claim

that the grand jury did not meet on November 2, 1992, is precluded by the Rooker-Feldman doctrine.

(<u>Id.</u>, p. 5.)

## **THE STANDARD**

### **Motion to Dismiss**

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted

as true, to 'state a claim to relief that is plausible on its face.'" <u>Ashcroft v. Iqbal</u>, ___ U.S. ___, 129

S. Ct. 1937, 173 L.Ed.2d 868 (2009)(<u>quoting</u> <u>Bell Atlantic Corporation v. Twombly</u>, 550 U.S. 554,

570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). "A claim has facial plausibility when the plaintiff

pleads factual content that allows the court to draw the reasonable inference that the defendant is

liable for the misconduct alleged." <u>Id.</u> Although factual allegations must be accepted as true for

purposes of a motion to dismiss, this principle does not apply to legal conclusions. <u>Id.</u> "Threadbare

16

recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. The "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true." Twombly, 550 U.S. at 555, 127 S.Ct. at 1959. Where a *pro se* Complaint can be remedied by an amendment, however, the District Court may not dismiss the Complaint with prejudice, but must permit the amendment. Denton v. Hernandez, 504 U.S. 25, 34, 112 S.Ct. 1728, 1734, 118 L.Ed.2d 340 (1992).

## ANALYSIS

Title 42 U.S.C. § 1983 provides a remedy for violations of all "rights, privileges, or immunities secured by the Constitution and laws [of the United States]." Section 1983 provides a "broad remedy for violations of federally protected civil rights." Monell v. Dep't of Social Services, 436 U.S. 658, 685, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Generally speaking, to state and prevail upon a claim under 42 U.S.C. § 1983, a Plaintiff must prove that (1) a person acting under color of State law (2) committed an act which deprived him of an alleged right, privilege or immunity protected by the Constitution or laws of the United States. When State action causes a deprivation of liberty, Section 1983 can provide a remedy under the Fourteenth Amendment to the United States Constitution if the deprivation occurs without due process. Baker v. McCollan, 443 U.S. 137, 145, 99 S.Ct. 2689, 2695, 61 L.Ed.2d 433 (1979)("The Fourteenth Amendment does not protect all deprivations of liberty. It protects only against deprivations of liberty 'accomplished without due process of law.'") In Washington v. Wilmore, 407 F.3d 274, 282 (4th Cir. 2005), the Fourth Circuit adopted the Second Circuit's definition of the right in Zahrey v. Coffey, 221 F.3d 342, 349 (2nd Cir. 2000) as "the right not to be deprived of liberty as a result of the fabrication of evidence by a government officer acting in an investigating capacity."

17

A.      **Statute of Limitations**.

1.      **Federal Claims.**

A Plaintiff must file a Section 1983 action within the prescribed time period. Because there is no federally prescribed statute of limitation, Courts look to and apply their respective State's statutes of limitation. See Owens v. Okure, 488 U.S. 235, 249-50, 109 S.Ct. 573, 102 L.Ed.2d 594 (1989). The Fourth Circuit has recognized that "in the absence of any state statute of limitations specifically applicable to suits to redress a violation of civil rights, the West Virginia limitation on personal injury actions applies." McCausland v. Mason County Bd. of Ed., 649 F.2d 278 (4th Cir. 1981), cert. denied, 454 U.S. 1098, 102 S.Ct. 671, 70 L.Ed.2d 639 (1981). Under West Virginia law, the applicable period of limitation for a personal injury claim is two years from the time the cause of action accrued. See W.Va. Code § 55-2-12(b).[7] In West Virginia, the applicable period of limitations for a claim of "false arrest, false imprisonment, and malicious prosecution" is one-year. Wilt v. State Auto. Mut. Ins. Co., 203 W.Va. 165, 170, 506 S.E.2d 608, 613 (1998); also see Snodgrass v. Sisson's Mobile Home Sales, Inc., 161 W.Va. 588, 244 S.E.2d 321 (1978); Fleming v. West Virginia, 2009 WL 960217 (S.D.W.Va. 2009). Although the limitation period is borrowed from State law, the question of when a cause of action accrues is answered according to federal law.

---

[7] West Virginia Code § 55-2-12 provides as follows:

Every personal action for which no limitation is otherwise prescribed shall be brought: (a) Within two years next after the right to bring the same shall have accrued, if it be for damage to property; (b) within two years next after the right to bring the same shall have accrued if it be for damages for personal injuries; and (c) within one year next after the right to bring the same shall have accrued if it be for any other matter of such nature that, in case a party die, it could not have been brought at common law by or against his personal representative.

18

See Brooks v. City of Winston-Salem, NC, 85 F.3d 178, 181 (4th Cir. 1996). Under federal law, a cause of action accrues "when the plaintiff possesses sufficient facts about the harm done to him that reasonable inquiry will reveal his cause of action." Nasim v. Warden, MD House of Corr., 64 F.3d 951, 955 (4th Cir. 1995)(*en banc*), cert. denied, 516 U.S. 1177, 116 S.Ct. 1273, 134 L.Ed.2d 219 (1996)(citing United States v. Kubrick, 444 U.S. 111, 122-24, 100 S.Ct. 352, 62 L.Ed.2d 259 (1979)). "Accrual of a claim does not 'await awareness by the plaintiff that his injury was negligently inflicted.'" Nasim, 64 F.3d at 955 (quoting, Childers Oil Co., Inc. v. Exxon Corp., 960 F.2d 1265, 1272 (4th Cir. 1992)). Accordingly, for a Section 1983 action, "a cause of action accrues either when the plaintiff has knowledge of his claim or when he is put on notice – e.g., by the knowledge of the fact of injury and who caused it – to make reasonable inquiry and that inquiry would reveal the existence of a colorable claim." Nasim, 64 F.3d at 955. To determine when a plaintiff possessed knowledge of his injury, the Court "may look to the common-law cause of action most closely analogous to the constitutional right at stake as an 'appropriate starting point.'" Brooks, 85 F.3d at 181 (citations omitted).

First, Plaintiff alleges in his Complaint that he was unlawfully arrested and detained in violation of his constitutional rights because there was insufficient evidence to support his arrest and imprisonment for failure to appear. A Section 1983 claim for false arrest or false imprisonment accrues when the claimant is detained pursuant to legal process.[8] Wallace v. Kato, 549 U.S. 384, 127 S.Ct. 1091, 1100, 166 L.Ed.2d 973 (2007)(holding "that the statute of limitations upon a § 1983 claim seeking damages for false arrest in violation of the Fourth Amendment, where the arrest is

---

[8]  The Supreme Court noted that "[f]alse arrest and false imprisonment overlap; the former is a species of the latter." *Wallace*, 549 U.S. at 388, 127 S.Ct. at 1095.

followed by criminal proceedings, begins to run at the time the claimant becomes detained pursuant to legal process."). In <u>Wallace</u>, the Supreme Court determined that the accrual date for a false imprisonment claim is not governed by <u>Heck v. Humphrey</u>, 512 U.S. 477, 114 S.Ct. 2364, 129 L.Ed.2d 323 (1994). The <u>Wallace</u> Court explained as follows:

> If a plaintiff files a false arrest claim before he has been convicted (or files any other claim related to rulings that will likely be made in a pending or anticipated criminal trial), it is within the power of the district court, and in accord with common practice to stay the civil action until the criminal case or the likelihood of a criminal case is ended. If the plaintiff is ultimately convicted, and if the stayed civil suit would impugn that conviction, *Heck* will require dismissal; otherwise, the civil action will proceed, absent some other bar to suit.

<u>Id.</u>, 549 U.S. at 393 - 394, 127 S.Ct. at 1098 (internal citations omitted).

Plaintiff alleges that he was arrested in Florida on August 19, 1991, pursuant to a *capias* warrant, for failure to appear. (Document No. 23-1, p. 6.) Accordingly, by applying the West Virginia one-year statute of limitation together with the federal standard of accrual, the undersigned finds that Plaintiff's cause of action for false arrest expired on August 19, 1992, one-year from the date Plaintiff was detained pursuant to legal process. Plaintiff filed his instant Complaint on July 11, 2005. Accordingly, the one-year statute of limitation has run as to Plaintiff's claims of false arrest and false imprisonment[9] and the claims are therefore barred.

Second, Plaintiff contends in his Complaint that he was subjected to malicious prosecution

---

[9] The undersigned further notes that it is "well established that where an officer presents all relevant probable cause evidence to an intermediary, such as a prosecutor, a grand jury, or a magistrate, the intermediary's independent decision to seek a warrant, issue a warrant or return an indictment breaks the causal chain and insulates the officer from a Section 1983 claim based on lack of probable cause for an arrest or prosecution." *Rhodes v. Smithers*, 939 F.Supp. 1256, 1274 (S.D.W.Va. 1995)(finding officers fulfilled their duty to provide all relevant probable cause to the prosecutor because there was "no indication that the officers concealed or failed to disclose exculpatory information, or that the reports knowingly contained false information, or that they were deliberately misleading").

because there was insufficient evidence to support his prosecution. A Section 1983 claim for malicious prosecution accrues when the prosecution has terminated in Plaintiff's favor.[10] Id. at 1097; see also Brummett v. Camble, 946 F.2d 1178, 1184 (5th Cir. 1991), cert. denied, 504 U.S. 965, 112 S.Ct. 2323, 119 L.Ed.2d 241 (1992)(Listing federal cases adopting this common law rule); Albright v. Oliver, 510 U.S. 266, 280, 114 S.Ct. 807, 816, 127 L.Ed.2d 114 (1994)(J. Ginsburg, concurring)(Stating that the limitation period for a malicious prosecution claim should begin to run upon dismissal of the criminal charges, not at the start of the state procedures.). Plaintiff states that his conviction for failure to appear was overturned on August 11, 2003. On August 11, 2003, the Honorable Robert E. Maxwell granted partial summary judgment in favor of Plaintiff and executed a writ of *habeas corpus* releasing Plaintiff from custody.[11] Accordingly, by applying the West Virginia one-year statute of limitation together with the federal standard of accrual, the undersigned finds that Plaintiff's cause of action for malicious prosecution expired on August 11, 2004, one-year from the date his conviction for failure to appear was overturned. Plaintiff filed his instant Complaint on July 11, 2005. Therefore, the one-year statute of limitation has run as to Plaintiff's claim of malicious prosecution and the claim is therefore barred.

Third, Plaintiff asserts in his Complaint that he was deprived of liberty because Defendants

---

[10] It is of significance to note here for purposes of accrual the distinction between a claim for false arrest or imprisonment and malicious prosecution. Generally, a plaintiff knows of his injuries in a cause of action for false arrest without probable cause on the date of his arrest. Thus, a cause of action for false arrest will accrue at the time of arrest. *See Covington v. City of New York*, 171 F.3d 117 (2nd Cir.), *cert. denied*, 528 U.S. 946, 120 S.Ct. 363, 145 L.Ed.2d 284 (1999); *Rose v. Bartle*, 871 F.2d 331, 348-49, 351 (3rd Cir. 1989). A plaintiff does not know of his injuries in a cause of action for malicious prosecution, however, until the charges are disposed of in his favor.

[11] Judge Maxwell found that the indictment filed in Criminal Action No. 92-F-342 for failure to appear, violated Plaintiff's constitutional rights under the Fifth, Sixth and Fourteenth Amendments.

Keller, Lazenby, Frail, Robertson and Cook fabricated evidence and knowingly pursued an indictment without probable cause. Since there is an absence of any state statute of limitations specifically applicable to the above claim, the Court will apply the West Virginia limitation on personal injury actions. The undersigned finds that the Heck rule applies to the above claim because it implies the invalidity of Plaintiff's conviction for failure to appear. The Heck rule "delays what would otherwise be the accrual date of a tort action until the setting aside *of an extant conviction* which success in that tort action would impugn." Wallace, 549 U.S. at 393, 127 S.Ct. at 1097 - 1098. By applying the West Virginia two-year statute of limitation, together with the federal standard of accrual, the undersigned finds that Plaintiff's cause of action would have expired on August 11, 2005, two-years from the date Plaintiff's failure to appear conviction was invalidated. Plaintiff filed his Complaint on July 11, 2005. Accordingly, Plaintiff's claim that he was deprived by his liberty as a result of fabricated evidence is timely.

Finally, Plaintiff alleges Defendants Keller and Davis violated his constitutional right of access to the Court by concealing the Court file during the appeal and post conviction process. Plaintiff claims Defendant Keller "unlawfully concealed [the Court file] for two full years between March 1996 and March 1998. (Document No. 23-1, p. 11.) Plaintiff asserts Defendant Davis improperly denied him access to his Court file for two years. (Id., pp. 14 - 16.) Construing Plaintiff's Complaint liberally, the undersigned finds that the latest Plaintiff could have become aware of the alleged denial of access to the Court was March 31, 1998,[12] the date his Court file was located. By applying the West Virginia two-year statute of limitation, together with the federal standard of

---

[12] Plaintiff alleges that his Court file was located in March, 1998. Thus, Plaintiff fails to state the exact date his Court file was located. Construing Plaintiff's Complaint liberally, the undersigned will assume Plaintiff did not locate his Court file until March 31, 1998.

accrual, the undersigned finds that Plaintiff's cause of action expired on March 31, 2000. Plaintiff filed his instant Complaint on July 11, 2005. Accordingly, the two-year statute of limitation has run as to Plaintiff's claim of denial of access to the court and the claim is therefore barred.

**2.    State Law Claims.**

Plaintiff appears to assert the following claims under State law: false arrest, malicious prosecution, and legal malpractice.

First, the Court will consider under State law Plaintiff's claim that he was unlawfully arrested. In West Virginia, the applicable period of limitations for a claim of "false arrest, false imprisonment, and malicious prosecution" is one-year. Wilt, 203 W.Va. at 170, 506 S.E.2d at 613; also see Snodgrass, 161 W.Va. at 592-93, 244 S.E.2d at 324. A claim of false arrest accrues in West Virginia when the claimant is arrested. See Canterbury v. Laird, 221 W.Va. 453, 655 S.E.2d 199 (2007)(holding that the statute of limitations for a false arrest claim is not tolled until the conclusion of the criminal prosecution). Plaintiff was arrested on August 19, 1991. (Document No. 23-1, p. 6.) Accordingly, by applying the West Virginia one-year statute of limitation together with the State standard of accrual, the undersigned finds that Plaintiff's cause of action for false arrest expired on August 19, 1992, one-year from the date Plaintiff was arrested. Plaintiff filed his instant Complaint on July 11, 2005. Accordingly, the one-year statute of limitation has run as to Plaintiff's State claim of false arrest.

Second, Plaintiff's alleges he was subjected to malicious prosecution because there was insufficient evidence to support his prosecution. In West Virginia, a claim for malicious prosecution accrues when the prosecution has terminated in Plaintiff's favor. Preiser v. MacQueen, 177 W.Va. 273, 276, 352 S.E.2d 22, 25 (1985). Plaintiff's failure to appear conviction was overturned on

23

August 11, 2003. Accordingly, by applying the West Virginia one-year statute of limitation and its standard of accrual, the undersigned finds that Plaintiff's cause of action for malicious prosecution expired on August 11, 2004, one-year from the date his conviction was overturned. Plaintiff filed his instant Complaint on July 11, 2005. Therefore, the one-year statute of limitation has run as to Plaintiff's State claim of malicious prosecution.

Finally, Plaintiff claims that Defendant Curnutte breached the duty of attorney-client privilege. Upon learning the State intended to call Defendant Curnutte as a witness in the criminal trial involving Plaintiff's alleged failure to appear, Plaintiff notified Defendant Curnutte by a letter dated March 8, 1993, that he was not waiving his attorney-client privileges and that he would hold Defendant Curnutte accountable if he violated that privilege. (Document No. 23-5, p. 23.) Prior to the criminal trial, Defendant Curnutte submitted a copy of the March 8, 1993, letter to the State. During the criminal trial, Defendant Curnutte testified against Plaintiff and a copy of the March 8, 1993, letter was introduced into evidence. To determine the appropriate limitations period, the undersigned must address whether Plaintiff's legal malpractice claim sounds in contract or tort. The West Virginia Supreme Court explains as follows:

> Where the act complained of in a legal malpractice action is a breach of a specific term of the contract without reference to the legal duties imposed by law on the attorney/client relationship, the action is contractual in nature. Where the essential claim of the action is a breach of a duty imposed by law on the attorney/client relationship and not of the contract itself, the action lies in tort.

Syl. Pt. 2, Hall v. Nichols, 184 W.Va. 466, 400 S.E.2d 901 (1990). Based on the foregoing, the undersigned finds that Plaintiff's claim against Defendant Curnutte is a tort claim. Under West Virginia law, a tort claim of legal malpractice is subjected to a two-year statute of limitations. See Brumbaugh v. Princeton Partners, 766 F.Supp. 497, 500 (S.D.W.Va. 1991), aff'd 985 F.2d 157 (4th

Cir. 1993). "[A] cause of action for legal malpractice accrues when the malpractice occurs, or when the client knows, or by reasonable diligence should know, of the malpractice." VanSickle v. Kohout, 215 W.Va. 433, 437, 599 S.E.2d 856, 860 (2004). Construing Plaintiff's Complaint liberally, the undersigned finds that the latest Plaintiff could have known, or by reasonable diligence should have known, of the alleged malpractice was March 25, 1993, the date his criminal trial for failure to appear was concluded. By applying the West Virginia two-year statute of limitation and its standard of accrual, the undersigned finds that Plaintiff's cause of action expired on March 25, 1995. Plaintiff filed his instant Complaint on July 11, 2005. Therefore, the two-year statute of limitation has run as to Plaintiff's claim of legal malpractice and the claim is therefore barred.

**B.    The Doctrine of Judicial Immunity: Defendant Davis.**

Plaintiff alleges that Defendant Davis violated his constitutional right by denying him access to his Court file for two years. Notwithstanding the undersigned's finding that this claim is untimely, the Court will briefly consider the merits of Plaintiff's claim. "[B]oth courts and their staff are entitled to judicial immunity." Honour v. Cooper, 174 Fed.Appx. 782 (4th Cir. 2006). Judicial immunity extends to judicial officers for judicial acts taken within the Court's subject matter jurisdiction. Stump v. Sparkman, 435 U.S. 349, 356, 98 S.Ct. 1099, 55 L.Ed.2d 331 (1978). Absolute quasi-judicial immunity extends to non-judicial officers "performing tasks so integral or intertwined with the judicial process that these person are considered an arm of the judicial officer who is immune." Bush v. Rauch, 38 F.3d 842, 847 (6th Cir. 1994). "When . . . dealing with the application of the doctrine to auxiliary judicial personnel, [Courts] must remember the 'danger that disappointed litigants, blocked by the doctrine of absolute immunity from suing the judge directly, will vent their wrath on clerks, court reporters, and other judicial adjuncts . . . warrants this extension of the

doctrine." <u>Kincaid v. Vail</u>, 969 F.2d 594, 601 (7th Cir. 1992), <u>cert. denied</u>, 506 U.S. 1062, 113 S.Ct. 1002, 122 L.Ed.2d 152(1993)(citation omitted); <u>also see</u> <u>Sykes v. Huggins</u>, 2009 WL 250103, at * 3 (D.S.C. Jan. 29, 2009)(finding that county Court clerk was entitled to quasi-judicial immunity and noting the Fourth Circuit's decision in <u>Pink v. Lester</u>, 52 F.3d 73, 77 (4th Cir. 1995), overruled <u>McCray v. Maryland</u>, 456 F.2d 1, 6 (4th Cir. 1972), which held that clerks of Court might be held liable for negligence).

Plaintiff claims that Defendant Davis breached her duty to maintain the Court's file by permitting Defendant Keller to remove and keep the Court file in his cases. (Document No. 23-1, p. 14, ¶¶ 40 - 41.) Plaintiff states that "Defendant Davis must be held liable for deliberate neglect of her duty when Plaintiff's entire court files were removed from her office and missing for two full years during critical post-conviction stages for which she should have known." (<u>Id.</u>, p. 16, ¶ 52.) Even if Defendant Davis allowed Defendant Keller to remove Plaintiff's file, she would be protected by the doctrine of absolute judicial immunity because her alleged conduct was related to a basic and integral part of her assigned judicial functions, namely, the maintenance and circulation of Court files. <u>See</u> <u>Lyle v. Jackson</u>, 49 Fed.Appx. 492 (6th Cir. 2002)(finding the clerks were entitled to quasi-judicial immunity concerning prisoner's claims that they failed to provide him with requested copies of previous filings and transcripts); <u>Davis v. McAteer</u>, 431 F.2d 81, 82 (8th Cir. 1970)(finding a State Court clerk entitled to absolute immunity for allegedly losing a court file). Accordingly, the undersigned finds that Defendant Davis is absolutely immune from suit under Section 1983 and her Motion to Dismiss should be granted.

C.    **The Doctrine of Prosecutorial Immunity: Keller, Frail and Lazenby.**

Prosecutors have absolute immunity for activities performed as "an officer of the court" if

the conduct at issue is closely associate with the judicial phase of the criminal process. Van de Kamp v. Goldstein, 555 U.S. 335, 341 - 343, 129 S.Ct. 855, 860 - 862, 172 L.Ed.2d 706 (2009). In determining whether a prosecutor is entitled to absolute immunity, the Court must apply the "functional approach" examining the nature of the function performed. Id., 555 U.S. at 342 , 129 S.Ct. at 861. It is well established that prosecutors are absolutely immune "for their conduct in initiating a prosecution and in presenting the State's case, insofar as that conduct is 'intimately associated with the judicial phase of the criminal process.'" Burns v. Reed, 500 U.S. 478, 486, 111 S.Ct. 1934, 1939, 114 L.Ed.2d 547 (1991)(quoting Imbler, 424 U.S. at 430 - 431, 96 S.Ct. at 995). Further, absolute immunity extends to "actions preliminary to the initiation of a prosecution and actions apart from the courtroom." Buckley v. Fitzsimmons, 509 U.S. 259, 272, 113 S.Ct. 2606, 2615, 125 L.Ed.2d 209 (1993)(quoting Imbler, 424 U.S. at 431, 96 S.Ct. at 995 - 996)). A prosecutor acts as an advocate or "officer of the court" when performing tasks, such as (1) initiating a judicial proceeding, (2) presenting evidence in support of a search warrant application, (3) conducting a criminal trial, bond hearing, grand jury proceeding or pre-trial hearing, (4) engaging in "an out-of-court effort to control the presentation of [a] witness' testimony," and (5) making a "professional evaluation of the evidence assembled by the police and appropriate preparation for its presentation at trial or before the grand jury after a decision to seek an indictment has been made." Buckley, 509 U.S. at 272, 113 S.Ct. at 2615(quoting Imbler, 424 U.S. at 431, 96 S.Ct. at 995 - 996); Van de Kamp, 555 U.S. at 434, 129 S.Ct. at 861; Dababnah v. Keller-Burnside, 208 F.3d 467, 471 - 472 (4th Cir. 2000)(stating that "numerous courts have found prosecutors absolutely immune when undertaking [extradition proceedings].")

Furthermore, a prosecutor is entitled to absolute immunity even if he or she "acted with an

improper state of mind or improper motive." <u>Shmueli v. City of New York</u>, 424 F.3d 231, 237 (2nd Cir. 2005); <u>also see</u> <u>Smith v. McCarthy</u>, 349 Fed.Appx. 851, 859 (4th Cir. 2009), <u>cert. denied</u>, ___ U.S. ___, 131 S.Ct. 81, 178 L.Ed.2d 26 (2010); <u>Brown v. Daniel</u>, 230 F.3d 1351 (4th Cir. 2000)("[T]o the extent [plaintiff] alleges that the prosecutors engaged in misconduct during the prosecution of this case . . ., the prosecutors are absolutely immune."). Thus, prosecutors are entitled to absolute immunity for withholding materially exculpatory evidence, and knowingly presenting perjured testimony or false or misleading evidence to the Court or grand jury. <u>Burns</u>, 500 U.S. at 490-92, 111 S.Ct., at 1941-42("A state prosecuting attorney is absolutely immune from liability for damages under § 1983 for participating in a probable-cause hearing . . . ."); <u>Imbler</u>, 424 U.S. at 422, 96 S.Ct. 984 at 991(citing <u>Yaselli v. Goff</u>, 275 U.S. 503, 48 S.Ct. 155, 72 L.Ed. 395 (1927))(finding prosecutor entitled to absolute immunity for allegations that he "maliciously and without probable cause procured plaintiff's grand jury indictment by the willful introduction of false and misleading evidence."); <u>also see</u> <u>Brown v. Daniel</u>, 230 F.3d at 1352; <u>Lyles v. Sparks</u>, 79 F.3d 372, 377 (4th Cir. 1996); <u>Carter v. Burch</u>, 34 F.3d 257, 263 (4th Cir. 1994), <u>cert. denied</u>, 513 U.S. 1150, 115 S.Ct. 1101, 130 L.Ed2d 1068 (1995). Although prosecutors may be entitled to absolute immunity, prosecutors are subject to criminal and professional sanctions for prosecutorial abuses. <u>Imbler</u>, 424 U.S. at 429, 96 S.Ct. at 994; <u>Malley v. Briggs</u>, 475 U.S. 335, 343, n. 5, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986). It is well recognized that "[a]bsolute prosecutorial immunity 'is not grounded in any special esteem for those who perform these functions, and certainly not from a desire to shield abuses of office, but because any lesser degree of immunity could impair the judicial process itself.'" <u>Dababnah</u>, 208 F.3d at 471(quoting <u>Kalina v. Fletcher</u>, 522 U.S. 118, 127, 118 S.Ct. 502, 139 L.Ed.2d 471 (1997)). The <u>Imbler</u> Court determined the importance of protecting the integrity of the prosecutor's office and the

judicial system outweighs the desire to afford civil redress to a wronged defendant. Imber, 424 U.S. at 427 - 429, 96 S.Ct. at 993 - 994.

A prosecutor, however, is not entitled to absolute immunity for "investigatory functions that do not relate to an advocate's preparation for the initiation of a prosecution or for judicial proceedings." Buckley, 509 U.S. at 273, 113 S.Ct. at 2615(citing Burns, 500 U.S. at 491, 11 S.Ct. at 1941-42). Thus, a prosecutor is only entitled to qualified immunity for administrative actions or investigative functions not related to trial preparation, such as holding a press conference, engaging in investigative activity prior to the establishment of probable cause to arrest, providing police officers with legal advice during the investigative phase, or acting as a complaining witness in support of a warrant application. Id.; also see Van de Kamp, 555 U.S. at 342 - 343, 129 S.Ct. at 861. The Supreme Court has explained as follows:

> There is a difference between the advocate's role in evaluating evidence and interviewing witnesses as he prepares for trial, on the one hand, and the detective's role in searching for clues and corroboration that might give him probable cause to recommend that a suspect be arrested, on the other hand. When a prosecutor performs the investigative functions normally performed by a detective or police officer, it is "neither appropriate nor justifiable that, for the same act, immunity should protect the one and not the other. Thus, if a prosecutor plans and executes a raid on a suspected weapons cache, he "has no greater claim to complete immunity than activities of police officers allegedly acting under his direction."

Buckley, 509 U.S. at 273, 113 S.Ct. at 2616(internal citations omitted). Thus, a prosecutor does not have absolute immunity for a claim that he or she fabricated evidence during the preliminary investigation of an unsolved crime. Id., 509 U.S. at 275, 113 S.Ct. at 2616 - 2617.

## 1.    Defendants Lazenby and Frail.

Plaintiff alleges that Defendants Lazenby and Frail unlawfully procured the Indictments at issue by forcing Officers Robertson and Cook to commit perjury before the grand jury. (Document

No. 23, Ex. 2, p.7.) Specifically, Plaintiff claims that Officer Robertson was pressured to testify before the grand jury about Plaintiff's failure to appear for sentencing on September 25, 1987, although Defendants Robertson, Lazenby and Frail knew that Plaintiff had appeared for sentencing on September 14, 1987. (Id.) Plaintiff alleges that Defendant Frail pressured Officer Cook to commit perjury before the grand jury when he testified that he had knowledge of Plaintiff's obligation to appear between July 1988, and September 8, 1988. As stated above, prosecutors are entitled to absolutely immune concerning their decision to initiate prosecution and for their conduct before the grand jury. See Imbler, 424 U.S. at 431, 96 S.Ct. at 995(holding that "in initiating a prosecution . . . the prosecutor is immune"). To the extent Plaintiff alleges that Defendants Lazenby and Frail knowingly presented perjured testimony before the grand jury, Defendants are entitled to absolute immunity as their conduct was intimately associated with the judicial phase of the criminal process. See Imbler, 424 U.S. at 422, 96 S.Ct. 984 at 991(citing Yaselli, 275 U.S. 503, 48 S.Ct. 155, 72 L.Ed. 395 (1927))(finding prosecutor entitled to absolute immunity for allegations that he "maliciously and without probable cause procured plaintiff's grand jury indictment by the willful introduction of false and misleading evidence."); Smith, 349 Fed.Appx. at 859 (a prosecuting attorney is absolutely immune for conspiring with police officers to present false testimony and for withholding exculpatory evidence as these actions are "intimately associated with the judicial process); Brown, 230 F.3d at 1351(finding that prosecutor was entitled to absolute immunity for knowingly using perjured testimony); Lyles, 79 F.3d at 377(holding that a prosecutor enjoyed absolute immunity from claims that she made false representations and suborned perjury before the grand jury); Rhodes v. Smithers, 939 F.Supp. 1256, 1269 (S.D.W.Va. Sept. 15, 1995)(District Judge Copenhaver)("[T]he presentation of false testimony in the course of a judicial proceeding is an allegation 'for which the

prosecutor is afford absolute immunity.'" citing <u>Carter v. Burch</u>, 34 F.3d 257, 263 (4th Cir. 1994)). Defendants Lazenby and Frail, however, are not entitled to absolute immunity concerning Plaintiff's claim that during the investigative phase Defendants Lazenby and Frail sought out false testimony or directed Defendants Roberston and Cook to present false testimony.

Plaintiff's remaining allegation against Defendants Lazenby and Frail relates to their refusal to disclose certain grand jury minutes. (Document No. 23-2, pp. 7 and 18-19.) "Generally, only the court that has jurisdiction over the grand jury has the authority to direct disclosure of the grand jury minutes or documents." <u>United States v. Penrod</u>, 609 F.2d 1092, 1097 (4th Cir. 1979)(citations omitted)("The grand jury minutes are not the property of the attorneys or agents of the government. Rather, these documents are records of the court."). Thus, it is generally not within a State prosecutor's discretion to disclose grand jury minutes. Prosecutors, however, may be required pursuant to Rule 26.2(f) of the West Virginia Rules of Criminal Procedure to disclose certain witness' statements made during grand jury proceedings even though there is a general rule of confidentiality surrounding grand jury proceedings. Under the "in the possession of" language of Rule 26.2(f) of the West Virginia Rules of Criminal Procedure regarding the production of witness' statements pertaining to the subject matter of testimony, "a prosecutor is required to disclose statements to which he has access even though he does not have the present physical possession of the statements." Syl. Pt. 5, <u>State v. Watson</u>, 173 W.Va. 553, 318 S.E.2d 603 (1984). The West Virginia Supreme Court determined "under Rule 26.2, the prosecuting attorney does have possession of grand jury transcripts by virtue of his access to them under Rule 6(e)(3)(A) of the West Virginia Rules of Criminal Procedure." <u>Id.</u> at 560. To the extent Plaintiff is alleging that Defendants Lazenby and Fail failed to produce grand jury transcripts pursuant to Rule 26.2, the Court finds his allegation

to be without merit. Even assuming that Defendants Lazenby and Frail improperly refused to provide Plaintiff with the grand jury transcripts, prosecutors are entitled to absolute immunity for failing to comply with discovery requests or withholding evidence. <u>Carter</u>, 34 F.3d at 262(finding a prosecutor that withheld from defense counsel evidence obtained during discovery to be entitled to absolute immunity); <u>also see</u> <u>Williams v. Wickensimer</u>, 2008 WL 4613941, * 4 (D.S.C. Oct. 14, 2008)("[C]omplying with Rule 5 discovery request falls within the prosecutor's traditional role as an advocate for the State.").

Based on the foregoing, the undersigned finds that Defendants Lazenby and Frail's Motion to Dismiss should be granted in part and denied in part. The Motion to Dismiss should be denied regarding Plaintiff's claim that during the investigative phase respecting the charges contained in Indictments 88-F-203 and 92-F-342, Defendants Lazenby and Frail sought out fabricated evidence or procured false testimony by Defendants Robertson and Cook.

## 2.  **Defendant Keller.**

Plaintiff claims that Defendant Keller filed a fabricated indictment, fabricated evidence to procure Plaintiff's indictment, made false statements to the Court, and willfully concealed records during Plaintiff's criminal trial and appeal. (Document No. 23-1, pp.7 - 12.) First, Plaintiff alleges that Defendant Keller fabricated "Amended Indictment No. 92-F-342" as no grand jury was convened to return it. (<u>Id.</u>, pp. 6 - 7 and 8, ¶¶ 10 - 11 and 16.) The filing of an indictment by a prosecutor is conduct "intimately associated with the judicial phase of the criminal process." It is well established that prosecutors are absolute immunity for initiating a prosecution. <u>See</u> <u>Imbler</u>, 424 U.S. at 431, 96 S.Ct. at 995. Thus, Defendant Keller is entitled to absolute immunity for allegedly

filing a fake or fabricated indictment.[13] See Davidson v. United States, 2005 WL 623228 * 1 (D.D.C. Mar. 17, 2005)(finding that prosecutor was entitled to absolute immunity for allegedly filing a "fake" indictment).

Second, Plaintiff alleges that Defendant Keller sought out or instructed Defendants Robertson and Cook to present false testimony before the grand jury in order to procure the indictments against Plaintiff. (Document No. 23-1, pp. 7 - 12.) Similar to Defendants Lazenby and Frail, Defendant Keller is not entitled to absolute immunity concerning Plaintiff's claim that during the investigative phase she sought out fabricated evidence or directed Defendants Roberston and Cook to present false testimony.

Third, Plaintiff asserts that Defendant Keller made false or misleading representations to the Court. Specifically, Plaintiff alleges Defendant Keller falsely advised the Court during pre-trial proceeding in Case No. 92-F-342 that the Indictment in Case No. 88-F-203 was withdrawn. Plaintiff states that the Indictment in Case No. 88-F-203 was not dismissed until June 3, 1993, which was subsequent to his conviction in Case No. 92-F-342. (Document No. 23-1, pp. 7 and 10, ¶¶ 12 and 29.) Additionally, Plaintiff claims Defendant Keller falsely informed the Court that Plaintiff's counsel, attorney Karen Kostol, had requested a continuance in order to avoid dismissal of the case under the Court's three-term rule. (Id., pp. 8 - 9, ¶¶ 17 - 22.) Prosecutors are afforded absolute immunity for the presentation of false testimony in Court. Imbler, 424 U.S. at 422, 96 S.Ct. at 991(citing Yaselli v. Goff, 275 U.S. 503, 48 S.Ct. 155, 72 L.Ed. 395 (1927))(finding prosecutor entitled to absolute immunity for allegations that he "maliciously and without probable cause

---

[13] The record indicates that "Judge Ashworth made a particular finding that the Grand Jury that [Plaintiff] says didn't occur, did occur; and that [Plaintiff] was not entitled to the record." (Document No. 39, p. 24.)

procured plaintiff's grand jury indictment by the willful introduction of false and misleading evidence."); Logan v. Laterzo, 24 Fed.Appx. 579, 581 (7th Cir. 2001)(finding prosecutors absolutely immune for allegedly delaying the criminal trial by misrepresenting the existence of a crime-scene videotape); Lyles, 79 F.3d at 377(holding that a prosecutor enjoyed absolute immunity from claims that she made false representations and suborned perjury before the grand jury); Carter, 34 F.3d at 262(Absolute immunity applies when a prosecutor is alleged to have withheld exculpatory evidence and conspired to present false testimony during trial.). Even assuming Defendant Keller made false or misleading representations to the Court, she is entitled to absolute immunity as she was acting as an advocate in presenting the State's case. See Imbler, 424 U.S. at 431, 96 S.Ct. at 995

Finally, Plaintiff claims that Defendant Keller concealed the Court file during the appeal and post conviction process as a means to withhold exculpatory evidence and deny him access to the court.[14] The Court file was allegedly concealed from March, 1996, through March 1998.[15] Plaintiff alleges that the Court file contained an Order exhibiting that Indictment No. 88-F-203 was not "nulled and stricken from the docket" until June 3, 1993. (Document No. 23-1, p. 11.) Plaintiff asserts that the above document proved that "Defendant Keller committed gross intentional and liable acts to have Plaintiff Azeez tried and convicted under 92-F-342 while 88-F-203 was still active during all trial phases." (Id., p. 12.) During the period of time the Court file was missing,

---

[14]  A review of the record in *Azeez v. Haines*, Civil Action No. 2:00-cv–0054 (N.D.W.Va.), reveals that the Court file was lost for approximately two years. The court file was located in Judge H.L. Kirkpartrick's office in March, 1998. (Document No. 23-5, pp. 26 - 28.) Plaintiff offers no facts to support his wholly conclusory claim that Defendant Keller concealed the Court file in an effort to withhold exculpatory evidence.

[15]  As stated above, Plaintiff's claim that Defendant Keller's conduct denied him access to the Court is untimely. Thus, the Court will only consider Plaintiff's claim that Defendant Keller withheld exculpatory evidence.

Defendant Keller was representing the State on *habeas* proceeding regarding Plaintiff's failure to appear and sexual assault convictions. Absolute prosecutorial immunity extends to prosecutor's representation of the government in a direct appeal and post-conviction case. Carter, 34 F.3d at 263; Henzel v. Gerstein, 608 F.2d 654, 657 (5th Cir. 1979); Bruce v. Wade, 537 F.2d 850, 852 (5th Cir. 1976). The undersigned, therefore, must consider whether Defendant Keller is entitled to absolute immunity for allegedly concealing exculpatory evidence. As stated above, a prosecutor is entitled to absolute immunity even if she "acted with an improper state of mind or improper motive." Shmueli, 424 F.3d at 237; Rhodes, 939 F.Supp. at 1268(the prosecutor's decision to file charges is protected by absolute immunity even if done vindictively, maliciously, or without adequate investigation.) Accordingly, prosecutors are entitled to absolute immunity for actions such as withholding materially exculpatory evidence. See Brown, 230 F.3d at 1352; Carter, 34 F.3d at 263. The undersigned, therefore, concludes that Defendant Keller is entitled to absolute immunity for allegedly withholding exculpatory evidence during the appeal and post-conviction process. As explained by the Imber Court, prosecutorial abuses are subject to criminal and professional sanctions.

Based on the foregoing, the undersigned finds that Defendant Keller's Motion to Dismiss should be granted in part and denied in part. The Motion to Dismiss should be denied as to Plaintiff's claim that during the investigative phase respecting the charges contained in Indictments 88-F-203 and 92-F-342, she sought out fabricated evidence or procured false testimony by Defendants Robertson and Cook in order to indict Plaintiff.

### D.     Doctrine of Qualified Immunity: Defendants Robertson and Cook.

Courts have established qualified immunity for government officials in consideration of a

number of factors including the substantial cost of litigation against government officials, the distraction of government officials from their public responsibilities and the disincentive to responsible and capable persons to accept government positions if there is no protection against suits accusing them of misconduct in the performance of their public duties. Government officials performing discretionary functions are generally protected from civil damages liability if their "conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Pearson v. Callahan, 555 U.S. 223, 231, 129 S.Ct. 808, 815, 172 L.Ed.2d 565 (2009)(quoting Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982)). In determining the validity of a qualified immunity defense, the Court should be guided by a two-prong test: (1) whether the facts viewed in the light most favorable to the Plaintiff establish a deprivation of an actual constitutional right; and (2) whether that right was clearly established at the time of the purported violation. Id. The sequence of the steps is immaterial following Pearson. The Court may exercise discretion in deciding which of the two prongs "should be addressed first in light of the circumstances in the particular case at hand." Id. at 818.

Officers Robertson and Cook assert that they are immune from suit under the doctrine of qualified immunity. Plaintiff alleges that Defendants Robertson and Cook committed perjury by testifying falsely before the grand jury in order to obtain an Indictment.[16] Plaintiff further contends that Defendants Robertson and Cook conspired to unlawfully arrest and extradite Plaintiff despite having knowledge that the indictment was procured without probable cause. Accordingly, Plaintiff

---

[16] The Court notes that witnesses who testify in Court, including police officers, are absolutely immune from any claims relating to their testimony. *Briscoe v. LaHue*, 460 U.S. 325, 326, 103 S.Ct. 1108, 75 L.Ed.2d 96 (1983)(witnesses in judicial proceedings receive "absolute immunity from damages liability under § 1983 based on their testimony").

appears to be asserting a claim of false arrest, malicious prosecution, and the right not to be deprived of liberty as a result of fabricated evidence. As stated above, Plaintiff's claims of false arrest and malicious prosecution are untimely.[17] Therefore, the Court will consider Plaintiff's claim that Defendants Robertson and Cook violated his constitutional rights by deliberately falsifying or fabricating evidence. A person has a constitutional "right not to be deprived of liberty as a result of the fabrication of evidence by a government officer acting in an investigating capacity." Washington v. Wilmore, 407 F.3d 274 (4th Cir. 2005). The Fourth Circuit specifically determined that "this right was clearly established in 1983." Id. at 283, citing Miller v. Pate, 386 U.S. 1, 7, 87 S.Ct. 785, 17 L.Ed.2d 690 (1967). Accordingly, Plaintiff should be allowed to proceed with the above claim as the constitutional "right not to be deprived of liberty as a result of the fabrication of evidence by a government officer acting in an investigating capacity" was clearly established in 1988 when the events related to this case occurred.

**E.     Defendant Curnutte.**

In his Complaint, Plaintiff contends that Defendant Curnutte improperly testified against Plaintiff in the criminal proceeding involving Plaintiff's alleged failure to appear. (Document No. 23-1, pp. 11 - 12.) Plaintiff states that Defendant Curnutte turned a confidential letter over to

---

[17]     The Court notes that an individual cannot state a cognizable claim of false arrest under the Fourth Amendment if there has been an independent finding of probable cause. *See Dorn v. Town of Prosperity*, 375 Fed.Appx. 284 (4th Cir. 2010)(finding plaintiff, who was arrested pursuant to a facially valid warrant, could not bring an action against the town for false arrest); *Porterfield v. Lott*, 156 F.3d 563 (4th Cir. 1998)("a claim for false arrest may be considered only when no arrest warrant has been obtained"); *also see Gerstein v. Pugh*, 420 U.S. 103, n. 19, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975)("an indictment, 'fair upon its face,' and returned by a 'properly constituted grand jury,' conclusively determines the existence of probable cause and requires issuance of an arrest warrant without further inquiry").

Defendant Keller and testified beyond the scope allowed by the Judge.[18] (Id.) Plaintiff states that his failure to appear "conviction was reversed partially on Defendant Curnutte's unconstitutional acts [and] he must be held liable equal to the rest of the defendants." (Id., p. 12.) Accordingly, Plaintiff appears to be claiming that Defendant Curnutte's conduct violated his constitutional rights and resulted in legal malpractice. As stated above, Plaintiff's claim of legal malpractice is untimely. Therefore, the undersigned will consider Plaintiff's constitutional claim under Section 1983.

Generally speaking, to state and prevail upon a claim under 42 U.S.C. § 1983, a Plaintiff must prove that (1) a person acting under color of State law (2) committed an act which deprived him of an alleged right, privilege or immunity protected by the Constitution or laws of the United States. A defense attorney does not act under the color of state law when retained or court-appointed. Vermont v. Brillon, ___ U.S. ___, 129 S.Ct. 1283, 1291, 173 L.Ed.2d 231 (2009)("Unlike a prosecutor or the court, assigned counsel ordinarily is not considered a state actor."); Polk County v. Dodson, 454 U.S. 312, 3325, 102 S.Ct. 445, 453, 70 L.Ed.2d 509 (1981)("[A] public defender does not act under color of state law when performing a lawyer's traditional functions as counsel to a defendant in a criminal proceeding."); Hall v. Quillen, 631 F.2d 1154, 1155-56 (4th Cir. 1980)(state-appointed counsel is not acting under color of state law), cert denied, 454 U.S. 1141, 102 S.Ct. 99, 71 L.Ed.2d 293 (1982); Deas v. Potts, 547 F.2d 800 (4th Cir. 1976)("A private attorney who is retained to represent a criminal defendant is not acting under color of state law, and therefore is not amenable to suit under § 1983."). Thus, Plaintiff cannot pursue a Section 1983 claim against Defendant Curnutte. Accordingly, Defendant Curnutte's Motion to Dismiss should be granted.

---

[18]   To the extent Plaintiff is alleging a legal malpractice claim, the undersigned has determined the claim to be untimely.

**F.**     **Freedom of Information Act.**

Plaintiff contends that Defendants Davis and Cole improperly refused his FOIA requests for

documents concerning grand jury proceedings related to Indictment Nos. 88-F-203 and 92-F-342.

Defendants contend that Plaintiff's FOIA claim has previously been considered and rejected by prior

Federal and State actions. In the Federal action, the Northern District of West Virginia determined

that Plaintiff had failed to state a Federal FOIA claim against Defendants Robertson, Lazenby,

Keller, Davis, and Cook. Azeez v. Haines, et al., Case No. 2:03-cv-17 (N.D.W.Va. Sept. 16, 2004).

Specifically, Magistrate Judge Kaull[19] stated as follows:

> [T]he Court has no jurisdiction over the state court's denial of information
> because 5 U.S.C. § 552 does not apply to state courts. Instead, 5 U.S.C. § 552(a)
> indicates what information a federal agency shall make available to the public.
> Further, according to 5 U.S.C. § 551
> > (1) "agency" means each authority of the Government of the United
> > States, wether or not it is within or subject to review by another
> > agency, but does not include - -
> > (A) the Congress;
> > (B) the courts of the United States;
> > (C) the governments of the territories or possession of the United
> > States;
> > (D) the government of the District of Columbia;
> > or except as to the requirements of section 552 of this title - -
> > (E) agencies composed of representatives of the parties or of the
> > representatives of organizations of the parities to the disputes
> > determined by them;
> > (F) courts martial and military commissions;
> > (G) military authority exercised int eh field in time of war or in
> > occupied territory; or
> > (H) functions conferred by sections 1738, 1739, 1743, and 1744 of
> > title 12; chapter 2 of title 41; subchapter II of chapter 471 of title 49;
> > or sections 1884, 1891-1902, and former section 1641(b)(2), of title
> > 50, appendix.

---

[19]  In *Azeez v. Haines, et al.*, Case No. 2:03-cv-17, United States District Judge Robert
Maxwell adopted United States Magistrate Judge Kaull's Proposed Finding and Recommendation
determining that Plaintiff had failed to state a viable claim under the FOIA.

A state circuit court does not fall within the definition of agency. Therefore, the Court has no jurisdiction to order the disclosure of the requested documents, and Azeez is not entitled to civil remedies under 5 U.S.C. § 552(g).

Azeez v. Haines, *et al.*, Case No. 2:03-cv-17, Document No. 6, pp. 3 - 4. In the State action, the Circuit Court of Raleigh County granted Defendant Davis and Cole's Motion to Dismiss finding that Plaintiff's West Virginia FOIA claim was precluded by *res judicata*. Azeez v. Davis, et al., Civil Action No. 00-C-390-H; (Document No. 39, pp. 18 - 36.)

The preclusive effects of the doctrines of *res judicata* and collateral estoppel are designed to promote judicial economy, encourage reliance on judicial decisions, and relieve parties from the expense of multiple lawsuits. See Parklane Hosiery Co. Inc. v. Shore, 439 U.S. 322, 326, 99, S.Ct. 645, 649, 58 L.Ed.2d 552 (1979); Wright & Miller, § 131.12[4][a]. "Under *res judicata*, a final judgment on the merits bars further claims by parties or their privies based on the same cause of action." Young-Henderson v. Spartanburg Area Mental Health Center, 945 F.2d 770, 773 (4th Cir. 1991)(quoting Montana v. United States, 440 U.S. 147, 153, 99 S.Ct. 970, 973, 59 L.Ed.2d 210 (1979). Collateral estoppel "precludes relitigation of an issue decided previously in judicial or administrative proceedings provided the party against whom the prior decision was asserted enjoyed a full and fair opportunity to litigate that issue in an earlier proceeding." In re McNallen, 62 F.3d 619, 624 (4th Cir. 1995). "For res judicata to prevent a party from raising a claim, three elements must be present: '(1) a judgment on the merits in a prior suit resolving (2) claims by the same parties or their privies, and (3) a subsequent suit based on the same cause of action." Ohio Valley Environmental Coalition v. Aracoma Coal Co., 556 F.3d 177, 210 (4ᵗʰ Cir. 2009)(quoting Aliff v. Joy Mfg. Co., 914 F.2d 39, 42 (4ᵗʰ Cir. 1990)). The Court will consider the above-referenced elements in determining whether the prior judgments entered by the United States District Court for

the Northern District of West Virginia and the Circuit Court of Raleigh County[20] precludes Plaintiff's FOIA claim against Defendants Davis and Cole.

First, the undersigned finds that there was a final judgment on the merits in both the Federal and State cases. In the Federal action, Magistrate Judge Kaull submitted his proposed findings and recommendation on May 13, 2003. (Document No. 27, pp. 16 - 21.) On September 16, 2004, Judge Maxwell adopted the findings and recommendations of the Magistrate Judge Kaull and dismissed with prejudice Plaintiff's claim pursuant to 5 U.S.C. § 552. (Id., pp. 22 - 27.) In the State action, Defendants' motion to dismiss was granted on August 25, 2000. (Document No. 39, p. 33.)

Next, the undersigned considers the identity of the parties or their privies. The Court finds that the State action and the present action involve identical parties. (Document No. 39, pp. 18 - 36.) The prior Federal action, however, involved different defendants. (Document No. 27, pp. 16 - 28.) The Court, therefore, must consider whether the prior defendants were in privity with the present defendants. To be in privity with a party to the previous litigation, the nonparty must be "so identified in interest with a party to former litigation that he represents precisely the same legal right in respect to the subject matter involved." Jones v. SEC, 115 F.3d 1173, 1180 (4th Cir. 1997), citing Nash County Bd. of Educ. v. Biltmore Co., 640 F.2d 484, 493 (4th Cir. 1981). In the prior Federal action, Plaintiff named the following defendants: William Haines, Warden of Huttonsville Correctional Center; Cedric Robertson; Bruce Lazenby; Michael Froble; Kristen L. Keller-Burnside; Janice Davis; Zarina Rasheed; and David Cook. (Document No. 27, p. 16.) In the present case, Defendants Cole and Davis are named as defendants concerning Plaintiff's FOIA claim. (Document

---

[20]  Under 28 U.S.C. § 1738, federal courts must give full faith and credit to State Ccourt judgments.

41

No. 23-1, pp. 13 - 17.) Although Defendant Cole was not a named defendant in Plaintiff's previous Federal action, the Court finds that Defendant Cole was in privity with David Cook. Both Defendants Cole and Cook were police officers with the Raleigh County Sheriff's Department. In the instant action, Plaintiff alleges that Defendant Cole improperly refused to provide information concerning the grand jury and whether David Cook testified before the grand jury. Accordingly, Defendant Cole was "so identified in interest with a party to former litigation that he represents precisely the same legal right in respect to the subject matter involved."[21]

Finally, the Court finds that the cause of action in both the earlier suits and the present suit are the same. Lawsuits are deemed to have the same cause of action if the two suits "arise from the same transaction or series of transactions or the same core of operative facts." Harnett v. Billman, 800 F.2d 1308, 1312 n. 1 (4th Cir. 1986); also see Sullivan v. Easco Corp., 662 F. Supp. 1396, 1408 (1987)("Two causes of action are deemed the same for the purposes of *res judicata* only if the same evidentiary facts would support both actions."). Identical to Plaintiff's prior suits, Plaintiff bases his present suit upon the alleged failure to provide grand jury and police records pursuant to the FOIA. In his State action, Plaintiff argued that the records were denied in violation of the State FOIA. In his Federal action, Plaintiff asserted that the records were denied in violation of the Federal FOIA. In the instant case, it is unclear whether Plaintiff is asserting a claim based upon the Federal or State

---

[21]  Even assuming that Plaintiff's Federal FOIA claim is not precluded by *res judicata*, the undersigned finds the claim to be without merit. It is well recognized that the FOIA is applicable to agencies of the Government of the United State, not agencies of a State. *Grand Cent. Partnership, Inc. v. Cuomo*, 166 F.3d 473, 484 (2nd Cir. 1999)(stating that "it is beyond question that FOIA applies only to federal and not to state agencies"); *Philip Morris, Inc. v. Harshbarger*, 122 F.3d 58, 83 (1st Cir. 1997)("The FOIA . . . by its own terms, applies only to federal executive branch agencies."); *Barickman v. Bumgardner*, 2008 WL 2872712 (N.D.W.Va. July 22, 2008)(finding that "the Federal FOIA does not apply to State governments, cities, or its employees, or municipal corporations").

FOIA. To the extent Plaintiff is asserting a violation of the Federal FOIA, the cause of action in his previous Federal case is the same as his cause of action in the present case. To the extent Plaintiff is asserting a violation of the State FOIA, the cause of action in his prior State case is the same as his cause of action in the present case.

Based on the foregoing, the undersigned finds that Plaintiff's present action is barred by the doctrine of *res judicata*. The prior lawsuits (1) were final judgments on the merits, (2) involved the same causes of action, and (3) involved the same parties or their privies. The Court further finds that Plaintiff had a full and fair opportunity to litigate the claims decided in the Federal and State Court cases. Plaintiff is merely attempting to reassert claims that have already been adjudicated in Federal and State Court.

## PROPOSAL AND RECOMMENDATION

Accordingly, the undersigned hereby respectfully **PROPOSES** that the District Court confirm and accept the foregoing findings and conclude that the Motion to Dismiss filed on behalf of the Raleigh County Defendants (Document No. 39.) should be **GRANTED** in part and **DENIED** in part and (2) Defendant Curnutte's Motion to Dismiss (Document No. 51.) should be **GRANTED**. Plaintiff's Complaint should be dismissed as to Defendants Davis, Cole and Curnutte. Plaintiff should be entitled to proceed upon his claim that each of the remaining Defendants (Keller, Lazenby, Frail, Robertson and Cook) violated his Fourteenth Amendment right not to be deprived of liberty as a result of their fabrication of evidence while acting in an investigative capacity respecting the charges contained in Indictments 88-F-203 and 92-F-342.

The Plaintiff is hereby notified that this "Proposed Findings and Recommendation" is hereby **FILED**, and a copy will be submitted to the Honorable United States District Judge Irene C. Berger.

Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rule 6(e) and 72(b), Federal Rules of Civil Procedure, the Plaintiff shall have seventeen (17) days (fourteen days, filing of objections and three days, mailing/service) from the date of filing of this Findings and Recommendation within which to file with the Clerk of this Court specific written objections identifying the portions of the Findings and Recommendation to which objection is made and the basis of such objection. Extension of this time period may be granted for good cause.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155 (1985); Wright v. Collins, 766 F.2d 841, 846 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir. 1984). Copies of such objections shall be served on opposing parties, Judge Berger and this Magistrate Judge.

The Clerk is requested to send a copy of this Proposed Findings and Recommendation to Plaintiff, who is acting *pro se*, and transmit a copy to counsel of record.

Date: January 18, 2012.

R. Clarke VanDervort
United States Magistrate Judge