**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**BECKLEY DIVISION**

JAMAL A. AZEEZ,

                    Plaintiff,

v.                                 CIVIL ACTION NO.  5:06-cv-00106

KRISTEN L. KELLER, et al.,

                    Defendants.

**MEMORANDUM OPINION AND ORDER**

The Court has reviewed the *Motion to Dismiss on Behalf of Defendants Kristen L. Keller, Lawrence Frail, Bruce K. Lazenby, Cedric Robertson, David H. Cook, II, Billy Cole and Janice B. Davis*[1] (Document 39), the *Motion to Dismiss on Behalf of Defendant Francis M. Curnutte* (Document 51) and Plaintiff's response (Document 57). On January 18, 2012, the Magistrate Judge submitted his Proposed Findings and Recommendations (PF&R) (Document 151), wherein the Magistrate Judge recommends that the Raleigh County Defendants' Motion to Dismiss be granted in part and denied in part, and Defendant Curnutte's Motion to Dismiss be granted. The Court granted Plaintiff an extension of time to file objections to the PF&R. (Document 153). The same were filed on February 13, 2012. (Document 154).

---

[1] The Magistrate Judge occasionally refers to Defendants Keller, Frail, Lazenby, Robertson, Cook, Cole and Davis as "the Raleigh County Defendants." The Court will also occasionally refer to these Defendants as "the Raleigh County Defendants."

## I.    RELEVANT FACTS AND PROCEDURAL HISTORY[2]

### A.  Plaintiff's Convictions

In July of 1987, Plaintiff , Jamal A. Azeez, was convicted of second degree sexual assault in the Circuit Court of Raleigh County, West Virginia.  Plaintiff was sentenced on September 14, 1987, to a prison term of ten to twenty years.  In November of 1987, he was released on bond pending the appeal of his sexual assault conviction. Defendant Francis Curnutte represented Plaintiff on his petition for appeal to the West Virginia Supreme Court of Appeals challenging his sexual assault conviction. The West Virginia Supreme Court of Appeals denied his initial appeal on July 20, 1988, and denied his renewed appeal on September 9, 1988.

On September 12, 1988, Plaintiff was charged by Indictment (88-F-203) for failing to appear on September 25, 1987, for sentencing for his sexual assault conviction.[3] A *capias* warrant was issued a week later. On August 19, 1991, Plaintiff was arrested in Florida on the *capias* warrant and subsequently extradited to West Virginia on December 4, 1991. Plaintiff moved to quash the 88-F-203 indictment as "grossly defective and fatal" because it charged Plaintiff with failing to appear for sentencing in his sexual assault case on September 25, 1987, after he had already been sentenced on September 14, 1987.  Furthermore, Plaintiff argued that he was in custody at the time he allegedly failed to appear for sentencing since he was not released on his appeal bond until November 5, 1987.   An Amended Indictment (92-F-342), filed on November 2, 1992, charged that "JAMAL AZEEZ, on or about July 1988 through August

---

[2] The Court incorporates in its entirety the facts set forth in the PF&R. However, the Court summarizes the background and procedural history in this section.

[3] Indictment 88-F-203 reads as follows: "The Grand Jurors of the State of West Virginia, in and for the body of the County of Raleigh, upon their oaths present that JAMAL AZEEZ, on or about the 25th day of September 1987, in the said county of Raleigh, did unlawfully and feloniously, having been admitted to bail and released in accordance with the laws of this State did willfully and without just cause fail to appear as and when it was required of him to wit: did fail to report as Ordered by the Honorable C. Thomas Canterbury, for sentencing for the crime of Second Degree Sexual Assault, against the peace and dignity of the State, and found upon the testimony of Det. Cedric Robertson, BCPD duly sworn to testify the truth before the grand jury this the 12th day of September 1988."

1991, in the said county of Raleigh, unlawfully and feloniously, having been admitted to bail and released in accordance with the laws of this State, did willfully and without just cause fail to appear as and when it was required of him." (Document 53 Ex. 1 at 23). Plaintiff was subsequently convicted for failure to appear, and unsuccessfully appealed this conviction to the West Virginian Supreme Court of Appeals.

### B.  Habeas Petitions

The PF&R sets forth in great detail the Plaintiff's state and federal *habeas* petitions. The Court incorporates by reference the facts and procedural history of Plaintiff's *habeas* petitions as discussed in the PF&R. (Document 151 at 4-9).   Nonetheless, the Court provides a brief summary of Plaintiff's *habeas* petitions for the purpose of this opinion.

#### 1.   Challenges to Sexual Assault Conviction

Plaintiff unsuccessfully challenged his sexual assault conviction twice in the Circuit Court of Raleigh County. *State ex rel. Azeez v. Mangum*, Civil Action No. 92-HC-56 (Cir. Ct. Raleigh Co., Sept. 1, 1993); *Azeez v. Kirby*, Case No. 87-F-546 (Cir. Ct. Raleigh Co., June 1, 1998). Both decisions were upheld by the West Virginia Supreme Court of Appeals. *State ex rel. Azeez v. Mangum*, 195 W.Va. 163 (1995); *Azeez v. Kirby*, Case No. 981696 (W.Va. July 7, 1999).

On May 24, 1996, Plaintiff filed a Petition Under 28 U.S.C. § 2254 for Writ of *Habeas Corpus* By a Person in State Custody to challenge his sexual assault conviction in this Court. *Azeez v. Duncil*, Civil Action No. 5:96-cv-0497, Document 2.  On March 26, 1997, this petition was dismissed for failure to exhaust administrative remedies. *Id*. at Document 27.  Plaintiff filed a second Petition Under 28 U.S.C. § 2254 for Writ of *Habeas Corpus* By a Person in State

Custody in this Court on June 15, 1998. *Azeez v. Kirby*, Civil Action No. 5:98-0523, Document 1. By Order of September 28, 2000, Plaintiff's petition was dismissed. *Id*. at Document 48. Finally, Plaintiff filed his third *habeas* petition in this Court again challenging his conviction of second degree sexual assault. *Azeez v. Rubenstein, et al.*, Civil Action No. 5:03-0252, Document 1. This petition was dismissed as untimely. *Id*. at Document 48.

### 2.   Challenges to the Failure to Appear Conviction

On May 16, 1996, Plaintiff filed a Petition for Writ of *Habeas Corpus* in the Circuit Court of Raleigh County challenging his conviction for failure to appear. This petition was dismissed. Plaintiff subsequently filed a petition for writ of *habeas corpus* alleging original jurisdiction of the West Virginia Supreme Court of Appeals, which was refused. *Azeez v. Haines*, Case No. 00819 (W. Va. May 25, 2000).

On June 19, 2000, Plaintiff filed a Petition Under 28 U.S.C. § 2254 for Writ of *Habeas Corpus* By a Person in State Custody in the Northern District of West Virginia. *Azeez v. Haines*, Civil Action No. 2:00-0054.  On August 11, 2003, the late Honorable Robert E. Maxwell, United States District Judge for the Northern District of West Virginia, granted Plaintiff's motion for partial summary judgment and ordered that Plaintiff be released from custody.  In his decision, Judge Maxwell first found that the indictment in Case No. 92-F-342 was facially defective in violation of the Fifth Amendment because  it failed to state an exact date on which Plaintiff was to appear and included dates which Plaintiff was not actually required to appear. (Document 23-5 at 11-12.) Second, Judge Maxwell found Plaintiff's Sixth and Fourteenth Amendment rights were violated because the trial court failed to strike two jurors for cause, thereby requiring Plaintiff to use two of his peremptory challenges to strike those jurors. (*Id*. at 22.)  Third, Judge Maxwell found that Defendant Crunutte violated Plaintiff's attorney-client privilege when he

4

turned over Plaintiff's March 8, 1993, letter to the prosecutor and, also, when he testified at Plaintiff's trial (on the indictment alleging failure to appear) about a conversation he had with Plaintiff. (*Id*. at 25-26.)   Fourth, Judge Maxwell found that Plaintiff's Fourteenth Amendment rights were violated because he was denied access to the Court as he appealed his conviction and sought *habeas* relief because his court files were misplaced for two years. (*Id*. 27-28.)   Lastly, the Judge found Plaintiff's Fifth and Fourteenth Amendment rights were violated because he was not given credit for the time he served between his arrest and conviction for failure to appear. (*Id*. 33-34.)

On March 12, 2003, Plaintiff filed a Petition for *Habeas Corpus* under 28 U.S.C. § 2254 and 5 U.S.C. § 552(a) in the United States District Court for the Northern District of West Virginia alleging violations of the Freedom of Information Act ("FOIA") and retaliation. *Azeez v. Haines*, *et al.*, Civil Action No. 2:03-0017 (Document 1).   Defendants Robertson, Lazenby, Keller, Davis, and Cook were all named as Defendants in this Petition and in the instant case. On September 16, 2004, Judge Maxwell dismissed, with prejudice, Plaintiff's Petition seeking *habeas* relief because of his ruling in *Azeez v. Haines*, Civil Action No. 2:00-0054, and also dismissed Plaintiff's claim for retaliation, without prejudice, indicating that such action "would be properly brought in a civil rights action pursuant to 42 U.S.C. § 1983, rather than a *habeas corpus* action pursuant to 28 U.S.C. § 2254." *Id.* at Document 12.

### C.  Plaintiff's Complaint

Plaintiff filed "A Civil Rights Complaint Under 42 U.S.C. § 1983, 42 U.S.C. § 1985 and 28 U.S.C. § 1332 Alleging Unlawful Arrest to Unlawful Incarceration" on July 11, 2005, in the United States District Court for the Eastern District of New York. On January 25, 2006, the

Honorable Joanna Seybert, United States District Judge, issued a Memorandum Opinion and Order (Document 23) transferring the matter to this Court.

Plaintiff named as Defendants (1) current and former Raleigh County Prosecuting Attorneys Keller, Frail and Lazenby, (2) Police Officers Robertson, Cook and Cole, (3) the Raleigh County Circuit Court Clerk, Davis, (4) Circuit Judge Hutchison[4] and (5) Attorney Curnutte. Plaintiff alleges that Defendants violated his Fifth, Sixth and Fourteenth Amendment Due Process rights when he was imprisoned for two years (August 19, 2001- August 12, 2003) on his conviction for failure to appear. (Document 23-3 at 4.)

Plaintiff alleges that Defendant Robertson testified falsely to the grand jury on September 12, 1988. (Document 23-3 at 5.) Plaintiff indicates that Defendant Robertson knew he was sentenced on September 14, 1987, when he testified that Plaintiff failed to appear for sentencing on September 25, 1987. (*Id*.) Specifically, Plaintiff alleges that "Defendant Robertson, without probable cause, deliberately, intentionally, maliciously, conspiratorially, and with clear disregard of the law and a citizen's rights, committed gross unconstitutional acts to have Plaintiff indicted, arrested, and extradited under falsified information." (Document 23-3 at 5-6.)

Plaintiff alleges that Defendants Frail and Lazenby "unlawfully refused disclosure of the grand jury minutes of 88-F-203 for trial and appeal purposes in spite of such well-proven particularized needs that overcame all restrictions that could have prevented public exposure; thus responsible for obstruction of justice, willful concealment of prosecutorial and police malfeasances, and other related actionable wrongdoings." (*Id*. at 6.) Plaintiff contends it is highly probable that Indictment No. 88-F-203 is fabricated. (*Id*.)

---

[4] This Court previously entered judgment in favor of Judge Hutchison and dismissed him as a defendant in this case. (Document 138)

Plaintiff alleges that Defendant Keller filed an "Amended Indictment: No. 92-F-342" only after she became aware that the previous indictment was "grossly defective." (*Id.*) He alleges that no grand jury was actually convened to return the Amended Indictment that charged Plaintiff with failing to appear between July, 1988, and August, 1991. (*Id.* at 6-7.) Plaintiff also claims that Defendant Keller falsely informed the Court that Plaintiff's attorney requested a continuance and submitted an Order signed by Circuit Judge Burnside. (Document 23-3 at 8-9.) Plaintiff contends that no attorney was ever assigned to his case and that he neither met with his attorney nor asked her to file a motion for a continuance. (*Id.* at 9.) Plaintiff alleges the trial was able to go forward under the new indictment (92-F-342) because Judge Ashworth accepted the "fraudulent statements intentionally made by Defendant Keller." (*Id.*) After his conviction, Plaintiff alleges that Defendant Keller removed Plaintiff's files from the custody of Circuit Clerk Defendant Davis and unlawfully concealed his files for two years. (*Id.*) Plaintiff alleges that Defendant Keller reconstructed the files and then "secretly placed them in Judge H.L. Kirkpatrick's chamber where a secretary of [his] appellate counsel found them." (*Id.*) Therefore, Plaintiff alleges that he was unlawfully denied access to his files for two full years in spite of his counsel's diligent effort to locate them.

Plaintiff alleges that he contacted Defendant Curnutte, his attorney for the appeal of his sexual assault conviction, and subsequently sent Defendant Curnutte a confidential letter after receiving word that Defendant Keller had subpoenaed Defendant Curnutte to testify at Plaintiff's trial for failure to appear. (*Id.* at 11.) Plaintiff contends that he warned Defendant Curnutte of the potential breach of his attorney-client privilege if he testified against him. (*Id.*) However, Plaintiff alleges Defendant Curnutte turned over the confidential letter to Defendant Keller and testified beyond the scope permitted by Judge Ashworth. (*Id.* at 12.) Plaintiff alleges

Defendant Curnutte was found to have committed ethical violations by the West Virginia Lawyer Disciplinary Board. (*Id*.)  Plaintiff contends that his "conviction was reversed partially on Defendant Curnutte's unconstitutional acts, he must be held responsible and liable equal to the rest of the defendants." (*Id*.)

Plaintiff alleges Defendant Davis breached her duty to maintain the court's files and records by unlawfully permitting Defendant Keller to remove and keep the court files without the required court order. (Document 23-3 at 13.)  Plaintiff contends he first became aware of Defendant Davis's illegal acts when he initiated the March 1996 *habeas* petition in *Azeez v. Duncil*, Civil Action No. 5:96-0497. (*Id*.)  As a result, Plaintiff claims "Defendant Davis must be held liable for deliberate neglect of her duty when Plaintiff's entire court files were removed from her office and missing for two full years during critical post-conviction stages for which she should have known." (*Id*. at 15.)  Plaintiff also claims that Defendant Davis, upon learning that he was due to be released from prison in August of 2001, sent an illegal Commitment Order in February 2001 to keep him incarcerated on the failure to appear conviction. (*Id*. at 14.)  Plaintiff also claims Defendant Davis must be held liable under FOIA because "she deliberately refused requested access to unrestricted public records relating to [his] [f]ailure to [a]ppear conviction, especially on matters surrounding the amended indictment proceedings, and documents relating to the alleged 'special session' [of the] grand jury." (*Id*. at 15.)

Plaintiff alleges Defendant Frail knew that no grand jury was ever called for the 92-F-342 Indictment and he induced Defendant Cook to testify falsely. (*Id*. at 17.)  Plaintiff also alleges that Defendant Frail and all other Defendants "denied all FOIA requests for document, files, police and court records, and grand jury minutes concerning his indictment. . . [.]" (*Id*. at 18.)

Plaintiff alleges that Defendant Cook committed perjury when he was induced by other Defendants to testify falsely that Plaintiff had an obligation to appear for sentencing. (*Id*. at 17.) Plaintiff claims Defendant Cook conspired with other Defendants to conceal wrongdoings and engaged in malicious prosecution (*Id*.), and alleges Defendant Cole violated his FOIA rights. (*Id*. at 16.)

Plaintiff claims that as a result of all of the Defendants' actions, he has suffered loss of reputation, immense emotional trauma, physical injuries, loss of liberty, mental anguish, depression and anxiety. (*Id*. at 19.) Moreover, Plaintiff alleges that he was stabbed by a convicted murderer and contracted tuberculosis while he was held illegally at the Raleigh County Jail. (*Id*.)  Plaintiff seeks compensatory and punitive damages in an amount of ten million dollars and injunctive relief against any additional similar actions by Defendants. (*Id.* at 20.)

### D.  Defendants' Motions to Dismiss

On April 3, 2006, the Raleigh County Defendants filed their Motion to Dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim upon which relief can be granted.  On April 11, 2006, the Honorable Joseph R. Goodwin, current Chief District Court Judge, granted Defendants' motions to stay discovery (Documents 34 and 41) pending a ruling on the motions to dismiss. (Document 43).  Pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the Magistrate Judge notified Plaintiff of his right to file a response to Defendants' motion to dismiss. (Document 48 at 3.)

In support of their motion, the Raleigh County Defendants first contend that all of Plaintiff's claims are barred under the applicable statute of limitations. (Document 39 ¶ 1.) Second, the Raleigh County Defendants argue Plaintiff cannot recover against Defendants Keller, Frail, Lazenby and Davis because of the doctrine of absolute immunity. (*Id*. ¶ 2.) Third,

the Raleigh County Defendants argue Plaintiff cannot recover against Defendants Robertson and Cook because of the doctrine of qualified immunity. (*Id*. ¶ 3.)   Fourth, the Raleigh County Defendants maintain Plaintiff's FOIA claim is barred by the doctrine of *res judicata*. (*Id*. ¶ 4.) Finally, the Raleigh County Defendants argue Plaintiff is not entitled to injunctive relief to prevent West Virginia from pursuing future criminal actions when appropriate. (*Id*. ¶ 5.)

On April 14, 2006, Defendant Curnutte filed his Motion to Dismiss attempting to join the Raleigh County Defendants' arguments for dismissal based on the applicable statute of limitations and all other cited authority contained in the Raleigh County Defendants' Memorandum of Law. (Document 51 ¶¶ 1-2.)  The Magistrate Judge ordered Defendant Curnutte to file a separate memorandum in support of his motion to dismiss. (Document 55 at 4.) Defendant Curnutte filed a supportive memorandum stating that he was similarly situated as Defendants Davis, Robertson, and Cook. In addition, Defendant Curnutte contends he is similarity situated as all Defendant based on the statute of limitations argument. (Document 66 2-4.)

On April 27, 2006, Plaintiff filed his response to the motion to dismiss.  First, Plaintiff argues that *res judicata* is not a defense because the claims in his "Criminal Complaint were totally different." (*Id*. at 1-4.) Second, Plaintiff asserts "the nature of Defendants' conduct bars the immunity defense." (*Id*. at 4-13.) Lastly, Plaintiff claims Defendants provided no evidence to dispute any of his claims. (*Id*. at 13-16.)

On May 8, 2006, the Raleigh County Defendants filed their reply. (Document 60.)  First, Defendants contend that Plaintiff is not required to exhaust administrative remedies in § 1983 as suggested by Plaintiff. (*Id*. at 1-2.) Second, Defendants argue that Plaintiff sets forth new allegations based on his sexual assault conviction which were unrelated to his original

Complaint. (*Id.* at 2-3.)  Thus, Defendants contend Plaintiff cannot proceed upon claims related to his sexual assault conviction. (*Id.* at 2-4.)  Third, Defendants contend that Plaintiff fails to state which of the prosecutors' actions fall outside the role of an administrator. (*Id.* at 4.) Defendants argue that Plaintiff simply "makes unsupported statements regarding conspiracies, racism, fraudulent documents and hearings that did not exist." (*Id.*)  Finally, Defendants argue Plaintiff's claim that the grand jury did not meet on November 2, 1992, is barred from consideration by the Rooker-Feldman doctrine. (*Id.* at 5-6.)

## II.      *STANDARD OF REVIEW OF THE MAGISTRATE JUDGE'S PF&R*

This Court "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made."  28 U.S.C. § 636(b)(1)(C).  However, the Court is not required to review, under a de novo or any other standard, the factual or legal conclusions of the magistrate judge as to those portions of the findings or recommendation to which no objections are addressed.  *Thomas v. Arn*, 474 U.S. 140, 150 (1985).  In addition, this Court need not conduct a de novo review when a party "makes general and conclusory objections that do not direct the Court to a specific error in the magistrate's proposed findings and recommendations." [5]   *Orpiano v. Johnson*, 687 F.2d 44, 47 (4th Cir.1982).  When reviewing portions of the PF&R de novo, the Court will consider the fact that Plaintiff is acting *pro se*, and his pleadings will be accorded liberal construction. *Estelle v. Gamble,* 429 U.S. 97, 106 (1976); *Loe v. Armistead*, 582 F.2d 1291, 1295 (4th Cir.1978).

---

[5] Plaintiff argues in his objections that he is "entitled to some deference and caution when identifying portions where [he] appears to object even though the objections may appear to be general and conclusory and may not direct the Court to specific errors in the [PF&R]." To the extent Plaintiff objects to the standard of review, his objection is overruled. The Court properly articulates the standard of review.

### III.    12(b)6 MOTION TO DISMISS LEGAL STANDARD

Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, a plaintiff must provide a "short and plain statement of the claim showing . . . entitle[ment] to relief," and is not required to plead specific facts in the complaint.  Fed. R. Civ. P. 8(a)(2); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  The statement need only "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"  *Twombly*, 550 U.S. at 555 (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).   This standard "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Id.* at 555 (internal citations omitted); *see also Ashcroft v. Iqbal*, --- U.S. ----, ----, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (stating that "the Rule does call for sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.").   A defendant may challenge the complaint under Rule 12(b)(6) for "failure to state a claim upon which relief can be granted . . .."  Fed. R. Civ. P. 12(b)(6).

In reviewing a motion to dismiss under Rule 12(b)(6), the Court must "accept as true all of the factual allegations contained in the complaint."  *Erikson v. Pardus*, 551 U.S. 89, 93 (2007).  The Court must also "draw[ ] all reasonable factual inferences from those facts in the plaintiff's favor . . .."  *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999).  "[D]etermining whether a complaint states a plausible claim is context-specific, requiring the reviewing court to draw on its experience and common sense."  *Iqbal*, 129 S.Ct. at 1950.

Here, Plaintiff filed his complaint *pro se*, which requires this Court to give deference to his complaint. See *Gordon v. Leeke*, 574 F.2d 1147, 1153 (4th Cir. 1978)(A District Court should allow *pro se* plaintiffs reasonable opportunity to develop pleadings.); *Coleman v. Peyton*, 340 F.2d 603, 604 (4th Cir. 1965)(*Pro se* plaintiff should be given an opportunity to particularize

potentially viable claims.). A *pro se* complaint may, therefore, be dismissed for failure to state a claim only if it appears "'beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *Haines v. Kerner*, 404 U.S. 519, 521(1972), quoting *Conley v. Gibson*, 355 U.S. 41, 45 - 46 (1957).


## IV.    DISCUSSION

The Magistrate Judge recommends that the *Motion to Dismiss on Behalf of Defendants Kristen L. Keller, Lawrence Frail, Bruce K. Lazenby, Cedric Robertson, David H. Cook, II, Billy Cole and Janice B. Davis* be granted in part and denied in part. The Magistrate Judge further recommends that the *Motion to Dismiss on Behalf of Defendant Francis M. Curnutte* be granted. The Court will discuss, herein, the findings, recommendations, and objections on each of Plaintiff's claims.

The Magistrate Judge correctly stated that "[g]enerally speaking, to state and prevail upon a claim under 42 U.S.C. § 1983, a Plaintiff must prove that (1) a person acting under color of State law (2) committed an act which deprived him of an alleged right, privilege or immunity protected by the Constitution or laws of the United States." (Document 151 at 17.) The Magistrate Judge also correctly found that Section 1983 can provide a remedy under the Fourteenth Amendment if a state action causes a deprivation of liberty without due process. (*Id.*) (citing *Baker v. McCollan*, 443 U.S. 137, 145 (1979)("The Fourteenth Amendment does not protect all deprivations of liberty. It protects only against deprivations of liberty 'accomplished without due process of law.'")). Finally, the Magistrate Judge correctly noted that the "right not to be deprived of liberty as a result of the fabrication of evidence by a government officer acting

13

in his investigatory capacity" has been recognized by the Fourth Circuit. *Washington v. Wilmore*, 407 F.3d 274, 282 (4th Cir. 2005)(citation and quotation omitted).

### A.   *Statute of Limitations*

#### 1.   *Federal Claims*

The Magistrate Judge identified the applicable statute of limitations for the Federal Claims contained in Plaintiff's Complaint. (Document 151 at 18.)  Because there are no federally proscribed statutes of limitation for Plaintiff's claims, the Court is to look to West Virginia's statute of limitations for each claim. *See Owens v. Okure*, 488 U.S. 235, 249-50 (1989). The Fourth Circuit indicated that "in the absence of any state statute of limitations specifically applicable to suits to redress a violation of civil rights, the West Virginia limitation on personal injury actions applies." *McCausland v. Mason County Bd. of Ed.*, 649 F.2d 278 (4th Cir. 1981). The West Virginia statute of limitation for personal injury claims is two years from the time the cause of action accrued. W.Va. Code § 55-2-12(b) (2012).  However, the Magistrate Judge also correctly found that West Virginia sets out a specific one-year statute of limitation for "false arrest, false imprisonment, and malicious prosecution" claims. (Document 151 at 18) (citing *Wilt v. State Auto. Mut. Ins. Co.*, 203 W.Va. 165, 170 (1998)).

The Magistrate Judge next indicated that federal law is to be applied to decide when a cause of action accrues even though the limitation period is determined by state law. (Document 151 at 18.) As the Magistrate Judge discussed, an action accrues under federal law "when the plaintiff possesses sufficient facts about the harm done to him that reasonable inquiry will reveal his cause of action." (*Id.* at 19) (citing and quoting *Nasim v. Warden, MD House of Corr.*, 64 F.3d 951, 955 (4th Cir. 1995)(*en banc*)).  Furthermore, the accrual of the claim does not await a plaintiff's awareness of the injury. (*Id.*)   Therefore, the Magistrate Judge concluded that a

Section 1983 "cause of action accrues either when the plaintiff has knowledge of his claim or when he is put on notice – e.g., by the knowledge of the fact of injury and who caused it – to make reasonable inquiry and that inquiry would reveal the existence of a colorable claim." (*Id.*) (citing and quoting *Nasim*, 64 F.3d at 955.)   Finally, the Magistrate Judge found that to determine when a plaintiff possessed sufficient knowledge of his injury, the Court is to look to "the common-law cause of action most closely analogous to the constitutional right at stake as an 'appropriate starting point.'" (*Id.*) (citing and quoting *Brooks v. City of Winston-Salem, NC*, 85 F.3d 178, 181 (4th Cir. 1996).)

Applying the above rules, the Magistrate Judge first found that Plaintiff's Section 1983 claim for false arrest is barred by the statute of limitations because the applicable limitation period accrued on the date of his arrest in Florida on August 19, 1991, and expired on August 19, 1992, which was one year from the date Plaintiff was detained pursuant to legal process. (Document 151 at 19-20.)   The Magistrate Judge correctly found that a false arrest and false imprisonment claim accrues at the time the plaintiff becomes detained pursuant to the legal process. (*Id.*) (citing *Wallace v. Kato*, 549 U.S. 384, 397 (2007). (Document 151 at 20.) Plaintiff's Complaint was not filed until July 11, 2005. (*Id.*)   Therefore, the Magistrate Judge found that "the one-year statute of limitation has run as to Plaintiff's claims of false arrest and false imprisonment and the claims are therefore barred." (*Id.*)   This Court finds the Magistrate Judge has correctly analyzed and applied the applicable statute of limitations to the Plaintiff's false arrest claim under Section 1983 and finds the same is time barred.

Second, the Magistrate Judge found that a "Section 1983 claim for malicious prosecution accrues when the prosecution has terminated in Plaintiff's favor." (*Id.* at 21) (citing *Wallace*, 549 U.S. at 391.)   Plaintiff's failure to appear conviction was invalidated on August 11, 2003, which

was the date the "prosecution" was terminated in his favor.  Accordingly, applying the one-year statute of limitations for malicious prosecution together with the federal standard of accrual, the Magistrate Judge found that "Plaintiff's cause of action for malicious prosecution expired on August 11, 2004, one year from the date his conviction for failure to appear was overturned." (Document 151 at 21.)  Thus, the Magistrate Judge found that Plaintiff's claim for malicious prosecution alleged in his July 11, 2005 Complaint is barred by the applicable statute of limitations. (*Id*.)

Plaintiff objects to the Magistrate Judge's finding that his malicious prosecution claim is barred by the statute of limitations.  Plaintiff states that "a malicious prosecution claim would have been futile if brought in a civil court prior to a favorable termination of conviction." (Document 154 at 5.)  This is absolutely correct, but Plaintiff considered the expiration period the Magistrate Judge used for his denial of access to the court claim rather than his malicious prosecution claim. (Document 151 at 22-23.)  Plaintiff apparently mistakenly believes that the Magistrate Judge's ruling barred his malicious prosecution claim as of March 31, 2000, rather than August 11, 2004. (Document 154 at 5.)  Plaintiff is apparently confused about the expiration of the statute of limitations dates for his claim for denial to access to court and his malicious prosecution claim. (Document 151 at 21-22.) Plaintiff essentially argues that his malicious prosecution claim was not ripe when he asks rhetorically how he could "be compensated monetarily, or otherwise, for malicious prosecution while being locked up in prison for the same conviction . . . [?]"(Document 154 at 6.).  Plaintiff's objection lacks merit. Plaintiff is correct that his malicious prosecution claim would have been futile had it been filed prior to his successful challenge of his failure to appear conviction on August 11, 2003.  However, what is more important is that Plaintiff wholly failed to address the finding that the applicable one-year

limitation period for his malicious prosecution claim expired on August 11, 2004.[6]  Plaintiff does not dispute that a one-year statute of limitation applies to his malicious prosecution claim. *Wilt*, 203 W.Va. at 170.  Nor does Plaintiff dispute that his malicious prosecution claim accrued on August 11, 2003, "when the prosecution terminated in [his] favor." *Wallace*, 549  U.S. at 391. Given the accrual date of August 11, 2003, and the filing of the instant complaint on July 11, 2005, the Court finds that Plaintiff's malicious prosecution claim under Section 1983 is barred by the statute of limitations and, therefore, the Court finds Plaintiff's objection should be overruled.

Third, the Magistrate Judge considered Plaintiff's claim that "he was deprived of liberty because Defendants Keller, Lazenby, Frail, Robertson and Cook fabricated evidence and knowingly pursued an indictment without probable cause." (Document 151 at 21-22.) The Magistrate Judge correctly applied the two-year statute of limitation period applicable to personal injuries. (*Id* at 22.) The Magistrate Judge found the *Heck* rule applies to this claim because it encompasses the invalidity of Plaintiff's conviction for failure to appear. (Document 151 at 22.)  The *Heck* rule states that:

> [I]n order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254. A claim for damages bearing that relationship to a conviction or sentence that has not been so invalidated is not cognizable under § 1983.

---

[6] Plaintiff later rhetorically asks "[w]hen is a criminal prosecution concluded? Upon conviction? Or, exhaustion of all remedies?" (Document 154 at 7.) Plaintiff appears to contend that the statute of limitation period should have been tolled for both his malicious prosecution and false arrest claims.  Even if such claims were tolled until his successful challenge of his conviction on August 11, 2003, Plaintiff does not put forth any reason why both the malicious prosecution and false arrest claims are not barred by the applicable one-year statute of limitation period. Therefore, this objection is overruled.

*Heck v. Humphrey*, 512 U.S. 477, 486-487 (1994). Applying the *Heck* rule, the Magistrate Judge found that Plaintiff's "cause of action would have expired on August 11, 2005, two years from the date Plaintiff's failure to appear conviction was invalidated." (Document 151 at 22.) Therefore, the Magistrate Judge found that Plaintiff's claim, that he was deprived of his liberty as a result of fabricated evidence, alleged in his July 11, 2005 Complaint, was timely filed. (*Id*.)

Lastly, the Magistrate Judge considered Plaintiff's allegation that Defendants Keller and Davis violated his constitutional right, to access to the court, by concealing his court files during the appeal and post-conviction process with respect to his conviction for failure to appear. The Magistrate Judge appropriately determined that a two-year statute of limitation period applies to this claim. (Document 151 at 22.)  Plaintiff alleges that he was denied access to his file for two full years between March 1996 and March 1998.  Construing Plaintiff's Complaint liberally, the Magistrate Judge found that "the latest Plaintiff could have become aware of the alleged denial of access to the Court was March 31, 1998, the date his Court file was located." (Document 151 at 22.) Applying the two-year statute of limitation and the federal accrual standard, the Magistrate Judge determined this claim expired on March 31, 2000.[7]   Accordingly, the Magistrate Judge found that Plaintiff's claim of denial of access to the court alleged in his July 11, 2005 Complaint is barred by the  applicable statute of limitations. (Document 151 at 23.)

Plaintiff argues that Defendants were responsible for sending him "to a [m]aximum [s]ecurity prion in [p]unitive [i]solation for a year." (Document 154 ¶ 6) As a result, Plaintiff contends that prison officials "confiscated all of his legal files that he was allowed to have in prison and forcefully mailed them home. . . [.]" (*Id*.) Plaintiff argues this was "done spitefully and  retaliatorly  (sic)  to  prevent  [him]  from  accessing  courts  timely,  adequately,  and

---

[7] The Magistrate Judge indicated that he used March 31, 1998, as the date the Plaintiff located his file because the exact date was not indicated in Plaintiff's complaint, but rather just the month of March. Therefore, the March 31, 1998, date was chosen by liberally construing Plaintiff's Complaint.

vigorously." (*Id.*)  Plaintiff appears to object to the Magistrate Judge's finding that his denial of access to the court claim is barred by the statute of limitations.  The correct statute of limitation for Plaintiff's claim of denial of access to the court is two years.   The Magistrate Judge correctly found that Plaintiff's claim of denial of access to the court accrued, at the latest, on March 31, 1998. Therefore, Plaintiff's July 11, 2005 Complaint is well beyond the two-year statute of limitations for such a claim, and his objection to this finding should be overruled.

### 2.   State Law Claims

The Magistrate Judge found that Plaintiff appeared to assert state law claims for false arrest, malicious prosecution, and legal malpractice. (Document 151 at 23.)   The Magistrate judge correctly found exactly the same statute of limitations periods for the state claims of false arrest and malicious prosecution as he found for the same federal claims, using the same legal authority.  This resulted in these claims being legally barred.

Finally, the Magistrate Judge considered Plaintiff's legal malpractice claim against Defendant Curnutte.  Plaintiff claims Defendant Curnutte committed legal malpractice when he turned over Plaintiff's letter to the prosecution and later testified at his trial for failure to appear. The Magistrate Judge found Plaintiff's legal malpractice claim is a tort claim with a two-year statute of limitation period.  (Document 151 at 24) (citing *See Brumbaugh v. Princeton Partners*, 766 F.Supp. 497, 500 (S.D. W.Va. 1991), aff'd 985 F.2d 157 (4th Cir. 1993)).  Therefore, applying the two-year statute of limitation from that date, the Magistrate Judge found that Plaintiff's state law claim of legal malpractice is barred by the statute of limitations. (*Id.*) Plaintiff does not object to this finding.  Therefore, the Court is not required to provide de novo review of this finding. *Thomas,* 474 U.S. at 150.

3.   *Statute of Limitation Objections Not Specific to a Claim or Defendant*

Plaintiff contends that since his "Criminal Complaint," which Judge Hutchinson rightfully characterized as a civil complaint, "was filed in December of 2001, every claim the Magistrate time-barred subsequent to 2001 must be reversed." (Document 154 at 2.)   Plaintiff cites no specific law or authority to support his position. It appears Plaintiff attempts to argue that his claims were equitably tolled by the filing of his "Criminal Complaint."   Even if Plaintiff were entitled to some type of equitable tolling, the Court finds that the December 6, 2001 "Criminal Complaint" does not affect any of the statutorily barred claims discussed above, because the applicable limitation periods for Plaintiff's legal malpractice, denial of access to the court, and false arrest claims had already expired prior to December 6, 2001. *See infra* pp. 13-20. Further, the Court finds that Plaintiff's malicious prosecution claim was not ripe on December 6, 2001, because his conviction was not terminated in his favor until August 11, 2003.  Given these findings, a ruling on whether Plaintiff's December 6, 2001 "Criminal Complaint" tolled the applicable statute of limitation period for each claim is not necessary and would serve no legitimate purpose.

Additionally, Plaintiff  argues that the statute of limitations does not bar any of his claims "regardless of when it became apparent the wrongful acts occurred" until there was proof that his failure to appear conviction had terminated in his favor. (Document 154 at 16.)   Therefore, Plaintiff argues that all findings that his claims are barred by the statute of limitations are wholly without merit. (*Id.*)  Plaintiff appears to object to the Magistrate Judge's finding that an action accrues under federal law "when the plaintiff possesses sufficient facts about the harm done to him that reasonable inquiry will reveal his cause of action." *Nasim*, 64 F.3d at 955.  The Court finds Plaintiff's objection is without merit.  All of the applicable accrual dates for each cause of

action were correctly determined by the Magistrate Judge. Further, the Magistrate Judge correctly determined the applicable accrual period for the Plaintiff's false arrest, denial of access to the court, and legal malpractice claims inasmuch as such claims are not governed by the *Heck* rule, requiring a plaintiff to have a prosecution terminate in his or her favor before successfully bringing a claim. *See Wallace,* 549 U.S. at 393-94.

### B.  Doctrine of Judicial Immunity: Defendant Davis

Although the Magistrate Judge concluded Plaintiff's claim for denial of access to the court was untimely, he considered whether Defendant Davis is entitled to judicial immunity. The Magistrate Judge concluded that "Defendant Davis is absolutely immune from suit under Section 1983 and her Motion to Dismiss should be granted." (Document 151 at 26.) Plaintiff does not object to this finding. Therefore, the Court is not required to review this finding de novo. *Thomas*, 474 U.S. at 150.

### C.  Doctrine of Prosecutorial Immunity for Defendants Keller, Frail and Lazenby

The Magistrate Judge correctly laid out the applicable doctrine of prosecutorial immunity as follows:

> Prosecutors have absolute immunity for activities performed as "an officer of the court" if the conduct at issue is closely associate[d] with the judicial phase of the criminal process. *Van de Kamp v. Goldstein*, 555 U.S. 335, 341-343 (2009). In determining whether a prosecutor is entitled to absolute immunity, the Court must apply the "functional approach" examining the nature of the function performed. *Id*. at 342. It is well established that prosecutors are absolutely immune "for their conduct in initiating a prosecution and in presenting the State's case, insofar as that conduct is 'intimately associated with the judicial phase of the criminal process.'" *Burns v. Reed*, 500 U.S. 478, 486(1991)(quoting *Imbler v. Pachtman*, 424 U.S. 409, 430-431 (1976)). Further, absolute immunity extends to "actions preliminary to the initiation of a prosecution and actions apart from the courtroom." *Buckley v. Fitzsimmons*, 509 U.S. 259, 272 (1993)(quoting *Imbler*, 424 U.S. at 431). A prosecutor acts as an advocate or "officer of the court" when performing tasks, such as (1) initiating a judicial proceeding, (2) presenting

evidence in support of a search warrant application, (3) conducting a criminal trial, bond hearing, grand jury proceeding or pre-trial hearing, (4) engaging in "an out-of court effort to control the presentation of [a] witness' testimony," and (5) making a "professional evaluation of the evidence assembled by the police and appropriate preparation for its presentation at trial or before the grand jury after a decision to seek an indictment has been made." *Buckley*, 509 U.S. at 272 (quoting *Imbler*, 424 U.S. at 431; *Van de Kamp*, 555 U.S. at 434; *Dababnah v. Keller-Burnside*, 208 F.3d 467, 471 - 472 (4th Cir. 2000)(stating that "numerous courts have found prosecutors absolutely immune when undertaking [extradition proceedings].")

(Document 151 at 26-27)(parallel citations omitted).  Furthermore, the Magistrate Judge correctly indicated that "a prosecutor is entitled to absolute immunity even if he or she 'acted with an improper state of mind or improper motive.'" (Document 151 at 27-28) (citations omitted). "[T]o the extent [plaintiff] alleges that the prosecutors engaged in misconduct during the prosecution of this case . . ., the prosecutors are absolutely immune." *Brown v. Daniel*, 230 F.3d 1351 (4th Cir. 2000). The Magistrate Judge concluded that "prosecutors are entitled to absolute immunity for withholding materially exculpatory evidence, and knowingly presenting perjured testimony or false or misleading evidence to the Court or grand jury."[8] (Document 151 at 28) (citations omitted).

The Magistrate Judge noted that a prosecutor is not entitled to absolute immunity for "investigatory functions that do not relate to an advocate's preparation for the initiation of a prosecution or for judicial proceedings." *Buckley*, 509 U.S. at 273. Consequently, the Magistrate Judge points out that "a prosecutor is only entitled to qualified immunity for administrative actions or investigative functions not related to trial preparation, such as holding a press conference, engaging in investigative activity prior to the establishment of probable cause to arrest, providing police officers with legal advice

---

[8] The Magistrate Judge correctly indicated that prosecutors are still subject to criminal and professional sanctions for their actions in spite of the absolute immunity. (Document 151 at 28.)

during the investigative phase, or acting as a complaining witness in support of a warrant application." (Document 151 at 29)(citing *Buckley*, 509 U.S. at 273).  Accordingly, the Magistrate Judge found that "a prosecutor does not have absolute immunity for a claim that he or she fabricated evidence during the preliminary investigation of an unsolved crime." (*Id.*)

Plaintiff argues that the Magistrate Judge "completely ignored the *Buckley* law knowing that if the defendant could commit such perjury non-liably (sic) in front of a jury, the extent of their lies and fabrication is unimaginable outside the courtroom." (Document 154 at 15.)  Therefore, Plaintiff contends the Court must reject all of the Magistrate Judge's findings on "the use of lies committed by several defendants." (*Id.*)

With respect to Plaintiff's objection as it relates to Defendants Keller, Lazenby and Frail, the Court finds Plaintiff's objection is, again, without merit.  Defendants Keller, Lazenby, and Frail are absolutely immune as prosecutors for the presentation of false testimony and evidence in Court. *Imbler*, 424 U.S. at 422.  The Court finds that Defendants Keller, Lazenby, and Frail are absolutely immune because such lies or fabrications in Court are "intimately associated with the judicial phase of the criminal process." *Burns,* 500 U.S. at 486 (citation and quotation omitted).  Accordingly, Plaintiff's objection with respect to claims of perjury and "lies" by the Defendants is overruled.  Furthermore, the Magistrate Judge clearly and properly used *Buckley* to analyze Defendants' immunity defenses.

### 1.  Defendants Lazenby and Frail

The Magistrate Judge first considered Plaintiff's claim that "Defendants Lazenby and Frail unlawfully procured the Indictments at issue by forcing Officers Robertson and

Cook to commit perjury before the grand jury." (Document 151 at 29.)  The Magistrate Judge found that "[t]o the extent Plaintiff alleges that Defendants Lazenby and Frail knowingly presented perjured testimony before the grand jury, Defendants [Frail and Lazenby] are entitled to absolute immunity as their conduct was intimately associated with the judicial phase of the criminal process." (Document 151 at 30)(citations omitted). The Magistrate Judge found that "Defendants Lazenby and Frail, however, are not entitled to absolute immunity concerning Plaintiff's claim that during the investigative phase Defendants Lazenby and Frail sought out false testimony or directed Defendants Robertson and Cook to present false testimony." (Document 151 at 30.)

Next, the Magistrate Judge found that Plaintiff's claim against Defendants Lazenby and Frail for failing to disclose his grand jury transcripts is subject to absolute immunity because "prosecutors are entitled to absolute immunity for failing to comply with discovery requests or withholding evidence." (Document 151 at 32) (citing *Carter v. Burch*, 34 F.3d 257, 262 (4th Cir. 1994), cert. denied, 513 U.S. 1150 (1995)). Given the doctrine of prosecutorial immunity, as applied to Defendants Lazenby and Frail for failing to disclose grand jury transcripts, the Court agrees that Plaintiff can prove no set of facts that would entitle him to relief on this claim.

The Magistrate Judge recommends that Defendants Lazenby and Frail's Motion to Dismiss should be granted in part and denied in part. Specifically, the Magistrate Judge found that Defendants Lazenby and Frail's motion should be denied with respect to "Plaintiff's claim that during the investigative phase respecting the charges contained in Indictments 88-F-203 and 92- F-342, Defendants Lazenby and Frail sought out fabricated evidence or procured false testimony by Defendants Robertson and Cook." (Document

151 at 32.)  Of course, no objection is made to this finding, and the Court affords it no further review.

### 2. *Defendant Keller*

The Magistrate Judge addressed each of Plaintiff's claims against Defendant Keller. Specifically, the Magistrate Judge considered "Plaintiff's claims that Defendant Keller filed a fabricated indictment, fabricated evidence to procure Plaintiff's indictment, made false statements to the Court, and willfully concealed records during Plaintiff's criminal trial and appeal." (Document 151 at 32.)

First, the Magistrate Judge found that Defendant Keller is absolutely immune from Plaintiff's claim that she fabricated the Amended Indictment in Case No. 92-F-342 because no grand jury actually convened. In making this finding, the Magistrate Judge indicated that "[t]he filing of an indictment by a prosecutor is conduct 'intimately associated with the judicial phase of the criminal process.'" (*Id*.)  Therefore, prosecutors are absolutely immune when initiating a prosecution.[9] (*Id*.)

Second, the Magistrate Judge found that "Defendant Keller is not entitled to absolute immunity concerning Plaintiff's claim that during the investigative phase she sought out fabricated evidence or directed Defendants Robertson and Cook to present false testimony."(*Id*. at 33.)  This is consistent with the Magistrate Judge's similar finding with respect to the claims against Defendants Lazenby and Frail. Plaintiff appears to object to this finding and argues that Defendant Keller is not absolutely immune from unlawfully advising Defendants Robertson and Cook "to lie before a grand jury in order

---

[9] The Magistrate Judge indicated that the record shows "Judge Ashworth made a particular finding that the Grand Jury that [Plaintiff] says didn't occur, did occur; and that [Plaintiff] was not entitled to the record." (Document 151 at 33 n. 13.)(citation omitted).

to indict [him]." (Document 154 at 12.)  Plaintiff essentially argues that Defendant Keller knew that Defendants Robertson and Cook's testimony was false and "advised" them to testify falsely before the grand jury. (*Id*. at 11-12.)  In support, Plaintiff cites *Burns* for the proposition that "absolute prosecutorial immunity [applies] only for actions that are connected with the prosecutor's role in judicial proceedings, not for every litigation-inducing conduct." *Burns*, 500 U.S. at 495.  Plaintiff's objection is not inconsistent with the Magistrate Judge's finding that Defendant Keller is not absolutely immune concerning Plaintiff's claims that during the investigative phase Defendant Keller fabricated evidence or directed Defendants Robertson and Cook to present false testimony. (Document 151 at 33.)  Accordingly, Plaintiff's objection is sustained to the extent that he may proceed with his claim that during the investigative phase Defendant Keller sought out fabricated evidence or directed Defendants Robertson and Cook to present false testimony.

Third, the Magistrate Judge considered Plaintiff's allegation that Defendant Keller made a false and misleading representation to the Court during his pre-trial proceeding in Case No. 92-F-342 when she stated that Indictment in Case No. 88-F-203 was withdrawn.  The Magistrate Judge found that prosecutors are afforded absolute immunity for the presentation of false testimony in Court. (*Id*.)(citations omitted).  In other words, even assuming that Defendant Keller made false statements to the Court, the Magistrate Judge found she is "entitled to absolute immunity as she was acting as an advocate in presenting the State's case." (*Id*.)

Lastly, the Magistrate Judge found that Defendant Keller is entitled to absolute immunity with respect to Plaintiff's claim that she concealed and withheld exculpatory

26

evidence during trial and the post-conviction process. (*Id*. at 34-35.)  The Magistrate Judge did not further consider Plaintiff's claim that Defendant Keller denied him access to the court, because the claim was untimely. (*Id*.)

Thus, based on all of the forgoing findings, the Magistrate Judge found that Defendants Keller's Motion to Dismiss should be granted in part, and denied only "as to Plaintiff's claim that during the investigative phase respecting the charges contained in Indictments 88-F-203 and 92-F-342, she sought out fabricated evidence or procured false testimony by Defendants Robertson and Cook in order to indict Plaintiff." (*Id*. at 35.).

Plaintiff contends the Court should "add 'fabrication of document' to overcome Keller's absolute immunity defense." (Document 154 at 8.)  In support, Plaintiff argues that Defendant Keller is only absolutely immune from presenting false testimony "in Court" and the "[c]ontinuance document Keller introduced in Court was fabricated secretly and unknowingly outside the court . . .[.]" (*Id*.)(emphasis removed).  Plaintiff argues that the continuance order should be included in his claim because it was "obviously fabricated outside the court." (*Id*.)   Judge Burnside issued an order that continued Plaintiff's Case No. 88-F-203 until the next term of court. (Document 57 at 39.)  The Court finds that Defendant Keller is entitled to absolute immunity on the claim that she fabricated the continuance order because Defendant Keller was acting as an officer of the Court and her alleged conduct was "intimately associated with the judicial phase of the criminal process." *Imbler*, 424 U.S. at 430-31. Therefore, Plaintiff's objection is overruled.

### D. *Doctrine of Qualified Immunity: Defendants Robertson and Cook*

The Magistrate Judge indicates that "[g]overnment officials performing discretionary functions are generally protected from civil damages liability if their 'conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" (Document 151 at 36)(citing *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)(quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). The Magistrate Judge correctly laid out the two-prong test to determine the validity of a qualified immunity defense. (Document 151 at 36.) First, the Court considers whether the facts viewed in the light most favorable to the Plaintiff establish a deprivation or violation of a constitutional right. *Pearson*, 555 U.S. at 231.   Second, if the facts alleged establish a deprivation of a constitutional right, the Court considers whether that right was clearly established at the time of the alleged violation. *Id*.   In *Pearson*, the Supreme Court ruled that the district courts may exercise their sound discretion in deciding which prong to address first.  *Id*. at 236.

The Magistrate Judge found Plaintiff's allegation that Defendants Robertson and Cook committed perjury by testifying falsely before the grand jury must fail because "witnesses who testify in Court, including police officers, are absolutely immune from any claims relating to their testimony." (Document 151 at 36 n. 16)(citing *Briscoe v. LaHue*, 460 U.S. 325, 326 (1983)). Next, the Magistrate Judge considered Plaintiff's claim that Defendants Cook and Robertson conspired to unlawfully arrest and extradite him when they knew the indictment was without probable cause. (Document 151 at 36.)   The Magistrate Judge construed these allegations as "a claim of false arrest, malicious prosecution, and the right not to be deprived of liberty as a result of fabricated evidence." The Magistrate Judge noted that Plaintiff's claims for false arrest and malicious prosecution were untimely. (*Id*. at 37.)

The Magistrate Judge then considered Plaintiff's claim that Defendants Robertson and Cook violated his constitutional rights by deliberately falsifying or fabricating evidence. The Magistrate Judge first found that a person has a constitutional "right not to be deprived of liberty as a result of the fabrication of evidence by a government officer acting in an investigating capacity." *Washington v. Wilmore*, 407 F.3d 274, 282 (4th Cir. 2005). Second, the Magistrate Judge found that the Fourth Circuit recognized that "this right was clearly established in 1983." *Id.* at 283 (citing *Miller v. Pate*, 386 U.S. 1, 7 (1967)). Accordingly, the Magistrate Judge found that "Plaintiff should be allowed to proceed with the above claim as the constitutional 'right not to be deprived of liberty as a result of the fabrication of evidence by a government officer acting in an investigating capacity' was clearly established in 1988 when the events related to this case occurred." (Document 151 at 37.)

Plaintiff argues that the Magistrate Judge "completely ignored the *Buckley* law knowing that if the defendant could commit such perjury non-liably (sic) in front of a jury, the extent of their lies and fabrication is unimaginable outside the courtroom." (Document 154 at 15.) Therefore, Plaintiff contends, the Court must reject all of the Magistrate Judge's findings on "the use of lies committed by several defendants." (*Id.*)  Defendants Robertson and Cook are absolutely immune from claims relating to their testimony to the grand jury. *Briscoe*, 460 U.S. at 326.  In *Briscoe*, the Supreme Court held that police officers testifying in their official capacity are absolutely immune from liability under Section 1983 based on such testimony. *Id.* Accordingly, the Court finds Plaintiff's objection is without merit.

### E.  Defendant Curnutte

The Magistrate Judge considered Plaintiff's legal malpractice and Section 1983 claims against Defendant Curnutte. As previously discussed, Plaintiff's claim for legal malpractice is

untimely.  In consideration of  Plaintiff's constitutional claim, the Magistrate Judge indicated that "to state and prevail upon a claim under 42 U.S.C. § 1983, a Plaintiff must prove that (1) a person acting under color of State law (2) committed an act which deprived him of an alleged right, privilege or immunity protected by the Constitution or laws of the United States." The Magistrate Judge rightfully determined that a "defense attorney does not act under the color of state law when retained or court-appointed." (Document 151 at 38) (citations omitted). Therefore, the Magistrate Judge found that Plaintiff cannot pursue a Section 1983 action against Defendant Curnutte because he was not acting under color of state law.  Plaintiff did not object to this finding.  Therefore, the Court is not required to review this finding de novo.  *Thomas*, 474 U.S. at 150.

### F.  FOIA Claim

Next, the Magistrate Judge considered Plaintiff's FOIA claims against Defendants Davis and Cole. The Magistrate Judge found that "Plaintiff's present action is barred by the doctrine of *res judicata*." (Document 151 at 43.) The Magistrate Judge also found that Plaintiff's "prior lawsuits (1) were final judgments on the merits, (2) involved the same causes of action, and (3) involved the same parties or their privies." (*Id*.)  Finally, the Magistrate Judge further found that "Plaintiff had a full and fair opportunity to litigate the [FOIA] claims decided in the Federal and State Court cases."[10] (Document 151 at 43.)  Plaintiff did not object to this finding.  Therefore, no further review is required.  *Thomas*, 474 U.S. at 150.

---

[10] *Azeez v. Haines, et al.*, Civil Action No 2:03-cv-17; *Azeez v. Davis, et al.*, Civil Action No. 00-C-390-H.

### G.  *Plaintiff Objections that are not Claim or Defendant Specific*[11]

Plaintiff states that the Magistrate Judge "erroneously did not review in the light most favorable to [him], all of the facts in the complaint and amended complaint, which incorporates similar civil rights claims regarding [his] sexual assault linked convictions." (Document 154 at 1.)  Also, Plaintiff argues that because his conviction for failure to appear is directly related to his sexual assault conviction, Defendants Lazenby and Robertson must be held liable even though he was unable to have the sexual assault conviction reversed or invalidated. (*Id*. ¶ 3.) The Court finds these objections to be without merit. The Magistrate Judge correctly declined to consider or incorporate Plaintiff's allegations based on his sexual assault conviction. (Document 151 at 15 n. 6.)  Further, the Magistrate Judge correctly noted Plaintiff's claims based on the sexual assault conviction exceed the scope of the allegations contained in his Complaint. (*Id*.)

Plaintiff also argues that the Magistrate Judge "did not mention [his] claim on criminal tampering with court files (Grand Jury Tape 3) on which Judge Ashworth found 'garbled information' only on a part where Plaintiff's grand jury testimony was allegedly recorded." (Document 154 at 7.)  Plaintiff alleges in his Complaint that "Judge Ashworth wrote in an Order that he was given 'Tape 3' and after an auditory review, found 'garbled information . . . taped over existing recording . . . only where (Plaintiff) Azeez grand jury minutes were (allegedly) recorded.'" (Document 23-3 ¶13.)  Liberally construing Plaintiff's Complaint, the Court finds that Plaintiff fails to allege there was "criminal tampering" with this recording.  Furthermore, Plaintiff does not allege which Defendants tampered with the grand jury tape. Therefore, the Court finds Plaintiff fails to state a claim upon which relief can be granted on this claim.

---

[11] Plaintiff appears to argue in his objections that he was "discriminated against one in similar situation" in violation of the equal protection clause. (Document 154 at 8-9.) No such allegation appears in his Complaint, nor does it appear, based on the facts alleged in the Complaint and in his objections, that any such claim could be possible.

### H. General and Conclusory Objections

Plaintiff makes several irrelevant, general and conclusory objections. First, Plaintiff asks the Court to consider that the West Virginia Attorney General voluntarily withdrew the appeal in his successful *habeas* petition because the state officials' violations were "so overwhelmingly egregious." (Document 154 ¶ 1) Next, Plaintiff indicates that he made a "formal request for expenditures after his conviction was reversed" in an attempt to expose to the public the total cost of his failure to appear conviction. (*Id.* ¶ 4.) Finally, Plaintiff requests that the Court "initiate a [f]ederal investigation to determine the amount of innocent people who were wrongfully indicted, convicted and sent to prison through fabrication of evidence." (Document 154 at 9.) The Court finds that these objections are general, conclusory objections which do not warrant *de novo* review and are without merit. *Orpiano,* 687 F.2d at 47.

### CONCLUSION

Thus, based on the findings herein, the Court does hereby **ORDER** that the Magistrate Judge's Proposed Findings and Recommendation (Document 151) be **ADOPTED**. The Court **ORDERS** that the *Motion to Dismiss on Behalf of Defendant Francis M. Curnutte* (Document 51) be **GRANTED**. The Court further **ORDERS** that the *Motion to Dismiss on Behalf of Defendants Kristen L. Keller, Lawrence Frail, Bruce K. Lazenby, Cedric Robertson, David H. Cook, II, Billy Cole and Janice B. Davis* (Document 39) be **GRANTED IN PART** and **DENIED IN PART**.

Specifically, the Court **ORDERS** Plaintiff's Complaint is dismissed as to Defendants Cole and Davis. However, Plaintiff is entitled to proceed on his claim that Defendants Keller, Lazenby, and Frail violated his Fourteenth Amendment right not to be deprived of liberty as a

result of their fabrication of evidence or directing Defendants Robertson and Cook to present false testimony while acting in an investigative capacity with respect to the charges contained in Indictments 88-F-203 and 92-F-342.  Further, Plaintiff is entitled to proceed on his claim that Defendants Robertson and Cook violated his Fourteenth Amendment right not to be deprived of liberty as a result of their fabrication of evidence while acting in an investigative capacity with respect to the charges contained in Indictments 88-F-203 and 92-F-342.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER:    April 6, 2012

IRENE C. BERGER
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF WEST VIRGINIA